RECEIVED

SEP 0 6 2022

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

RACHAEL SWIFT,                )
                             )    No. 22 cv 1019
    Plaintiff,            )
                             )    Jury Trial Demanded
    v.                    )
                             )
LORAS COLLEGE                 )
                             )
    Defendant.            )
                             )
                             )

## COMPLAINT

Plaintiff Rachael Swift, pro se, bring this Complaint against Defendant Loras College as follows:

### Nature of the Case

1.    Rachael Swift ("Ms. Swift") was enrolled at Loras College in order to obtain a quality education and a bachelor's degree. Her education was severely disrupted the outset of her senior year when John Doe ("the Assailant") broke into her student housing and entered her bedroom to watch Ms. Swift sleep on September 6, 2020. Ms. Swift reported the break-in that same day to Loras College's campus security, who then contacted the Dubuque Police Department and later informed the Director of Residential Life. Throughout its response to Ms. Swift's report of voyeurism, Loras College's staff displayed a gross lack of comprehension of the Loras College's own written policies for addressing sexual misconduct, and a callous disregard for how the aftermath of the break-in and the badly managed process was profoundly affecting Ms. Swift's ability to complete her education.

### The Parties

2.    Plaintiff is a citizen of the State of Illinois who resides in Cook County, Illinois.

3.      Defendant Loras College is a Catholic, liberal arts educational institution with its primary campus is located in Dubuque, Iowa, in the United States District Court for Northern District of Iowa.

4.      Defendant Loras College receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.

## Jurisdiction and Venue

5.      Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343.

6.      Venue is proper in the United States District Court for Northern District of Iowa pursuant to 28 U.S.C. § 1391.

## Facts Giving Rise to Relief

7.      In September 2020, Ms. Swift was a varsity soccer player and a senior enrolled at Loras College in the Elementary Education Program.

8.      As a varsity soccer player, Ms. Swift lived on Loras College's campus in student housing provided by Loras College.

9.      On September 6, 2020 in the early morning hours, John Doe ("Assailant") broke into Ms. Swift's student housing. Ms. Swift was alone in her apartment and woke to find the Assailant watching her sleep. She screamed and the Assailant fled her apartment.

10.     Ms. Swift did not know the Assailant before the break in, but later learned that the Assailant was enrolled in the same Elementary Education Program as her and that the Assailant had been a presenter at classes taught in the Elementary Education Program.

11.     On September 6, 2020, immediately after he the fled her apartment, Ms. Swift called her mother who told her to call Loras College's security. Ms. Swift then called campus security and reported what occurred.

2

12.     On September 6, 2020, Loras College security as well as the Dubuque Police Department arrived at Ms. Swift's apartment in response to her reporting the break-in.

13.     On September 6, 2020, Loras College Security Officer, Bob Rosenow, quickly dismissed Ms. Swift's concerns that she had been victim of sexual misconduct telling her that it was likely just an intoxicated student that entered her apartment by accident. Likewise, a police officer from the Dubuque Police Department dismissed Ms. Swift's concerns that she had been victim of sexual misconduct. During the time that Loras College Security Officer and Dubuque Police Department at her apartment, Ms. Swift was on the phone with her mother allowing her mother to hear all the conversations with between Ms. Swift and Loras College Security Officer as well as the Dubuque Police Department.

14.     Upon information and belief, on September 6, 2020, Molly Burrows-Schumacher, the Director of Residential Life, was contacted about the break-in.

15.     On September 7, 2020, Ms. Swift reached out to Ms. Brown-Schumacher and Loras College's Dean of Students Art Sunleaf about the break-in and a meeting was arranged for the following day.

16.     On September 8, 2020, Ms. Swift met with Dean of Students Art Sunleaf about the break-in and her safety concerns.

17.     Ms. Swift also met with Katie Keleher-Garfoot, Assistant Director of Residential Life, on September 8, 2020 and told Ms. Keleher-Garfoot that she did not feel safe the student housing provided by Loras College and asked that Loras College take action to increase security including, among other things, install cameras at all entranceways to the student housing and post flyers to inform other students about the break-in. As to Ms. Swift's request to inform other students about the break-in, Ms. Keleher-Garfoot responded that "we don't want to alarm the

3

students in the building." Ms. Keleher-Garfoot said that Loras College would look into increasing security, but Loras College never increased security.

18.     As a result of the break-in and Loras College's failure to adequately increase security within the individual apartment and student housing as well as Loras Colllege's campus generally, Ms. Swift no longer felt safe living in student housing and returned home. Ms. Swift attempted to go back to Loras College due to soccer, but could not stay in her apartment because Loras College took no action to secure her student housing so she was forced to rent a hotel room.

19.     Pursuant to the Loras College's Title IX Administrative Policy and Procedures, voyeurism is nonverbal sexual misconduct.

20.     Because Loras College ignored her requests to increase security, Ms. Swift submitted an incident report as provided for in Loras College's Title IX Administrative Policy and Procedures via Loras College's online portal. In her report, Ms. Swift complained that Loras College ignored her requests to increase security and was discriminating against her because she was a female student that had been subjected to sexual misconduct. Ms. Swift's reported listed, among others, Loras College's Dean of Students Art Sunleaf, Loras College's President Jim Collins, and Ms. Burrows-Schumacher.

21.     Loras College stated it would investigate the incident report submitted by Ms. Swift but never did so.

22.     On or about September 11, 2020, Ms. Swift and her mother, Elaine Kostopoulos, had conversation with Loras College's President Jim Collins about the break-in, the ongoing investigation to identify the Assailant, Ms. Swift's concerns about her safety and Loras College's failure to increase security.

4

23.     During the September 11 conversation, Ms. Swift told Loras College's President Jim Collins that as a result of the break-in she no longer felt safe living in student housing and consequently had returned home rather than remain at Loras College.

24.     Following the September 6, 2020 break-in to Ms. Swift's student housing, numerous other female students living in the same student housing as Ms. Swift suffered similar break-ins.

25.     Upon information and belief, there were four (4) other break-ins of apartments occupied by female students in the same student housing as Ms. Swift from September 2020 to December 2020.

26.     Despite there being numerous other break-ins of apartments occupied by female students in the same student housing as Ms. Swift from September 2020 to December 2020, Loras College took no action to increase security or otherwise safeguard women living on campus.

27.     Ultimately, the Assailant was caught on video by a camera set up female students living in an apartment in the same student housing as Ms. Swift. These female students set up cameras in their apartment because Loras College refused to place cameras in all of the entranceways to the building or otherwise to safeguard women living on campus.

28.     But for the actions of these female students, the Assailant would have continued breaking into apartments occupied by female students.

29.     Shortly after the Assailant was caught, Ms. Swift attempted to amend her incident report and bring a Title IX complaint against the Assailant, but Loras College refused to conduct a Title IX investigation or hearing.

30. Pursuant to the policies in place at the time, Loras College's Title IX Coordinator was required to hold pre-hearing meetings with both Ms. Swift and the Assailant to review the investigative file, discuss the hearing process, receive their input regarding sanctions, and attempt to resolve the matter without conducting a formal hearing. Despite Loras College knowing that Ms. Swift sought a formal hearing, it took no action against the Assailant under its Title IX policy.

31. Loras College refused to conduct a Title IX investigation or hearing of the Assailant because Loras College did not believe that Ms. Swift had been the victim of sexual misconduct.

32. Rather than conducting a Title IX hearing, Loras College brought lesser charges against the Assailant under the student code of conduct.

33. Upon information and belief, the lesser charges brought against the Assailant under the student code of conduct did not include the September 6, 2020 break-in of Ms. Swift's apartment.

34. As a result of Loras College's decision to neither conduct a Title IX hearing nor believe that Ms. Swift had been the victim of sexual misconduct, Ms. Swift was denied the rights outlined in Loras College's Title IX Administrative Policy and Procedures for victims of sexual misconduct including, but not limited to, to be treated with respect by college officials, to not be prejudged or blamed for what occurred; to take advantage of campus support resources; to experience living in a safe and educational environment; to be made aware of options regarding support resources, remedial actions, timeframe to file a complaint and resolution options; to have an advocate present during disciplinary hearings; to have College officials answer questions and explain the systems and processes involved; and, to be informed on the progress of the

investigation of the case, including the right to prompt, fair, and impartial discipline proceedings, the right to learn the outcome of the case, and the right to appeal that outcome.

35.     As a result of Loras College's decision to neither conduct a Title IX hearing nor believe that Ms. Swift had been the victim of sexual misconduct, Ms. Swift was denied the right to know the outcome of the charges against Assailant.

36.     As a result of Loras College's decision to not believe that Ms. Swift had been the victim of sexual misconduct, Ms. Swift was unable to continue living on campus and lost certain financial benefits connected to her living in student housing.

37.     As a result of Loras College's decision to neither conduct a Title IX hearing nor believe that Ms. Swift had been the victim of sexual misconduct, Ms. Swift was denied the right to seek an academic, housing or reasonable accommodation to eliminate the hostile environment as provided for under Loras College's Title IX Administrative Policy and Procedures.

38.     Ms. Swift filed a complaint with the United States Department of Education's Office of Civil Rights ("OCR") and OCR is currently investigating Loras College for sexual harassment in violation of Title IX.

### Count I
### (Discrimination in violation of Title IX of the Education Amendments of 1972)

39.     Plaintiff incorporates by reference and re-alleges paragraphs 1-38 above.

40.     Plaintiff was subjected to sexual harassment that was so severe, pervasive, and objectively offensive that it deprived her of access to educational opportunities and benefits provided by the University.

41.     Loras College had knowledge of Plaintiff's report of sexual misconduct.

7

42.     Loras College acted with deliberate indifference to Plaintiff's report of sexual misconduct because its response to her report was clearly unreasonable in light of the known circumstances.

43.     Loras College's response to Ms. Swift's report of sexual misconduct was clearly unreasonable because, contrary to its own policies, it failed to assign a Loras College official to independently investigate the report of sexual misconduct and for purposes of the disciplinary hearing, collect evidence and witness statements.

44.     Loras College's response to Ms. Swift's report of sexual misconduct was clearly unreasonable because it failed to offer her appropriate academic support and accommodations that would enable her to continue her education on Loras College's campus.

45.     Loras College's response to Ms. Swift's report of sexual misconduct was clearly unreasonable because it failed to sufficiently train its staff to enable proper execution of its sexual and domestic violence policies and procedures. Loras College's inability to bring the disciplinary process regarding Ms. Swift's report of sexual misconduct to a prompt and final conclusion created a prolonged sexually hostile environment that barred her access to educational opportunities.

**WHEREFORE**, Plaintiff respectfully demands judgment be entered in her favor and against Defendant as follows:

i.     Damages in amounts to be established at trial, including, without limitation, reimbursement and repayment for all of Plaintiff's tuition and related expenses; payment of Plaintiff's expenses incurred as a consequence of the sexual misconduct; damages for deprivation of equal access to the educational benefits and opportunities provided by Loras College; and damages for past, present and

8

future emotional pain and suffering, ongoing and severe mental anguish, loss of past, present and future enjoyment of life, and past and present lost earnings and earning capacity;

ii.  Injunctive relief to be determined at trial requiring Loras College to comply with federal law under Title IX;

iii. Pre- and post-judgment interest;

iv. Costs;

v.  Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

Such other and further relief as the Court may deem just and proper.

## Jury Demand

Plaintiff demands a trial by jury.

## Certification

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case

Date of Signing: 9/6/22

Signature of Plaintiff: *Rachael Swift*
Rachael Swift

10