IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| RACHAEL SWIFT, | ) | |
| | ) | Civil No. 2:22-CV-01019-LTS-KEM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT'S STATEMENT OF** |
| | ) | **UNDISPUTED, MATERIAL FACTS** |
| LORAS COLLEGE, | ) | **IN SUPPORT OF MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendant. | ) | |
| | ) | |

COMES NOW Defendant, Loras College ("Loras"), and, in conformity with Federal Rule of Civil Procedure 56, states as follows for its Statement Of Undisputed, Material Facts in Support of Motion for Summary Judgment:

1.     Loras College ("Loras") is a Catholic liberal arts college located in Dubuque, Iowa. *APP. 001.* Loras has an annual total undergraduate enrollment of approximately 1,300 students.

2.     On Sunday, September 6, 2020, at 4:25 a.m., Robert Rosenow, Campus Safety Officer, received a call from Plaintiff, Rachael Swift ("Swift"), a then Loras student and resident of the Byrne Oaks Residence Hall on Loras' campus, reporting a campus safety concern. Officer Rosenow memorialized his investigation of the call:

> *I, Officer Rosenow, was giving Sara from the information desk a break when a telephone call came in at 4:25 a.m. Sunday, September 6, 2020, female saying that there was an intruder in her apartment – 101 Byrne Oaks. Rachael Swift informed me that she heard a noise, woke up, and saw a person in her bedroom doorway. She shared that she screamed and person took off out the front door. I told her I would check the other bedrooms, and I also checked the hallways and stairwells and did not see anyone.*
>
> *When I took Rachael's statement, she said that her other three roommates were*

*out of town and she was staying alone on Saturday. She said that after she called, she noticed that she must not have locked the front door of the 101 apartment. I asked her if she wanted to stay at a friend's place, and she said she would be ok. I told her to always make sure that the doors are locked. She was unable to give a description because it was too dark. I informed her that if she would ever be staying alone to let information know so security could make a few extra rounds in the building.*

*APP. 002-003.*

3.      Swift testified she rolled over in bed and there was someone opening the door to her bedroom. *APP. 335.* She screamed, and the person left the doorway. *APP. 337.* She got up out of bed after the person left the doorway and shut the door. *APP. 339.*

4.      Swift testified there wasn't any sign of forced entry into her apartment. *APP. 343.*

5.      Swift testified Officer Rosenow checked the other bedrooms while she remained in her bedroom *APP. 345.* She agreed he performed his job of ensuring she was safe by checking the other rooms of the apartment *APP. 347-348.*

6.      Swift agreed that Officer Rosenow appeared to show concern for her and her safety, and that he understood it was a scary incident for her. *APP. 346-347.*

7.      Swift also contacted the Dubuque Police Department on September 6, 2020 at 6:40 a.m. to report the incident. The police report indicates:

*Swift advised around 0415 hours she woke up and saw a silhouette she believed to be male opening the door to her bedroom. She advised she was not sure how long the subject was in her apartment before opening her door. She advised campus security checked the apartment prior to our arrival and did not locate the subject inside.*

*Swift advised she must have left the front door unlocked. She also advised nothing was taken and wanted the incident documented.*

*APP. 583-584.*

8.      Following Swift's report, Rosenow alerted other Loras Campus Safety employees of the incident and requested that all Campus Safety staff perform extra security rounds in the

area until further notice. *APP. 002-003.*

9.     Less than eighteen hours after Swift made her report, on September 6, 2020, at 8:38 p.m., Molly Burrows Schumacher ( "Burrows Schumacher"), Director of Residence Life and Campus Safety, contacted Art Sunleaf, Dean of Students at Loras ("Sunleaf"):

> *Just a heads up – not sure if you saw the report about Rachael Swift and waking to someone in her doorway (front door was unlocked). Pucci [the women's soccer team coach, of which Swift was apart of] called – she went home, mom bringing her back tomorrow, wants to talk to someone in person about it. I told him to send it to Katie [Keleher-Garfoot, Assistant Director of Residence Life]and they could discuss safety strategies and how we can help. We'll go from there but wanted to keep you in the loop.*

> *APP. 004.*

10.     Swift agrees that Matt Pucci ("Pucci") cared and tried his best to support her after the incident[1] *APP. 354.*

11.     Swift interpreted Burrows Schumacher actions as doing her job to keep students safe on campus *APP. 352.*

12.     Following this correspondence between Burrows Schumacher and Sunleaf, at 8:46 p.m. both received an email from Swift's mother, Elaine Kostopoulos ("Kostopoulos"):

> *Good Evening,*

> *I believe Matt Pucci may have reached out to you today regarding my request for a meeting tomorrow, Monday the 7th. We were informed to speak with Katie as you would not be on campus. I understand tomorrow is Labor Day, yet we will be driving to campus from Chicago to help get some things resolved and ensure Rachael is safe. What happened to Rachael is unacceptable and it is critical that we speak tomorrow either in person or on the phone. This needs to be a priority. Unfortunately, as a result of the situation, Rachael nor myself can look at tomorrow as a holiday and we would appreciate a few minutes of your time. Early afternoon would be ideal, yet we can make ourselves available any time during the day. I look forward to your response.*

---

[1] Swift admitted that on September 6, 2020 women's soccer at Loras was very limited because of COVID and that 2020 was not a regular season. *APP. 478.*

*APP. 006.*

13.    Burrows Schumacher replied to Kostopoulos at 10:56 p.m.:

*Thank you so much for reaching out. I completely understand your concern for Rachael, and the desire to create a safety plan moving forward. We too want Rachael to feel safe on campus in her apartment.*

*While I wish I could speak to you in person tomorrow, I am restricted to remote work at this time due to a hospitalization in July. Coach Pucci indicated you were really hoping to meet with someone in person while on campus, so for this reason, I suggested Katie Keleher-Garfoot to Coach Pucci as a great resource. Katie has helped students in various housing options by discussing safety concerns, ordering things like additional door alarms, window alarms, etc. to help students feel safe in their specific situation.*

*While I'm unable to meet in person, I am happy to talk via phone tomorrow if that would be helpful? I'm free at 1:00 p.m. if that works with your schedule. If you could let me know the best number to call, I would appreciate it.*

*If you would prefer to meet in person with Dean Sunleaf, I understand that as well. Please know I did also make Katie aware that Rachael may be interested in additional safety resources for the apartment and asked her to secure these items for Rachael if she is interested.*

*APP. 005-006.*

14.    Swift agrees that Loras was not ignoring her and her mother on concerns over the incident *APP. 360.*

15.    Sunleaf also replied to Kostopoulos on September 7, 2020, at 6:35 a.m.:

*Thank you for contacting us regarding the recent incident in Byrne Oaks. I was made aware of it over the weekend and appreciate your concerns. Due to the adjusted academic calendar, the college is not observing Labor Day. Classes are being held and offices are open. It is my understanding Molly Burrows Schumacher, Assistant Dean of Students, has made herself available. Additionally, I too will be in my office.*

*APP. 585.*

16.    Swift agrees that following her initial request for consultation there were four individuals from Loras that reached out, telling her that they were available for her and her mother concerning the incident. *APP. 362-363.*

17.     On September 7, 2020, at 10:17 a.m., Kostopoulos responded to Burrows Schumacher's September 6, 2020 email:

> *Thank you for your response. We are on our way back to campus and are planning on meeting with Art Sunleaf at 1:30 p.m. It would be great if we could have you involved via phone for the meeting.*

> *APP. 005.*

18.     Burrows Schumacher replied to Kostopoulos at 11:20 a.m. indicating that she had a student health meeting at 1:30 p.m. and would not be able to dial-in for the meeting but would follow up with Sunleaf in order to provide information on how Loras could best help Swift at this time. *APP. 005.*

19.     On Monday, September 7, 2020, at 8:58 a.m., Katie Keleher-Garfoot, Assistant Director of Residence Life at Loras ("Keleher-Garfoot"), emailed Swift:

> *I was just made aware of a situation in your apartment this weekend. Would you like to meet to discuss? I'm happy to talk with you about this. Would you like to meet in person or virtual? If you'd like to meet in person, just let me know and I will reserve a conference room so we can maintain social distancing. If you are fine meeting virtual, do you have Microsoft teams set up? Or would you prefer Zoom? Let me know either way and I'll make arrangements for a meeting! I have most of the day free, only time I am not available is 1:30 – 3:00 p.m. this afternoon.*

> *APP. 020.*

20.     Swift replied at 10:07 p.m.:

> *I would like to meet in person. My Mom and I would like to talk about what happened and what else can be done to the apartment to make me and my roommates feel safer. She will only be in till tomorrow, so if we can meet that would be great. We can meet between 11:00 – 3:00.*

> *APP. 020.*

21.     Swift testified Keleher-Garfoot wasn't ignoring the incident, but was doing her job by reaching out to her to make students feel safe on campus. *APP. 364.*

22.     On September 7, 2020, at 1:30 p.m., Sunleaf met with Swift and her mother to discuss their concerns.

23.     Swift agrees Sunleaf listened to what she was saying, showed compassion for what had happened, and discussed potential additional safety measures with her. *APP. 369-371.*

24.     On September 7, 2020, Burrows Schumacher contacted John McDermott ("McDermott") of Loras' Physical Plant to follow-up on a request to change the locks at Swift's Byrne Oaks apartment following Sunleaf's meeting with Swift and her mother. *APP. 007-009.*

25.     Burrows Schumacher advised that she had an a.s.a.p. work order, per an earlier conversation she had that day with McDermott. *APP. 007-009.*

26.     She advised that 101 Byrne Oaks needed main (7 keys), and bedroom D doors (2 keys) re-cored, preferably by Tuesday if possible. *APP. 007-009.*

27.     She further advised that Swift woke to someone in her apartment and Sunleaf agreed Loras would change locks and keys a.s.a.p. *APP. 007-009.*

28.     McDermott responded at 3:03 p.m. with "Got it." *APP. 007-009.*

29.     Burrows Schumacher emailed Swift on September 7, 2020, at 3:08 p.m.:

*Dean Sunleaf asked me to follow up and let you know that Maintenance will be changing your door locks and issuing new keys first thing in the morning – they have set the process in motion today, and it will be completed tomorrow morning.*

*Since the incident, Campus Safety has increased rounds on the interior and exterior of the facility as well as the surrounding grounds. Ras in the area will do the same. Campus Safety has also ordered and are reviewing fob logs from the time of the incident so that we can connect with any other students who may have been out and about in the building and may have seen or heard something.*

*Katie Keleher-Garfoot will also be reaching out to you asking how she can help. While the college provides secure locks for all apartments, we know all residents have different preferences. Katie can share information about additional alarms and devices that you might be interested in for your apartment. Not all students are interested in these devices, but we are happy to assist you (and your roommates) if you might be. Please let us know if we can be of further help.*

*APP. 010.*

30.     Swift replied to this email at 8:34 p.m.:

*Yes, my roommates and I are interested in the additional safety devices. We all wish we knew about the available options earlier. Why aren't students made aware of this? Will an email be going out to Byrne Oaks informing students of an occurrence and if anyone else experienced or saw anything unusual? It has been mentioned that the intruder attempted to enter another unit before he entered mine. I will let my roommates know about the new locks.*

*APP. 010.*

31.     Swift agrees that Keleher-Garfoot reaching out to her following the incident to provide additional alarms and devices was reflective of Loras addressing her concerns over apartment safety. *APP. 376.*

32.     Loras ordered door alarms and window blockers for Swift's apartment on September 8, 2020. *APP. 011-014.*

33.     Throughout Loras' communications with Swift, both Swift and her mother mentioned other attempted or actual break-ins of concern. *APP. 015.*

34.     When representatives of Loras advised that this type of incident had not been previously reported and pressed Swift for more information regarding these allegations, Swift could not or would not provide any names of other students that experienced break-ins, details about these other incidents, or where she and her mother received their information. *APP. 015.*

35.     Swift contends one of her roommates told her of a similar incident prior to her incident, but admits she has no knowledge that Loras was aware of it prior to her incident. *APP. 379-380; APP. 521*

36.     On September 7, 2020, Loras' Academic Dean, Donna Heald ( "Heald"), reached out to Swift via email at 4:00 p.m.:

*Dr. Sunleaf notified me that you have a concern with some of your classes. Would you be willing to share those concerns with me? If you prefer to talk, perhaps we can set up a phone conversation.*

*APP. 016.*

37.     Swift replied at 8:36 p.m., proposing times to meet. *APP. 016.*

38.     Heald responded at 8:43 p.m. indicating available meeting times. *APP. 017.*

39.     Swift responded at 9:37 p.m. asking Heald to meet first thing in the morning. *APP. 017.*

40.     At 9:39 p.m. Heald responded to Swift asking to meet at 8:15 a.m. *APP. 017.*

41.     Swift replied at 9:45 p.m. indicating she and her mother would come to Heald's office. *APP. 017.*

42.     Heald responded at 10:31 p.m. indicating the meeting would take place in a nearby conference room. *APP. 018.*

43.     Heald met with Swift and Kostopoulos in Keane Hall at 8:15 a.m. on September 8, 2020. *APP. 018.*

44.     At 10:01 a.m. on September 8, 2020, Keleher-Garfoot responded to Swift's 10:07 p.m. September 7 email, indicating she could meet with Swift and Kostopoulos at 1:00 p.m. on September 8, 2020. *APP. 019-020.*

45.     Swift replied indicating that 1:00 p.m. worked for her and her mother, and the group arranged to meet in 554 of the Alumni Campus Center. *APP. 019.*

46.     Keleher-Garfoot provided the following summary of the meeting that took place at 1:00 p.m. on September 8, 2020:

*Met with them [Swift and Kostopoulos] in 554 ACC at 1 p.m., on Tuesday, September 8. Rachael walked through the incident with me again, gave her the option and she chose to talk about it. Claimed the front door was locked. I apologized for it happening and noted that we had already changed the locks with*

*new keys at info for her and her roommates to pick up. We discussed window bars and door alarms, showed them what we've ordered in the past on Amazon. Explained I did not have any on hand, but would order immediately, which I did right after our meeting concluded. They expressed wanting a deadbolt on the door, an email sent to all of Byrne Oaks, and wanted to know why Loras didn't have blue lights on campus. I said I would ask about the deadbolt, explained that the college had looked into blue lights and would ask the reasoning for not having them and if it would be considered, and as far as the email, I explained we could possibly send something out along the lines of encouraging students to lock doors, remind of safety precautions, etc. At that point, the mom interrupted me and said something along the lines of "Loras doesn't want people to know they allow predators on campus." I tried to explain that this wasn't the case, but as this was the first incident that had been reported to us we wanted to handle the situation in a way that would protect Rachael's and everyone else's privacy, and to be sensitive. The mom repeated her statement about Loras trying to "hide" that we allow predators. Rachael also claimed that this kind of thing has happened multiple times to other apartments and that Loras hasn't done anything…I explained that I can follow up with Campus Safety to be sure, but this type of incident had not been reported until now. I asked if she could provide names or apartments this happened to, and she did not want to share anything. We concluded the meeting. Rachael had already picked up a bedroom key, but informed me that she had switched rooms, and needed a different key (we re-cored C as that is where she was originally, but she needed D because she moved there). I said I can take the wrong key back and see if I can get the new one re-cored today – Rachael gave me both bedroom keys, and then mom asked Rachael if she wanted to keep her current key so she can keep her room locked until it is changed…Rachael said she didn't because the room was unlocked anyway.*

*APP. 015.*

47.     An email was sent to Campus Safety on September 8, 2020, at 5:36 p.m. indicating fob access reports were being investigated and that staff should continue to make extra rounds. *APP. 021.*

48.     The email noted that a female student had reported an intruder in her apartment on September 6, 2020, and asked staff to complete extra rounds on the floor and around the perimeter of the building. *APP. 021.*

49.     Swift agrees Loras did all of the things reflected in the email sent to Campus Safety on September 8, 2020. *APP. 399-402.*

50.     This continued throughout the semester. *APP. 022-023.*

51.     As noted, Loras reviewed fob access records for Bryne Oaks. *APP. 024.*

52.     Entry into Byrne Oaks Residence Hall via exterior doors must be done by scanning a key-fob, which only staff and students have in their possession. *APP. 024.*

53.     Fob access records showed only one individual "fobbing in" around the time of the incident in Swift's apartment. *APP. 024.*

54.     Swift acknowledges Loras took the time to look at the logs and identify someone who had fobbed into the apartment building on or about the time of the incident. *APP. 375-376.*

55.     On September 8, 2020, at 5:13 p.m., Burrows Schumacher contacted the individual, Kyle Hall ("Hall"):

> *I work with Campus Safety and I'm reaching out today because I am investigating a report from this past weekend. A female student reported that on 9/6, around 4:20 a.m., an individual entered her apartment on the first floor of Byrne Oaks and approached her door, room D. I'm reaching out today because our fob access system indicated that you had entered the first floor of Byrne Oaks around 4:03 a.m. on this date, and I am wondering if you may have seen anyone on the floor around that time or anything of concern? If you noticed anything, we would appreciate any information you might be able to share to help us learn more about what happened. We know that from time to time, especially at the beginning of the year, people sometimes get turned around in the building and attempt to enter a door that is not their own – so we're hoping that's what we find by searching further with those who may have been in the area at the time.*

> *APP. 024.*

56.     Hall replied at 9:18 p.m.:

> *When I walked in at that time, I did not see anything suspicious. There was nobody else in the hallways at that time. I went straight to my room, and did not see anything that would be of concern on my way there. Sorry I can't help you out more.*

> *APP. 025.*

57.     Burrows Schumacher replied to Hall at 11:11 p.m. indicating that she appreciated

his reply, and that it was helpful to know he did not see anything. *APP. 025.*

58.    Thereafter, Burrows Schumacher sent an email to Sunleaf, updating him on various happenings in this matter. *APP. 026.*

59.    She communicated that the locks on Swift's apartment had not been changed immediately in the morning of September 8, 2020, as maintenance had indicated they would be, but were changed in the afternoon on September 8, 2020. *APP. 026.*

60.    Burrows Schumacher also indicated Loras was engaging Hall who had accessed Byrne Oaks just 10-15 minutes prior to Swift finding an intruder in her doorway to see if he could provide any helpful information. *APP. 026.*

61.    Hall resided at 103 Byrne Oaks, and the fob report indicated he entered via the main entrance.  Housing records noted Hall has decreased eyesight due to visual development. *APP. 026.*

62.    On September 9, 2020, at 10:36 a.m., Hall again replied to Burrows Schumacher indicating the following:

> *That would've been the only place where I would've saw something, but like I said, nobody was in the hallways at that time when I got back.  I don't know about upstairs because there was no need for me to go up there since my room is on the first floor.*

> *APP. 027.*

63.    Burrows Schumacher noted that she was surprised by Hall's second response, and felt it seemed slightly defensive. *APP. 028*

64.    Heald sent an email to Swift at 8:00 a.m. on Thursday, September 10, 2020, indicating that she had spoken with Dr. David Salyer ("Salyer"), Director of Loras' Teacher Education Program and one of Swift's professors, and shared with him Swift's concerns about

instruction in EDU336 and EDU340.[2]:

> *He is going to follow up with both instructors while not revealing your name to either. Please feel free to reach out to Dr. Salyer directly regarding your concerns or if you have any additional information. It is possible Dr. Salyer will ask to speak with you about this on Friday when he sees you in class. Rest assured, I told him you did not have any concerns with his class. Please do let me know if you have continuing concerns.*

*APP. 018.*

65.    On September 11, 2020, Keleher-Garfoot emailed McDermott, Physical Plant, at 9:28 a.m. to discuss the possibility of an additional deadbolt lock installation on Swift's apartment door. *APP. 029.*

66.    McDermott replied at 9:32 a.m. indicating that it was not possible to install the deadbolt lock on the apartment. *APP. 030.*

67.    At 10:00 a.m. on September 11, 2020, James E. Collins, President of Loras ("President Collins"), spoke on the telephone with Swift and Kostopoulos. *APP. 031-033.*

68.    President Collins expressed empathy for the very difficult impact Swift had to experience in having a man enter her apartment while she was asleep. *APP. 031-033.*

69.    He also offered Loras' support services including Spiritual Life, Counseling, and Academic Services, if Swift was interested. *APP. 031-033.*

70.    Swift gave President Collins permission to have Loras' Counseling Center contact her. *APP. 031-033.*

71.    During the telephone call, Kostopoulos advanced a number of concerns on Swift's behalf that included: (a) a campus safety officer's alleged lack of serious treatment of the incident; (b) Loras' lack of responsiveness; (c) Loras' unwillingness to post an announcement to the campus; (d) Loras' failure in not deadbolting the door; (e) the lack of quality being provided

---

[2] These concerns were not related to the incident that occurred on September 6, 2020.

by some of Swift's faculty; and (f) the Academic Dean's insensitivity when they met with Swift. *APP. 031-033*.

72.     Although President Collins knew Kostopoulos' statements were inaccurate, he agreed to follow up with his respective colleagues about each of the issues advanced. *APP. 031-033*.

73.     Following the telephone call, President Collins contacted Sunleaf, Heald, and Director of Counseling, Tricia Borelli, ("Borelli") regarding the concerns addressed in his call with Swift and Kostopoulos. *APP. 031-033*.

74.     Borelli, the Director of Loras' Student Counseling Center, emailed Swift on September 11, 2020 at 11:01 a.m.:

> *I just got off the phone with President Collins who shared with me your unfortunate experience in BO earlier this week. I'm so sorry. That must have been really scary. I wanted to reach out and offer support and see if you wanted to talk either via telehealth while you are home, or in person when you get back. We are meeting with students both here in the Counseling Center which is right next to the Health Center in the ACC and online through a program called doxy.*

> *APP. 034.*

58.     On September 14, 2020, at 12:48 a.m., Swift completed an Incident Report Information, listing the involved parties as Dean Waterbury (believed to be Sunleaf), President Collins, Assistant Dean of Residence Life Katie (believed to be Keleher-Garfoot), and unknown male intruder.  The Incident Report Information stated:

> *On September 6, 2020, an unknown male broke into my campus apartment.  I reported the incident to campus police, Dubuque PD, Residence Advisors, Dean of Students, Assistant Dean of Residence Life, and Loras President.  I have requested that Loras provide additional safety measures including by not limited to a deadbolt lock, yet Loras has done nothing to protect my safety.  Additionally, I have asked for information about the investigation into who broke into my apartment, but have received limited updates.  I believe Loras is discriminating against me because I am a female student that has been*

*subjected to a sexual assault[3].*

*APP. 035-036.*

59.     Swift admitted the intruder never made physical contact with her, that she did not know the intruder's intent and the intruder made no gestures of any type that Swift concluded were motivated by sexual desire. *APP. 426-427.*

60.     Swift agrees that the only report she filed with the Dubuque Police Department was one for improper entry into her apartment.  She never filed a report claiming alleging sexual assault. *APP. 463*.

61.     Swift admits Loras never told her that, because she is female, she should have done something differently or, because she is female, she was at fault for what occurred. *APP. 429-430; APP. 450*.

62.     Swift cannot provide an example of where a male student made a complaint and Loras treated the male student differently than it treated her regarding her complaints over the September 6th, 2020, incident. *APP. 537-538.*

63.     At 12:08 p.m. on September 15, 2020, Keleher-Garfoot emailed Swift:

*I just got the bars for windows and door alarms in the mail this morning.  So those are ready – would you like me to leave them at the information desk for you or would you like assistance putting them up?  I can ask one of your CAs to bring them by if you would like assistance, just let me know.  Just one for the front door or one for any of the bedrooms as well?*

*You had asked about a deadbolt on the front door.  I was told it would not be possible by the physical plant.  If you have more questions, I have cc'd John McDermott on this message – he may be able to answer any additional questions you have about that.*

*For requesting a copy of the report, you can request it via email – so you can reply to this message with the request and we can provide the copy.*

---

[3] This appears to be the first time Swift characterized the incident as "sexual assault" and as "discrimination".

*I also have an answer to your question about the blue lights. Student Union looked into blue lights as an option on campus, and has done so periodically over the past few years. From what I understand, survey responses were college from our students, and most students indicated that their first choice for call would be their cell phone. There were also challenges at other schools that have them with false reporting, and the last time this was researched, there were institutions removing the posts from their campuses. However, we can definitely bring the idea forward again to the college for review at your request? It will take about a week to gather pricing information for available options, but we can create a proposal for consideration. Are there any specific places you were hoping to see blue lights? We have a layout we have used in past considerations, but if there other areas from the student perspective to consider, that would be helpful.*

*Please let me know how many of the door alarms you would like and if you would like assistance putting in the bars and alarms up, and we'll make arrangements from there. Thank you!*

*APP. 037.*

64.  At 12:25 p.m. on September 15, 2020, Burrows Schumacher notified Sunleaf that she was working to finalize the move of a Hoffmann Hall surveillance camera to the Byrne Oaks entrance (also spanning an area immediately outside the entrance) to help with Swift's concerns. *APP. 038.* She also mentioned that the Swift family had requested blue light cams, and that they could submit a proposal with any feedback provided from the family. *Id.*

65.  Burrows Schumacher was made aware (from Keleher-Garfoot's email to Swift) that the requested deadbolt for Swift's door was not possible. *APP. 037.*

66.  Burrows Schumacher contacted McDermott on September 15, 2020 at 3:52 p.m. and requested installing a deadbolt on 101 Byrne Oaks. *APP. 039.*

67.  McDermott replied at 7:30 a.m. on September 17, 2020, indicating that he forwarded the deadbolt request to Dan Walling of Locksmith Express, for pricing, noting the doors carry a fire rating and he wasn't sure the deadbolt would impact that rating. *APP. 039.*

68.  Walling replied to McDermott stating that he would work on the request. *APP. 039.*

69.     Swift agrees Loras gave her explanations in response to her requests for the installation of an apartment deadbolt and the placement of blue lights on campus. *APP. 537-538.*

70.     The Title IX policy is located in Loras' Student Handbook. *APP. 040-047.*

71.     At the request of Nancy Zachar Fett ("Zachar Fett"), Loras' Title IX Coordinator, Burrows Schumacher contacted Swift via email on September 15, 2020, at 6:40 p.m.:

> *Nancy Zachar Fett, the college's Title IX coordinator, was in contact with me today and asked that I reach out to you to see if you would like to talk with/meet with a Title IX investigator on campus to discuss a recently filed report. Right now, the college has three trained Title IX investigators for student cases and they are myself, Matthew Saylor (Campus Safety), and Katie Keleher-Garfoot (Residence Life). Matt and Katie would both be able to meet in person with you to discuss the process; I am available by Zoom only at this time for medical reasons but am happy to assist in any way I can. I'm not sure if you have a preference, but if I can assist with setting up an appointment with any of these investigators, please do let me know. I'm attaching a resource that provides additional information about college's sexual misconduct policy, the processes available on or off campus, and local resources that might be helpful for you at this time. Please let me know if you have any questions or if I can be of service at this time or provide any support at this time.*

> *APP. 048.*

72.     On September 15, 2020, at 7:09 p.m., Zachar Fett responded via email to a phone call to her office phone from Swift.

> *Thank you for your phone call. I have not been in my office all week and am not sure when you left your message. Thank you for having the courage to advocate for yourself on this personal matter. I only wish more women did. You will likely be contacted by one of two people: Matt Saylor in Security or Molly Burrows Schumacher in Student Life. They will conduct an investigation, ask for your side of the story, if there are witnesses, etc. They will also contact the alleged perpetrator to discuss the matter.*

> *My role is to assure the process is followed, monitor the report, ask questions, and suggest alternative approaches/questions/theories and assure the matter is handled professionally, according to our policy, and with utter fairness.*

> *If you feel like you are not being heard, please contact me. It is important to me (and the College) that anyone who comes forward is supported and listened to. Let me know if you have any questions NZF*

*APP. 049.*

73.    Zachar Fett's email contained links to relevant sections of the Loras Student

Handbook. *APP. 049.*

74.    Swift agrees that Fett's statement to her "Thank you for having the courage to

advocate for yourself" was supportive. *APP. 452.*

75.    Swift admits that she received the College's invitation to meet with either Saylor,

Keleher-Garfoot or Fett concerning her Title IX claim, but she never did so. *APP. 467-468; APP.*

*482-483.*

76.    On September 15, 2020, at 9:32 p.m., Burrows Schumacher sent Swift an email:

*Your recent report [Swift's September 14, 2020 report] was routed to me today for review.  I apologize if you felt you did not receive a response to your requests.  If you could let me know who you reached out to, I will follow up to see what additional information is available but wanted to provide what updates I am aware of at this time.*

*Since the incident, Campus Safety has increased rounds on the interior and exterior of the facility as well as the surrounding grounds.  Part of those rounds includes checking common areas and corridors for those who do not live in the building, un-propping doors if they are propped, and monitoring the areas behind the building as well. While helpful in the pursuit of campus safety, this increased surveillance has not provided any additional information regarding your case.*

*We have been able to contact those who fobbed into the building shortly before the incident occurred – including a student who lived in an apartment near yours, who fobbed in around the time the incident occurred.  He indicated he did not see anything unusual or encounter any other students while moving from the entrance to his apartment.  Our other fob accesses (based on access time) are less likely to have information, but we will be following these leads as well.  I noticed in your report you contacted the Dubuque police about what occurred – did they offer you a case number you are willing to share with the college?  While we provide campus safety officers on campus, we are not a police force – so when there is a corresponding police report, we like to contact the local officer connected with the case to provide what information we do have since local PD has additional avenues they can explore as sworn law enforcement officers.*

*I am aware you requested a deadbolt be added to your door at Byrne Oaks, and I saw today that the Physical Plant indicated they would not be able to honor that*

*request. Please know that we are resubmitting the request. I can't promise it will change the answer, but we are advocating to do what will make you feel most comfortable in your space. I'm also aware you/your family has requested blue light poles on campus. I am gathering current pricing for these poles to see what options might be available, and will submit that information for review. If you would like to provide a letter of support about this request, or have a specific idea in mind of where you would like to see a blue light that will best benefit students, please let me know and I will include this information in the request.*

*Additionally, I have submitted a request to have a surveillance camera installed at the access point at Byrne Oaks. The camera would be motion activated and would record when movement is in the vicinity, allowing us to further track who is entering and exiting the building. IT is currently checking to see if we have the capability of supporting a camera in this area. We will keep you posted on these projects as additional information becomes available. While this is not an exhaustive list of what is occurring, I want to assure you that the college is taking your concerns seriously.*

*In your report, you also mentioned that you have been subjected to a sexual assault. I am so very sorry to hear this and want to provide any support I can to be of help to you. Your story is yours to share in your own time as you are comfortable, but if there are supports you need on campus, or if you would like to discuss the process on or off campus for filing a report of sexual assault, I'm willing to assist in any way I can that meets your needs. There is a campus resource packet I can share with you that might be helpful in explaining local resources, accommodations, and how cases move forward on and off campus. If you are interested in this resource, please let me know and I will send it to you via email.*

*Please let me know if you have any additional questions.*

*APP. 050-051.*

77.     Swift admits she possesses no information or documents to indicate Loras did not

do all of the things set forth in Burrows Schumacher's September 15, 2020 email, and in response

to her concerns over the September 6, 2020 incident. *APP. 455-463.*

78.     At 9:45 p.m. on September 15, 2020, Swift responded to Borelli's email sent on

September 11, 2021:

*I want to apologize for the late response. I haven't been on campus since Friday. I am [sic] already have someone who I am talking to about what happened. If I need any more help I will contact you.*

*APP. 052.*

79.    On Thursday, September 17, 2020, at 2:47 p.m., Swift emailed Burrows Schumacher indicating:

*I have received your emails. I wanted to keep you in the loop. I'm trying to set up an in-person meeting with Nancy Fett for some time tomorrow. Thank you for finally reaching out and updating me.*

*APP. 053.*

80.    Burrows Schumacher replied at 3:16 p.m. on September 17, indicating:

*I'm glad to see your reply, and I'm glad to hear you are connecting with Nancy. Please know I'm here if you need anything. I can share the following updates today  - Technology has indicated we should be able to install a camera at Byrne Oaks, and are in the process of testing the unit now. I'm still waiting for price estimate back on blue lights, but will keep you posted. And maintenance has contacted a locksmith to see the best way to install a deadbolt on the apartment at Byrne Oaks. I'm not sure I fully understand the challenges, but it has something to do with installing the lock in a way that maintains the required fire rating on the door. The locksmith indicated he would be in touch soon with an update. I'll share more when we know more. Thanks –*

*APP. 053.*

81.    Swift responded to Zachar Fett's September 15, 2020 email on September 17, 2020, apologizing for the late response.

*I have been off campus since yesterday and then had to move to a hotel yesterday afternoon. Can we meet tomorrow in person to talk about the details in regard to my Title IX Claim.*

*APP. 056.*

82.    Zachar Fett responded at 3:00 p.m. on September 17, 2020, indicating that she could meet on Monday.

*APP. 056.*

83.    Swift also responded to Keleher-Garfoot's September 15, 2020, email on September 17, 2020.

*I have been home since Friday. I came back Wednesday to finish the week in soccer. I'm staying in a hotel because I didn't feel comfortable at the apartment. The other 5 girls in the apartment are also scared and sleep in the same room some nights. I will be returning home for the unforeseen future because I couldn't and didn't feel safe in the apartment without the safety measures that were asked for. I'm not on campus and would prefer if someone came and installed the door alarms and window blockers in the apartment. We need 2 door alarms and 9 window blockers.*

*APP. 054.*

84. Keleher–Garfoot reported that Residence Assistant Kiki Cabrera took the door alarms and window blockers to Swift's apartment. *APP. 054.* Per Keleher-Garfoot, Cabrera indicated that all of the women in the apartment were "fine" when talking to her. *Id.*

85. Swift replied to Zachar Fett's September 17, 2020, 3:00 p.m. email on September 24, 2020, at 11:25 a.m.

*Sorry for the late response. I have moved home indefinitely. I've been trying to adjust to being home and balancing school work. Can we still talk over the phone? I would really like to talk about how the whole situation was handle and why I filed the claim. What times work best for you? Once again, sorry for the late response.*

*APP. 055-056.*

86. Zachar Fett responded to Swift's email on September 29, 2020, at 7:08 a.m., proposing several times when the two women could meet. *APP. 055.*

87. Zachar Fett ultimately did not meet with Swift, as Swift never replied to Zachar Fett's proposed times for a meeting. *APP. 055.*

88. On October 8, 2020, Swift and Kostopolous again spoke on the telephone with President Collins. *APP. 031-033.*

89. Kostopolous indicated she preferred working out something directly with Loras, as opposed to engaging a legal approach. *APP. 031-033.*

90. President Collins asked what Swift wanted resolved and/or for Loras to do. *APP.*

*031-033*.

91. Kostopolous alleged all of the academic and residential challenges Swift had to endure were a result of Loras doing nothing to address the incident. *APP. 031-033*.

92. President Collins told Kostopolous this was not true, but for Loras to even consider anything, especially if she was suggesting a financial concession, he would need a written communication specifically identifying the issues and what was desired. *APP. 031-033*.

93. Kostopolous asked if she could send the details through an email. *Id*. President Collins said, "yes," and provided his email address. *APP. 031-033*.

94. Kostopolous stated President Collins was the only one listening to their concerns, and thanked him for his time. *APP. 031-033*.

95. In December of 2020, a group of students living in another apartment in Byrne Oaks installed a camera in the kitchen at the entrance to their third-floor apartment because they thought one of the roommates was taking another's food. *APP. 007-009; APP. 057-59*.

96. On December 5, 2020, the camera captured Hall entering their apartment (the students admitted they failed to lock their door), proceed to the kitchen, realize he was on camera, and exit the apartment. *APP. 007-009; APP. 057-59*.

97. Police were called, and Hall was located. *APP. 007-009; APP. 057-59*.

98. Hall did indicate (per Loras' officer on the scene, Mark Sutter) that he had entered at least one other apartment at Byrne Oaks but indicated that these entries were on accident. *APP. 007-009; APP. 057-59*.

99. He noted that he had lived in the building for several years in different apartments and was confused. *APP. 007-009; APP. 057-59*.

100. At that time, Hall lived on the first floor of Byrne Oaks Residence Hall. *APP. 007-*

*009; APP. 057-59.*

101.    On December 5, 2020, Burrows Schumacher wrote to Hall, directing him to depart campus immediately (and no later than 5:00 p.m.) due to a Campus Safety report and video footage alleged to depict him entering without permission apartment 301 Byrne Oaks.  *APP. 060.*

102.    Burrows Schumacher informed Hall he was to have no presence on campus while the matter was further investigated. *APP. 060.*

103.    Swift admits Loras queried Kyle Hall about the September 6, 2020 incident and he denied seeing anything. *APP. 501.*

104.    Swift admits Loras asked Hall if he entered any other apartments (which would include Swift's apartment), and he denied it. *APP. 523-524.*

105.    On December 7, 2020,  Burrows Schumacher added Hall as a possible suspect for the case involving entry into Swift's apartment based on his involvement in this other incident in Byrne Oaks. *APP. 061.*

106.    The next day, December 8, 2020, after consultation with Sunleaf, Burrows Schumacher notified Swift via email that a suspect had been identified in her case. *APP. 062.*

107.    Burrows Schumacher did not specifically share the name of the individual (due to the Family Educational Rights and Privacy Act ("FERPA").  *APP. 062; APP. 061.*

108.    Burrows Schumacher wrote on December 8, 2020, at 11:13 a.m.:

*I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks.  Law enforcement was notified, and in that process, the suspect (a Loras student) admitted to entering at least 2 apartments over the course of the semester.  This individual has been removed from campus and is not permitted to return.  The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case.  Additionally, your information will be included in our on-campus investigation process so that the individual can be held accountable both on and off campus.*

*We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident in your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew or myself to be included in the college's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.*

*Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions. I've contacted you directly as the filed reports name you as the reporting student. If you would like me to also notify the women you were living with in apartment 101 at the time of the incident, please do let me know and I will do so.*

*APP. 062.*

109.    On December 9, 2020, Swift contacted Zachar Fett via email.

*This is Rachael Swift. I wanted to amend my Title IX claim. I want to add Kyle Hall as part of the claim.*

*APP. 055.*

110.    Neither Loras, nor the Dubuque Police Department, ever confirmed that Kyle Hall was the person who entered Swift's apartment on September 6, 2020. *APP. 007-009.*

111.    Swift admits that neither Loras' investigation nor the Dubuque Police Department's investigation identified Kyle Hall as the person that entered her apartment and that she was unaware of Kyle Hall confessing to anyone that he entered her apartment. *APP. 419; APP. 502-504.*

112.    Zachar Fett contacted Burrows Schumacher on December 9, 2020, indicating that she was not familiar with Swift's case - that they had tried to talk several times and Swift never followed through. *APP. 055.*

113.    On December 16, 2020, Rebecca Fabricius ("Fabricius"), Loras' Director of Clinical Education, mentioned to Burrows Schumacher during a conversation regarding Hall, that both Swift and Hall were education majors. *APP. 007-009.*

23

114.    Fabricius indicated Swift and Hall would not likely have crossed paths very often because they came into the program at different times and Hall was finishing up an extra semester. *APP. 007-009.*

115.    On December 17, 2020, at 1:59 p.m., Matt Saylor ("Saylor") shared with Burrows Schumacher and Sunleaf via email that he had received a call from the Dubuque Police Department, who stated that the Telegraph Herald ("TH"), the local Dubuque newspaper, contacted the Dubuque Police Department about the incident at Byrne Oaks. *APP. 063.*

116.    The Dubuque Police Department shared with the TH that it was working together with Loras on the incident. *APP. 063.*

117.    On December 17, 2020, at 3:08 p.m., Zachar Fett received an email from Bradley Levison ("Levison"), attorney for Swift, with Swift cc'd on the message.

> *Per my message, I represent Rachael Swift and I am following up on the status of the Title IX Complaint she filed in September 2020. As you know, the student (Kyle Hall) that broke into Rachael's apartment was caught and now that we know his identity, Rachael wanted to add the student to her complaint. I would appreciate an update on the status of Rachael's Title IX Complaint. Rachael is copied on this email. You may reach me at 312.819.6360.*

> *APP. 064.*

118.    On December 17, 2020 at 3:54 p.m., Zachar Fett contacted Sunleaf and Burrows Schumacher to discuss the response to Levison's email. *APP. 066.* Sunleaf indicated that the school's attorney (Rich Whitty) should be involved in the process to assist with the reply. *APP. 065.*

119.    On December 17, 2020, at 3:23 p.m., Burrows Schumacher followed up on her December 8, 2020, email to Swift regarding speaking with an officer about her case.:

> *I've connected with Officer Brianna Marzette at the Dubuque Police Department. She has indicated that if you would like to speak with her about the investigation and/or your case, if you could provide the best way to contact you (email, phone*

24

*and number, etc) she will contact you. If you'd like her to reach out to you, could you please provide the best way to do so at this time?*

*APP. 067.*

120.     While the exact date is unknown, Loras was made aware by Pucci, Swift's soccer coach, that both Hall and Swift were a part of the education program at Loras. *APP. 068-070.*

121.     At this time, Hall had been removed from and banned from campus while the investigation into the incident was ongoing by the Dubuque Police Department and by Loras, but days earlier (and prior to his identification on video) he had virtually assisted with a final exam involving Swift. *APP. 060; APP. 070.*

122.     Pucci indicated that Swift was disturbed and concerned that this happened. *APP. 070.*

123.     Loras was not aware of these concerns until Pucci reported them to Sunleaf and Burrows Schumacher. *APP. 070.*

124.     Hall was done with his finals, and he had been removed from campus. *APP. 060.*

125.     Loras never disclosed Hall's name to Swift as the person who entered her apartment, indicating only that a "suspect" that had engaged in similar conduct had been identified. *APP. 071-072.*

126.     On December 22, 2020, Burrows Schumacher contacted Salyer at the request of Sunleaf regarding Swift's student teaching placement. *APP. 075.*

127.     Burrows Schumacher noted that if there was anything Loras could do to help honor a student teaching placement request submitted by Swift, it would be helpful. *APP. 075.*

128.     Loras generally requires its education majors to complete student teaching placement in Iowa, but due to Swift leaving Iowa to return to Illinois, Burrows Schumacher was hopeful the College of Education could make an exception. *APP. 073-075.*

129.    Fabricius responded and said she understood the need based on conversations with Swift and that the process had been started. *APP. 074.*

130.    After this conversation, Salyer, Burrows Schumacher, Fabricius and Sunleaf exchanged correspondence regarding Swift's student teaching placement for Spring 2021. *APP. 073-075.*

131.    While trying to finalize the placement near her home, it was noted that Swift was not currently enrolled in spring classes at Loras due to an outstanding matter with the business office. *APP. 073.*

132.    Fabricius corresponded with Swift to remedy the situation, and to otherwise facilitate her requested, out-of-state student teaching placement. *APP. 076.*

133.    Swift agrees that Fabricius provided her the option of student teaching in Dubuque or Arlington Heights, and helped her secure a spot student teaching in Arlington Heights. *APP. 476-477.*

134.    Swift agrees that Loras went above and beyond the normal efforts to facilitate her out-of-area student teaching placement. *APP. 510.*

135.    Burrows Schumacher noticed that Swift still had a housing assignment and meal plan on file for Spring 2021 and contacted her to let her know she would be happy to cancel those items (due to Swift's plan to student teach at home in the spring semester).  *APP. 077-078.*

136.    Burrows Schumacher advised that the items could be re-added at any time should Swift choose to do so. *APP. 077.*

137.    Burrows Schumacher also noted that because Swift indicated she spent most of the fall 2020 semester away from campus, she removed the housing charges on her account for fall and explained how to see those charges credited on the student account. *APP. 078.*

138.    Swift replied to Burrows Schumacher, stating that she would not be returning to campus for the spring semester and indicated that removing these charges would be one less thing she had to worry about. *APP. 077.*

139.    Burrows Schumacher shared this update with Carrie Jones ("Jones"), Director of Student Accounts, and with Sunleaf.  *APP. 079.*

140.    Jones confirmed that the charges were removed from Swift's account.  *APP. 080.*

141.    Swift agrees Loras was looking out for her financial best interests when it did these things. *APP. 515.*

142.    Swift agreed that both in the fall of 2020 and in the spring of 2021 she was still receiving educational services from Loras that ultimately led to her receiving her college degree. *APP. 511.*

143.    On January 11, 2021, President Collins received an email from Kostopoulos. *APP. 081.*

144.    She requested a complete waiver of Swift's tuition for the 2020 school year, "due to the complete failure of Loras College to adequately act after the break-in that occurred at her daughter's campus apartment in September 2020." *APP. 082-083.*

145.    Kostopoulous indicated "we have not heard back from you or anyone at the College regarding this matter since our call-in early October." *APP. 082-083.*

146.    This statement was obviously inaccurate, as representatives from Loras were in contact with Swift, or her retained counsel, at least six times from October 2020 until January 2021. *APP. 071-072; APP. 055-056; APP. 080; APP. 076; APP. 077; APP. 064.*

147.    Despite Loras' efforts to provide additional safety measures to Swift, her roommates and the entire Byrne Oaks Residence Hall, as well as to offer Swift counseling and

educational support while continuing to investigate the apartment entry, Kostopoulos continued to reiterate that Loras had "fail[ed] Rachael and her fellow students at Loras with their lack of attention to this matter." *APP. 082-083.*

148. On January 14, 2021, Burrows Schumacher and Saylor interviewed Kyle Hall via Zoom to discuss why he was found on video camera entering an apartment he did not live in on December 5, 2020 at 301 Bryne Oaks. *APP. 084; APP. 007-009.*

149. While interviewing Hall regarding the incident with apartment 301, Burrows Schumacher also asked whether he had entered any other apartments that were not his own in any other instances. *APP. 084; APP. 007-009.*

150. Hall indicated no. Again, neither Loras, nor the Dubuque Police Department, were ever able to connect Hall with the unauthorized entrance into Swift's apartment. *APP. 084; APP. 007-009.*

151. On January 26, 2021, Burrows Schumacher emailed Swift, informing her that Loras was continuing to investigate the September 6, 2020 incident with the intent of holding the individual accountable for any violations of Loras' Code of Conduct. *APP. 085-086.*

152. Burrows Schumacher inquired if there was additional information Swift wanted included in the investigation record. *APP. 085.*

153. Burrows Schumacher advised that she was available to speak with Swift at her convenience or could arrange for her to meet with an investigator. *APP. 085.*

154. Burrows Schumacher advised that when the investigation was complete the case would transition to Loras' Hearing Board. *APP. 085.*

155. Burrows Schumacher asked Swift to reply if she wanted to participate in the hearing and, if so, informed her that she would place her in touch with Kelsey Callahan

("Callahan), Assistant Director of Student Life, who assists students in preparing for hearing participation. *APP. 086.*

156.    On February 2, 2021, Burrows Schumacher emailed Swift, again inviting her to share any additional or new information she had regarding the September 6, 2020 incident and again inviting her to participate in the hearing board process. *APP. 085.*

157.    Troy Wright, Loras' Director of Human Resources, conducted an internal investigation of Swift's discrimination claim.  In connection therewith, Wright sent inquiries to various Loras administrators, soliciting information and documents from them concerning Swift's allegations and Loras' actions and assessments in response thereto.  *APP. 087-259.*

158.    On February 9, 2021, Wright emailed Swift.

*First and foremost, I am deeply sorry that this incident happened to you on our campus. I cannot imagine how scared that must have made you. It is my sincere hope that you are finding comfort again.*

*I will be conducting the investigation related to the discrimination claim that you filed with the College on September 14, 2020. I would greatly appreciate it if you could answer the questions on the attached and return to me at your earliest convenience so that I can use this additional information during my investigation.*

*Please do not hesitate to reach out to me should you have any questions or concerns regarding this process.*

Attached questions-

*After the incident on September 6, the Security Officer, Bob Rosenow, stated that he requested you to contact the Security Info Desk should you ever be staying alone again in your apartment so that Security could perform more rounds in your building and surrounding area. Do you agree with this statement? If so, did you ever contact the Security Info Desk and request for more rounds in your building and surrounding area?*

*Regarding the incident report you filed on September 14, you list parties involved as the Dean of Students, Art Sunleaf, the President, Jim Collins, the Assistant Dean of Residential Life, Molly Burrows-Schumacher, and an unknown male who I will assume you are referring to Officer Rosenow unless you tell me differently. In the incident description section, you state that you believe Loras is discriminating*

29

*against you because you are a female student that has been subjected to a sexual assault. Please provide detailed information as to the action(s) that each of these individuals took toward you that made you feel as though you were being discriminated against due to you being a female student subjected to a sexual assault.*

*Please provide all other information that you feel would be relevant to this investigation.*

*APP. 260-261.*

159.    On February 10, 2021, Swift responded, via email, to Burrows Schumacher, stating "I would like to be a part of the hearing". *APP. 262.*

160.    Burrows Schumacher replied the same day, indicating Callahan would contact her to discuss the hearing process and answer any questions. *APP. 262.*

161.    On February 17, 2021, Wright left a voicemail on Swift's cell phone following up on his February 9, 2021 email, as he had not received a response. *APP. 263.*

162.    Thereafter, on February 25, 2021, Swift responded to Wright's email.

*Thank you for reaching out to me. I appreciate someone at the College finally addressing some of my issues, concerns and complaint.*

*My complaint was originally filed in September 2020 and it is now almost March 2021. What has the school done over the last approximate six months? As my mom and I told President Collins, if the College had taken my complaint seriously when it was filed then the break in of at least three female apartments could have possibly been avoided. Please let me know what the College has done since September 2020 and why the College is now reaching out to me.*

*I want to make sure that the College understands my complaint. I originally filed a Title IX complaint in September 2020 because I believe that the College was treating me differently based on my gender. Specifically, I felt that the College treated me as "hysterical woman" that was overreacting. I believe that if I was a man, the College would have taken me more seriously and would have responded differently. I also believe that my apartment was broken into because I am a woman and that the perpetrator (Kyle Hall) was motivated by sexual or gender based desires.*

*As we proceed with this process, I will be happy to answer any questions you may have. I noticed that you are the College's Human Resources Director. As the HR*

*Director, what is your role in this process? With respect to your inquiries:*

*The school security officer never said nor did what was listed in your email. The security officer only said that I could contact security for an escort if it was dark and I felt worried about going to my car or going a friend's apartment. I was on the phone with my mother during the time he was in my apartment and she heard the exact same thing.*

*My position is that the College's response was discriminatory based upon the fact that the College did not believe my claim because I am woman. The College never took my complaint or my requests seriously. The College attempted to claim the sexual assault by this person did not occur and otherwise downplayed my concerns and fears. The College also tried to downplay the intrusion and assault as just someone in the wrong apartment. The College treated me as a "hysterical female" that was too dumb or too emotional to know what was going on. The break in was not an attempt to steal; the break in was sexually motivated. This has been a devasting and damaging assault for me and the College did not take it seriously. The College's attempt to ignore the break in and assault and there attempt to make me believe this assault did not happen is unacceptable, shameful and disgusting.*

*APP. 264.*

163.     The Hearing Board policy is located in the Loras' Student Handbook. *APP. 265-267.*

164.     The hearing was conducted on March 15, 2021. *APP. 272.*

165.     From February 18, 2021 to March 26, 2021 Swift exchanged emails with Callahan to obtain answers to her questions concerning the hearing board process, to prepare her for participation at the hearing, and to discuss post-hearing developments. *APP. 268-286.*

166.     On March 4, 2021, Wright responded to Swift.

*Thank you for getting back to me. I can assure you that the College has addressed and is continuing to address your issues, concerns and complaint. Please note that after you called our Security Office in September 2020, the College has taken your complaint very seriously. Listed below are some, not all, of the action taken to address your concerns.*

- ✓ *Increased awareness of concerns and increased campus patrols;*
- ✓ *Timely replies to all e-mails from you and your family/representatives wherein concerns were raised over the incident and over campus safety;*
- ✓ *In-person meetings with you and your family/representatives to discuss your concerns;*
- ✓ *Increased RA assessment;*

31

- ✓ *Changing the locks;*
- ✓ *Reviewing fob access logs;*
- ✓ *Advising of suspect identification possibly linked to the incident;*
- ✓ *Greater awareness of personal safety;*
- ✓ *Window bars and other physical barriers;*
- ✓ *Working to determine if deadbolts could be added;*
- ✓ *Working to determine if additional security such as cameras was appropriate;*
- ✓ *Seeking additional dialogue and opinions from you on the appropriateness and acceptability of these and other steps implemented by the College.*

*One of my roles at Loras College is to investigate claims regarding employees. Once you named multiple employees of the College, I was brought in to investigate your discrimination claim.*

*Thank you for responding to the initial questions I sent you. I will be in touch should I need additional information.*

*APP. 287.*

167.    On March 15, 2021, Swift emailed Wright and Zachar Fett, informing them that she would be on campus that day for the Hall hearing and suggesting they meet thereafter. *APP. 263.*

168.    Wright replied, stating due to very short notice and prior commitments, he and Zachar Fett could not meet that day. *APP. 263.*

169.    Several students (including Swift) participated in the March 15, 2021 hearing. *APP. 288-302.*

170.    A record was kept concerning the hearing procedures and the evidence. *APP. 288-302.*

171.    On March 22, 2021, Loras notified Hall of the final outcome of the hearing board process. *APP. 303.*

172.    Hall was disciplined for entering an apartment that was not his, 301 Byrne Oaks, without permission. *APP. 303.*

173.    Loras banned Hall from the campus indefinitely, with the opportunity to appeal

this decision after seven (7) years. *APP. 303.*

174.    Further, the incident was referred to the Education Department, who were responsible for deciding whether Hall would receive his teaching license. *APP. 303.*

175.    After sending the March 4, 2021 email, Wright did not receive a response from Swift until March 25, 2021, when Swift emailed Wright and Zachar Fett, stating she "would like a full update on the investigation that you have completed so far. I would also like to know when I can expect a hearing to be held". *APP. 304.*

176.    Wright responded the next day, advising "The investigation has been completed and a certified letter is being sent to you today." *APP. 304.*

177.    On March 26, 2021, Wright sent a certified letter to Swift, stating that while Loras understood that the entry into her apartment on September 6, 2020 was a deeply concerning event, Loras' investigation into the incident determined that the entry did not meet the definition of sexual harassment as contemplated by Title IX and as described by Loras' Sexual Misconduct Policy and Grievance Procedures. *APP. 305-306.*

178.    Loras closed its investigation and dismissed Swift's Title IX allegations. *APP. 305-306*. No further correspondence occurred between Loras and Swift after March 26, 2021. *Id.*

179.    Swift admits that if there is a written record of correspondence (emails, etc.) she or her representatives exchanged with Loras, what is set forth therein is what happened. *APP. 541.*

180.    Swift admits Loras never ignored inquiries from her or her family related to the incident. *APP. 454.*

181.    Swift was conferred a four-year degree from Loras in elementary education with an endorsement in math in 2021. *APP. 325.*

182.    On September 6, 2022, Swift filed suit against Loras, contending she was the

victim of discrimination in violation of Title IX of the Education Amendments of 1972 because she was a female student subjected to voyeurism (a form of nonverbal, sexual misconduct). *APP. 307 and APP. 310 – Complaint,* ¶¶ 1, 19.

183.   Swift agrees that voyeurism can occur without there being sexual motivation. *APP. 428; APP. 542*.

184.   Swift alleged Loras "displayed a gross lack of comprehension of [its] own written policies for addressing sexual misconduct, and a callous disregard for how the aftermath of the break-in and the badly managed process was profoundly affecting [her] ability to complete her education." *Id.*, ¶ 1.

185.   The suit alleges Loras failed to: adequately increase security within Swift's apartment and for student housing as a whole *APP. 309-310  Complaint,* ¶ 17; extend to Swift the rights outlined in its Title IX Administrative Policy and Procedures, resulting in the denial or loss of certain financial, academic, housing and/or accommodation rights or benefits that would enable her to continue her education *Id.*, ¶ 37; independently investigate the report of sexual misconduct; effectuate its sexual and domestic violence policies and procedures; and timely pursue the disciplinary process, including collecting evidence and witness statements *Id.*, ¶ 47.

186.   The suit seeks reimbursement and repayment for tuition and related expenses; payment of expenses incurred as a consequence of the sexual misconduct *APP. 307-310 ("*Wherefore*" ¶); damages for deprivation of equal access to educational benefits and opportunities *Id.*; damages for past, present and future emotional pain and suffering *Id.*; damages for ongoing and severe mental anguish; damages for loss of past, present and future enjoyment of life *Id.*; damages for loss of past and present earnings and earning capacity *Id.*; and taxation of costs and attorney fees *Id.*.

187. On November 14, 2022, Loras filed and served its Answer and Affirmative Defenses to the Complaint. *APP. 586-592*. Loras denied all material allegations of the Complaint and asserted various, affirmative defenses in response to the contentions and relief identified therein. *Id*.

WHEREFORE, Defendant, Loras College, prays that its Motion for Summary Judgment be granted, that Plaintiff's Complaint be dismissed with prejudice and that costs be taxed to Plaintiff.

*/s/ Christopher P. Jannes*
Christopher P. Jannes AT0003917
Katie E. Gral AT0013357
DENTONS DAVIS BROWN PC
The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, IA 50309-3993
Telephone: 515/288-2500
Email: Chris.Jannes@dentons.com
Email: Katie.Gral@dentons.com

**ATTORNEYS FOR DEFENDANT LORAS COLLEGE**

Benjamin R. Merrill
BROWN, WINICK, GRAVES, GROSS AND BASKERVILLE, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, Iowa 50309-2510
Telephone: 515-242-2400
Email: ben.merrill@brownwinick.com

**ATTORNEY FOR PLAINTIFF, RACHEL SWIFT**

| PROOF OF SERVICE |
|---|
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on September 15, 2023 by: |
| ___ U.S. Mail ___ FAX<br>___ Hand Delivered ___ Overnight Courier<br>___ Federal Express _X_ ECF Filing |
| Signature: */s/ Christopher P. Jannes* |