**Troy M. Wright**

| | |
|---|---|
| **From:** | Tricia S. Borelli |
| **Sent:** | Thursday, February 11, 2021 4:55 PM |
| **To:** | Troy M. Wright |
| **Subject:** | FW: checking in |

Here is the only exchange I had with Rachael. Unfortunately, I never met her in person.

Please let me know if you need anything else.

Tricia

**From:** Tricia S. Borelli
**Sent:** Wednesday, September 16, 2020 9:04 AM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** RE: checking in

Okay. Thanks for checking back in. We are always available if you need more support. ☺

**From:** Rachael N. Swift
**Sent:** Tuesday, September 15, 2020 9:45 PM
**To:** Tricia S. Borelli <Tricia.Borelli@loras.edu>
**Subject:** RE: checking in

Good evening Tricia,

I want to apologize for the late response. I haven't been on campus since Friday. I am already have someone who I am talking to about what happened. If I need any more help I will contact you.

Thank you,

Rachael

**From:** Tricia S. Borelli <Tricia.Borelli@loras.edu>
**Sent:** Friday, September 11, 2020 11:01 AM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** checking in

Hi Rachael,

I just got off of the phone with President Collins who shared with me your unfortunate experience in BO earlier this week. I'm so sorry. That must have been really scary. I wanted to reach out and offer support and see if you wanted to talk either via telehealth while you are home, or in person when you get back. We are meeting with students both here in the Counseling Center which is right next to the Health Center in the ACC and online through a program called doxy.

Please take care of yourself and let me know if you need me to talk with any professors regarding you're not being 100% right now. Please also just let me know how you are doing and if you would like to chat.

1

LORAS 0577

Peace,
Tricia

**LORAS COLLEGE**

**Tricia Sullivan Borelli, MA, LMHC** (She/Hers)
*Director of Counseling Services*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 5200
563.588.7085 | 800.245.6727
tricia.borelli@loras.edu
BE MORE. BE LORAS.

2

LORAS 0578

**Confidential**

Questions for Nancy Fett

- Rachael contacted you on September 17th wanting to meet. You replied that the following day, the 18th, was very busy but offered some times on the following Monday the 21st. Did you follow-up with Rachael between your response on the 17th and her next correspondence to you on the 24th? If not, is this normal protocol not to follow-up?
  - o Actually, she called for the first time sometime before Sept 15 which is when I responded to her first. I chose email so there was some trail.
  - o I have no idea what protocol is with regards to this. I don't remember what she said exactly on the phone but surmised she was a little in between things—I think she talked about possibly going home. I didn't know this student at all so had no idea what to expect with regards to her response time. I tend to assume anyone who gets back to me quickly is really committed/invested.

- Were you aware on the 17th that Rachael was staying at a hotel? If not, when did you learn about this? Honestly, I don't think I paid attention after she said she was off campus. She did say she was in a hotel but I had no recollection of that. I offered some times but didn't hear back.

- Rachael reached out to you again on the 24th indicating that she had moved back home but still wanted to talk. It appears that you did not respond to her until the 29th. What is normal protocol for length of time to respond to a student wanting to talk regarding a Title IX claim?

  - o Sadly I think covid has really impacted all of this. I didn't feel comfortable meeting in person but felt like I kept offering times and then she wouldn't respond to anything I offered.
  - o She contacted me I think late on a Thursday and it just so happened, that was a really busy weekend for my family—Friday I was at Marquette with Ben, vb tournament all day Sat, Sunday was a day retreat for Addie's confirmation. Normally I am VERY responsive to students but again, I think covid has impacted my willingness to check/respond to email during weekend—esp quickly—even I had seen it, I knew it wasn't going to be a quick email and needed to be thought out with calendar in hand so waited until I had time on Monday.

- Were you aware on the 24th that Rachael had moved back home? If not, when did you learn about this? I think she mentioned it in her email. I knew she was home, safe and she mentioned that she was trying to settle into a routine.

- Did you have any contact with Rachael after your response on the 29th until Rachael contacted you on December 9th to amend her claim? Is this normal protocol to not follow-up with the student?

**LORAS 0579**

- o I waited for a response. She never ever responded to anytime I offered. I didn't know if she was serious about really following up on this or if she was losing interest. I felt like I responded, offered different times and she never took me up on anything I offered or suggested times that worked for her. From my perspective, I wasn't going to chase her. I also didn't know if she had connected with anyone else, Molly, Art or others. She is the first student who ever really kept pursuing me to discuss I case. Usually they are more content talking with Molly, Matt or someone else.

- I also believe the end of Sept-Oct-Nov is when the big Thornberg case started up so I got pretty busy with that and honestly I probably just assumed she wasn't pursuing it or talked to someone else because she never took me up on my offerings. I think that is also when I first talked to Rich Whitty about this and I certainly always wanted to make sure there was a chain to follow to show process. I have saved everything from this case and am happy to send everything to anyone who wants to see it.

- Please provide all other information that you feel is relevant to this investigation.

  Again, my thought was after offering options each time I connected with her, my assumption is we were just on different wavelengths and so that she connected with someone else in the Title IX process or that she followed up whenever she felt like it and I never felt it to be urgent on her end since she never accepted any of my offerings or asked for alternative times.

LORAS 0580

**Troy M. Wright**

Of course I am still thinking about this.

I think when I first heard about the student, somehow I deduced she was young, maybe in her first year and so when I heard she was leaving campus, I might have thought or got the impression she was withdrawing. I just recently learned she was a senior completing her student teaching this spring. NZF

Nancy Zachar Fett, LMSW
Assoc. Professor of Social Work
Field Director
1450 Alta Vista, MS #221
Dubuque, IA 52001
563-588-7029, Fax. 563-588-7005

Pronouns: She/Her

1

LORAS 0581

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Troy M. Wright *requested on* |
| **Sent:** | Tuesday, February 9, 2021 3:42 PM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | Information Needed Regarding Rachael Swift's Discrimination Claim |
| **Attachments:** | Molly.docx |

**Importance:**     High

Molly,

I'm conducting an independent investigation into the discrimination claim that Rachael Swift filed with the College on September 14, 2020. Attached are a list of questions for you to answer. In addition, the document contains a specific list of requests for information that you may have in your possession. It would be greatly appreciated if you could answer these questions, gather the requested information and send everything to me at your earliest convenience.

Thanks,

Troy

Troy M. Wright SHRM-SCP, MBA '15
Director of Human Resources
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
**563.588.7816 - P**
563.588.7101 - F
troy.wright@loras.edu
BE MORE. BE LORAS.

LORAS 0582

Confidential

Questions for Molly Burrows-Schumacher related to the discrimination claim filed against Loras College by student, Rachael Swift, on September 14, 2020.

- After the incident on September 6, 2020, did Rachael ever let Security know that she wanted extra rounds to her building and surrounding area due to her or her roommates being afraid or her being alone?
- Do you have a statement on file from Matt Pucci regarding his interaction with Rachael and her mother related to the incident on September 6? If so, please provide.
- Do you have statements on file from Rachael's roommates related to the incident on September 6? If so, please provide.
- Has the incident from September 6 happened on campus in the past? If so, did you process/investigate/communicate/support the victim similarly to this incident with Rachael? If not, what was different?
- Please provide all Security and RA logs that show increased rounds on the interior and exterior of the building Rachael resided in after the September 6 incident.
- Rachael states that she reported the September 6 incident to President Collins. Do you have a copy of that correspondence?
- Rachael's mother had asked you to join the meeting on September 7 at 1:30; however, you declined due to a student health meeting. Is this normal practice to decline meetings with students and their parents to attend other meetings?
- On September 7, you sent an email to Rachael regarding changing locks, etc. Is it protocol to communicate only with students on these matters and not include her mother in the communication?
- Is it normal practice for Nancy Fett, Title IX Coordinator, to ask you to contact the victim to see if they want to talk to a Title IX investigator? Even when Nancy has not yet had an initial conversation with the victim?
- According to Rachael, on September 16 she moved to a hotel. When were you aware of this move?
- Are you aware of any contact or follow-up to Rachael by anyone from the College after September 17 until December 8? Are you aware of any contact/follow-up from Rachael to anyone at the College during this same timeframe?
- On December 8, you notified Rachael that a suspect was caught on camera. Was that camera property of the College? If not, whose camera was it and who set it up?
- You informed Rachael on December 8 that a suspect had been caught on camera. On December 9, Rachael contacted Nancy to amend her claim to include Kyle Hall. Do you know how Rachael found out his name?

LORAS 0583

Please provide documentation of the full correspondences that relate to the following:

- On September 7 at 4 pm when Donna Heald reached out to Rachael.
- On September 7 at 8:34 pm when Rachael replied regarding her interest in the additional safety devices.
- Your email to Art Sunleaf on September 8 at 5:30 pm regarding the locks not changed.
- Donna Heald's email to Rachael on September 10.
- Katie Keleher-Garfoot and John McDermott's correspondence on September 11 regarding a deadbolt.
- Katie Keleher-Garfoot's email correspondence with Rachael on September 15.
- Your email correspondence with Art Sunleaf on September 15 at 12:25 pm and your emails with Rachael on the same day.
- Your email to John McDermott on September 15 at 7:09 pm regarding a deadbolt. *My communication with John McDermott on this date was 3:52 p.m. A subsequent timeline entry involving Nancy Fett occurred at 7:09 p.m. MBS
- Your email correspondence with John McDermott on September 17.
- Your email correspondence with Rachael on September 17.
- Rachael's response to Katie Keleher-Garfoot on September 17 at 2:38 pm.
- Nancy Fett's email to you on September 20 at 10:45 am regarding no reply from Rachael.
- Your complete correspondence with Kyle Hall.
- All email correspondence between Art and Matt Saylor regarding Kyle Hall and Rachael in the Education Program. *Contacted TW on 2/10/21 via email to confirm this should have read correspondence between Art Sunleaf and Matt Pucci regarding this matter. MBS
- All email correspondence between you and Rebecca Fabricius on December 16 regarding Kyle Hall and Rachael.
- Email correspondence between you, Matt Saylor and Art Sunleaf on December 17 regarding the Dubuque PD and the Telegraph Herald.
- Art Sunleaf's email correspondence with Bobbi Earles, Robert Waterbury and Jim Collins on December 17 regarding the Telegraph Herald.
- Email received by Nancy Fett on December 17 from Rachael's attorney and all email correspondence with you and Art Sunleaf regarding this.
- Your email correspondence with Rachael on December 17.
- Copy of the email you sent Rich Whitty on December 18.
- All email correspondence between you, David Salyer and Rebecca Fabricius on December 22.
- All email correspondence between you, Art Sunleaf, Rebecca Fabricius and Donna Heald on January 4, 2021.
- Your correspondence with Rachael on January 5, 2021 and your correspondence with Carrie Jones and Art Sunleaf regarding this matter.
- Please provide all other documentation that has not already been provided that you consider relevant to this claim.

LORAS 0584

Confidential

Questions for Molly Burrows-Schumacher related to the discrimination claim filed against Loras College by student, Rachael Swift, on September 14, 2020.

- After the incident on September 6, 2020, did Rachael ever let Security know that she wanted extra rounds to her building and surrounding area due to her or her roommates being afraid or her being alone?

  To my knowledge, when responding to the incident, Bob Rosenow did rounds of the building and indicated that should Rachael ever be uncomfortable staying alone to please let Safety know, and they would do additional rounds of the building. To my knowledge, Rachael's request for extra rounds was made to Art Sunleaf during their meeting on September 7, 2020. I'm not aware of a request made directly to Campus Safety by Rachael or her roommates following the incident.

- Do you have a statement on file from Matt Pucci regarding his interaction with Rachael and her mother related to the incident on September 6? If so, please provide.

  I do not have a statement from Matt Pucci – our conversation occurred via phone. I do have a copy of my follow up email to Art Sunleaf regarding Matt Pucci's phone call indicating that Matt had shared that Rachael had filed a report about someone walking into her doorway, and that she had gone home, her mother was bringing her back on September 7, 2020, and that Rachael's mother wanted to talk with someone in person when she was on campus. At this time, following my COVID hospitalization, I had just been permitted to return to full days, remote work only, as of August 31, 2020, and knew I would be unable to meet in person with the family as requested. I asked Matt Pucci to refer the situation to Katie Keleher-Garfoot, the Assistant Director of Residence Life, who would be able to meet with the family in person, discuss what had occurred, and answer questions about how we can help because I could not be there in person. See document A.

- Do you have statements on file from Rachael's roommates related to the incident on September 6? If so, please provide.

  Rachael's roommates were not present at the incident on September 6 (Rachael and her roommates indicate they were away for the weekend), so incident statements were not taken from roommates at that time. I have taken a statement from Abigail Eriksen and Olivia Devriese as a part of the investigation into Kyle Hall's potential involvement in their case. I will attach the investigation notes as Document B. Eriksen and Devriese indicated that their other roommates (Jaylen Cangas, Caitlin Farrell, and Caitlin Scopa) shared their concerns but did not attend the Zoom conversation.

  Cangas, Farrell, Scopa, Eriksen, Devriese, and Swift were all contacted on January 26, 2021, regarding the September 6, 2020, incident investigation with an email reviewed by Rich Whitty prior to sending. As mentioned above, Eriksen and Devriese were willing to meet to discuss any additional information they felt might be relevant regarding the incident once a potential suspect was identified, and follow up communications were sent on February 2, 2021, to those we had not yet received a response from. I'm attaching the communications with the other students as Documents C, D, E, and F. I remain in communication with Caitlin Scopa about setting up a time to discuss any information she would like to share. I have not yet had a reply to these emails from Cangas or Farrell. Rachael Swift replied on February 10, 2021, that she would like to participate in the hearing process. For both the communications on January 26 and February 2, 2021, I was asked for forward a copy of what I sent to the students to Rich Whitty, which I did.

1

The only other communication I have received from Rachael's roommates about this incident was in their recent requests to live off campus in 2021-22. The women cite this incident as one of the reasons for their requests to live off campus. Cangas indicates in her request that the fact the incident has occurred has prompted high anxiety that has impacted her life inside the classroom. Cangas notes "I understand there has been more security measures put into place which I am grateful for, but the thin walls and ceilings allow me to hear every noise and they keep me up at night." This request, and my responses are Document G.

Olivia Devriese also requested an exemption from the residency requirement indicating "I personally do not feel safe anymore living in Byrne Oaks" and "Covid is also a huge factor for me living off campus." Devriese concludes her request with the comments "I know you are working hard to stop what happened in September and I thank you for that!" This request, and my responses are Document H.

Caitlin Scopa also requested an exemption, indicating "As you may already know, we were a part of multiple break ins that happened during the first semester and since then, I have had a difficult time sleeping and focusing throughout the day and night." Scopa also notes COVID and noise from others in the community/ADHD as central reasons for her request. This request, and my responses are Document I.

A similar request came from roommate Caitlin Farrell, who noted that the incident in apartment has caused her concern. She explains, "I have trust in each one of my roommates to lock the doors and not let anyone in the building we do not know. That being said, I do not necessarily know everyone in the building, and do not know if they are letting strangers in." Farrell also cites distracting noises from upstairs and the hallways and an anticipated summer job in Dubuque as reasons for her request. This request, and my responses are Document J.

The final request in this group involved Abigail Eriksen. Eriksen's request notes difficulty sleeping because of this incident and not feeling safe. Eriksen notes "I'm not concerned by our campus safety and their services they provide for us, I am more concerned of the other students in our building because I cannot control what they do." Eriksen cites anxiety and concerns about COVID as additional reasons for her request. This request, and my responses are Document K.

I believe Art Sunleaf also spoke via phone fairly recently with the mother of Abigail Eriksen about the issue that occurred at the Byrne Oaks apartment in the fall. If I recall what was shared with me, it was that Abigail's mother wanted to ensure we were still doing what we could to address the issue that had occurred on September 6. Sunleaf may be able to recall additional information about this conversation.

- Has the incident from September 6 happened on campus in the past? If so, did you process/investigate/communicate/support the victim similarly to this incident with Rachael? If not, what was different?

Yes – though not frequently. Byrne Oaks looks very similar when you move from tower to tower and depending on where you enter, and it can be very easy to get turned around approach the wrong apartment door. We have had incidents where someone attempted to enter a wrong apartment through an unlocked door. As a student living in Byrne Oaks in 1996-97, a similar incident occurred in my apartment, 202 Byrne Oaks. We left our entry door unlocked for my roommate's boyfriend that would be stopping by after work. I was in my room when I heard yelling, and walked out to see a man we did not know run out of our apartment. Per my roommate, she was expecting her fiancé, but had fallen asleep. When someone entered her room, she assumed it was her boyfriend. When she realized it was not, she yelled – which caused the male to yell and then flee our apartment. This incident was not reported to Campus Safety at that time because we had left the door unlocked, the individual was gone,

2

LORAS 0586

and 1996 was a very different time than 2021. A short time later, we learned that the individual who entered our room thought he was entering his girlfriend across the hall's apartment (she lived first door on the right from the stairwell – we were first door on the left).

While that's always possible, we don't assume that is what happened in these types of situations. Campus Safety was dispatched, Bob Rosenow responded, checked the interior and exterior of the building and rooms within the apartment for anything unusual, took Rachael's statement, and asked if she was comfortable remaining in the room or would like to stay with a friend. Campus Safety then investigated the incident as they typically would. There were no surveillance cameras in Byrne Oaks at the time of the incident on September 6, 2020, but available fob access records were reviewed at that time, and it was noted that there was one student who lived in the building near the location of the incident and also was returning to the building slightly before the incident. That individual was Kyle Hall. Hall has a vision impairment, so upon learning of his access, we (Matt Saylor and I) questioned if perhaps he mistook their door for his own. Regardless, we reached out to Hall to discuss what he may have seen in the hallway when he returned to the building. He indicated that he returned, went straight to his room, and unfortunately did not see anything unusual. Incidentally, we'd later learn Kyle was the student responsible for accessing Byrne Oaks apartment 301 on December 5, 2020.

To my knowledge via my remote work status, everything proceeded with Rachael Swift's process as it typically would. It would not be unusual for Katie or Art if available and I'm not to take the student/parent meeting and collect information needed to create an action plan about a case. Investigating the incident proved very difficult, as we had no physical description of a suspect other than "male" at that time, no items appeared to have been taken, there were no signs of forced entry, no surveillance programs, and Rachael was unfortunately the only witness. In terms of my involvement, I followed up with Rachael Swift as requested by Art on September 7, updating Rachael on the request to have the locks changed, plan to increase rounds, and offered additional safety devices that might add comfort (a window lock that blocks the window from opening past a certain point, stick on screamer alarms for doors and windows, etc.). Katie Keleher-Garfoot stayed involved on campus with the situation through this time.

On September 14, 2020, Rachael Swift filed a second report in the Advocate system. In that report, Swift indicated who she had met with on campus, and that she had requested additional safety measures including a deadbolt, indicating "yet nothing has been done to protect my safety". Swift noted that she has asked for additional information about the investigation into who broke into her apartment, but have received limited updates. The report notes "I believe Loras is discriminating against me because I am a female that has been subject to sexual assault." This report was surprising and confusing to me – in all that had been communicated to me, I had heard no mention of there being a sexual assault as part of the incident at Byrne Oaks. We searched all information available to determine when a sexual assault was reported as a part of this incident, but found no further information. It was around this same time, Swift had reached out to Nancy Fett via phone, and Fett let Swift know she would be contacted by Matt Saylor or I to conduct an investigation. Fett shared that her role in the process was to make sure the process is followed, monitor the report, ask questions, and suggest alternative approaches/questions/theories and assure the matter is handled professionally, according to our policy, and with utter fairness. Nancy further indicates that if Swift believes she is not being heard, she should contact her. See Document L.

The requested safety devices for the apartment arrived from Amazon to Katie Keleher-Garfoot on September 15, 2020, also right after Rachael's second report. Katie Keleher-Garfoot reached out via email to Swift on Septmeber 15 to discuss information about safety devices, share the physical plant's response regarding the apartment lock, provide information on how to request a copy of her report, and provide information about a request from the family to have blue light poles installed. At this same time, at the request of the students, I had been working to move the one campus surveillance camera Campus Safety has to the entrance to Byrne Oaks at the request of the

3

LORAS 0587

student to add cameras. On that same day (September 15, 2020), I reached out to Swift as I would to other individuals reporting sexual assault (as that was what was indicated in her second report), apologizing that she was not feeling heard, asking who she talked with so I could address that concern, and providing an update at that time. In that update, I indicated that rounds had been increased, we had been in touch with the student who had fobbed in and would have been at an area near that apartment, but that unfortunately, no new information was available. The student and her parent had already contacted local police, and I offered to – if she would like to provide a police report number – reach out to local law enforcement to see how we could partner. I also indicated I would resubmit her request for a deadbolt that had been declined by the physical plant (which I did), and would review information about a blue light pole program on campus, requesting that if she had any specific ideas about what she felt would best benefit students, I would be happy to include that feedback in the proposal. With no further response from the student, and the costs being $3900 - $5600 per blue light pole not including wiring, installing concrete pad, installation of unit, and service to the unit, this project did not move forward last semester. I shared that we had requested the camera install at the main access entrance at Byrne Oaks, and ultimately let Rachael know that I'm so very sorry to hear about a sexual assault and want to provide any support I can to be of help. See Document M. Note: We have revived the project this spring and in addition to the poles requested by Rachael Swift, we are looking into alternative "blue light" programs, such as a program where smaller blue light call boxes might be able to be installed into existing locations on building exteriors. These units would be closer to $2400 – 4000 per unit, plus installation and service.

I again followed up with Swift on September 16, 2020, indicating that Nancy Fett had asked me to reach out, and offered support of a Title IX investigator. Please understand at this point, when Rachael had reached out to Nancy Fett, and indicated that she was subject to a sexual assault, we understood her complaint to be the sexual assault she indicated in the second report. I also referenced the college's sexual misconduct resources and reporting information guide for Rachael at that time, and again offered to assist. See Document N.

On September 17, 2020, Swift responded to my messages indicating that she had received my emails and wanted to keep me in the loop. She shared that she was trying to set up an in-person with Nancy Fett for some time tomorrow (which would have been September 18). See Document O. This document also includes my reply, indicating I'm glad she was meeting with Nancy, I remain happy to help in any way possible, and provided an update on cameras, blue lights, and the deadbolt. I believe this communication was my last communication with Rachael Swift until December 8. Rachael notified Nancy Fett on September 17 that she had been off campus since the previous day and then had to move to a hotel yesterday afternoon, but wanted to meet in person to talk about the details of her Title IX claim. Fett replied indicating she could meet the coming Monday. Rachael also reached out to Katie Keleher-Garfoot on September 17, indicating that she had been at home since Friday, and had come back on Wednesday to stay at a hotel because she didn't feel comfortable in the apartment. In that email, Swift notified Keleher-Garfoot she was returning home for the unforeseen future because she couldn't and didn't feel safe in the apartment without the safety measures that were asked for. Swift responded to Nancy Fett's September 17 email on September 24, indicating that she was sorry about the late reply and had moved home indefinitely – asking if they could still meet over the phone. Fett responded on September 29 to this email, and offered several times to meet. Per Fett, she did not ultimately meet with Swift as she did not reply to her message.

I cannot think of any way the process differed from previous processes. The fact that we had so very little information about the intruder did make progress in this case and holding the perpetrator accountable quite difficult compared to other cases.

- Please provide all Security and RA logs that show increased rounds on the interior and exterior of the building Rachael resided in after the September 6 incident.

4

LORAS 0588

After reading your question, I recognize we may need to document "additional rounds" differently in the future - our practice for Safety at this time is let them know to spend more time in these areas but dates and times of that extra time aren't tracked. I do have email communications (Documents P) that document the request that extra rounds be completed. On September 7, we would have communicated the concern in person to officers on duty to do extra rounds in this area. Officers received an additional specific email from me on September 8 and September 15, and again on November 24 addressing the concerns that occurred as break began that included notices to complete additional rounds in these areas. I asked Aidan Wojciehowski to communicate with the hall staff about what had happened and to complete rounds/be alert in the building. Alternative Housing student staff (Byrne Oaks, LMAC, Smyth Hall, and Campus Houses) don't typically provide regular rounds as part of their community building responsibilities.

- Rachael states that she reported the September 6 incident to President Collins. Do you have a copy of that correspondence?

  I do not have a copy of this correspondence. ████████████████████████████ ████████████████████████████████████████████ I also have an email from Art Sunleaf on January 27, 2021, providing at my request a copy of a letter President Collins received on January 11, 2021, for the case file. Please see Documents Q.

- Rachael's mother had asked you to join the meeting on September 7 at 1:30; however, you declined due to a student health meeting. Is this normal practice to decline meetings with students and their parents to attend other meetings?

  As I mentioned previously, I was just returning to full day remote work following my COVID hospitalization. At that time, I continued to experience debilitating headaches and was experiencing vision disturbances. On September 3, 2021, I was seen in the Finley ER for what was believed to possibly be post-covid blood clots but was ultimately diagnosed as bilateral cellulitis infection in my legs. I was working, but certainly not yet well at this time. I do have a record of my ER visit with diagnosis along with my August 31, 2020, return to remote work release from my doctor that I can provide if needed. It was made very clear by Matt Pucci that the family wanted an in person meeting when they arrived on campus, and in my state of health at that time, I was not able to provide this meeting.

  Document R shows the email communication exchange between myself and the family (the message from the family was also sent to Art Sunleaf). I replied and explained that I too wanted Rachael to feel safe on campus, but was restricted to remote work and could not meet in person so recommended Katie Keleher-Garfoot if they were looking to meet in person – or if they wanted to meet via phone, I would be free at 1:00 p.m. (knowing that I had a scheduled 1:30 p.m. meeting I will describe below). I also indicated that I knew that they had reached out to Dean Sunleaf, and noted that if they would prefer to meet in person with him, I understood.

  Rachael's mother responded to my September 6 email on September 7, at 10:17 a.m. indicating that they were now planning on meeting with Art Sunleaf at 1:30 p.m. and it would be great if I could be involved via phone. I explained that I was not available to meet at 1:30, but would speak with Art about how we can best help moving forward. See Document R.

  My 1:30 p.m. student health meeting on September 7 was a meeting with the health center and area coordinator staff on the 8 cases of COVID (some of our very first cases of covid on campus) and 108 students that had to quickly be quarantined in that week. Residence Life provides the quarantine bed space, helps coordinate meals, helps move students to the space, orders supplies and coordinates that response for on campus students. Because of the urgency of both matters, I spoke with Art and he indicated I should attend the COVID meeting and that he

5

would handle the parent meeting. In our areas, it's not unusual to have multiple urgent matters occurring at the same time. In situations like this, we do make arrangements to manage meetings in this manner. In this instance, Sunleaf was also contacted by the family to meet, able to meet in person as requested, and as VP of Student Development has oversight over Residence Life and Campus Safety – it made sense for him to complete the meeting with the family.

- On September 7, you sent an email to Rachael regarding changing locks, etc. Is it protocol to communicate only with students on these matters and not include her mother in the communication?

  Yes – it would be typical process to include only students in communications from our area. Typically, for my area to be able to communicate about a student's record with a parent, the college would need to have a FERPA wavier on file that permits parental access to student information. Because I would not have typically communicated with the parent at the time you mention, I did not check to see if this wavier was on file with the college.

- Is it normal practice for Nancy Fett, Title IX Coordinator, to ask you to contact the victim to see if they want to talk to a Title IX investigator? Even when Nancy has not yet had an initial conversation with the victim?

  In my role, I'm not always privy to the full conversations Nancy as Title IX coordinator would have privately with students so I can't say with certainty that this would be typical. I would say in our typical process, students often start with an investigator simply because they are meeting with someone (faculty member, counselor, etc.) who connects the student with our office to file a report. In those instances, the investigator would release the case information to Fett via the Advocate system. Fett is consulted as needed/requested during those processes.

- According to Rachael, on September 16 she moved to a hotel. When were you aware of this move?

  On September 17, Rachael indicated to Katie Keleher-Garfoot that she had been home since Friday (September 17 was a Thursday, so this suggests Swift had been home since September 11), and indicated that Wednesday (we assume is September 16) she returned to finish the week in soccer, and was staying at a hotel because she was not comfortable in the hall. In the email to Keleher-Garfoot, Swift indicated she was returning home indefinitely. We did not push Swift to return her keys at that time because we wanted her to be able to access her apartment should she choose to return to campus. See Document S.

  I had no further communication with Rachael Swift regarding housing until January 4-5, 2021, when I noticed that Rachael had not yet withdrawn from her spring housing and meal plan assignment. On January, 5, 2021, I reached out directly to Rachael via email, indicated my understanding was that she would be student teaching at home, and asked if she would like me to cancel her housing and meal plan assignments for spring. At that same time, I shared with Rachael that because she had spent most of the fall semester at home, I removed housing charges for Fall 2020 from her student account. Swift replied, indicating she was not returning to campus for the spring semester, and that would be one less thing to worry about, so I removed spring housing and meal charges and removed fall housing billing at that time. See Document T.

- Are you aware of any contact or follow-up to Rachael by anyone from the College after September 17 until December 8? Are you aware of any contact/follow-up from Rachael to anyone at the College during this same timeframe?

  Records I have indicate Nancy Fett replied to Rachael Swift on September 29 at 7:08 a.m. via email offering times she could meet with Rachael Swift. Nancy would likely have a copy of this email. Document Q provided suggests that President Collins had a 15 minute phone call with Rachael Swift and her mother on October 8, 2020. I

6

personally did not have any additional communication with Swift. No new information related to her case was available, and she had become an online student.

- On December 8, you notified Rachael that a suspect was caught on camera. Was that camera property of the College? If not, whose camera was it and who set it up?

  The camera the suspect was caught on did not belong to the college. The camera was set up inside the apartment (301 Byrne Oaks) by the residents who lived there (the college would not place a video camera inside a student living unit for obvious privacy reasons). The reporting student, Marianne Gleason, shared the following information, "...I am contacting you because I was told to after our apartment got broken into last night. Nothing was taken because we had put a security camera up after we had noticed food going missing and the person who broke in noticed the camera." See Document U. Residents of the apartment include Marianne Gleason, Allison Brownson, Jena Kluesner, Faith Vincent, Madison Haslow, and Danielle Keller.

- You informed Rachael on December 8 that a suspect had been caught on camera. On December 9, Rachael contacted Nancy to amend her claim to include Kyle Hall. Do you know how Rachael found out his name?



Please provide documentation of the full correspondences that relate to the following:

- On September 7 at 4 pm when Donna Heald reached out to Rachael. See Documents V.

- On September 7 at 8:34 pm when Rachael replied regarding her interest in the additional safety devices. See Document W. We do not typically provide additional safety devices for students in housing because we provide secure locks on facility entrances, apartment entrances, and within apartments, individual bedroom doors; however, if a student has a situation (in two situations I can recall – one was a bad break up, one had concerns about someone from 'home', etc.) and expresses concerns, we do work with students to provide additional window and door alarms to be helpful. Document X is a statement from Locksmith Express regarding the existing lock on the door at the apartment.

- Your email to Art Sunleaf on September 8 at 5:30 pm regarding the locks not changed. See Document Y.

- Donna Heald's email to Rachael on September 10. See Documents V, communication beginning September 10, 2020, 8:00 a.m.

- Katie Keleher-Garfoot and John McDermott's correspondence on September 11 regarding a deadbolt. Documents Z are all correspondence in writing I have regarding the deadbolt. I recall a phone conversation with John McDermott in which I understood we had agreed that Dan Walling would find a way to provide a deadbolt for the door. When I followed up on this issue with John recently to gather records of completed work, he shared that the door had an acceptable functioning lock system, and provided Document X from the Locksmith to support this.

- Katie Keleher-Garfoot's email correspondence with Rachael on September 15. Document AA.

- Your email correspondence with Art Sunleaf on September 15 at 12:25 pm and your emails with Rachael on the same day. Email to Sunleaf Document BB. My email to Swift that same date Document CC.

LORAS 0591

- **Your email to John McDermott on September 15 at 7:09 pm regarding a deadbolt.** My email with John McDermott on September 15, 2020, was at 3:52 p.m. and is included in Documents Z. Directly below that incident on the case timeline is an interaction between Nancy Fett and Rachael Swift that same day that occurred at 7:09 p.m.

- **Your email correspondence with John McDermott on September 17.** Included in Documents Z.

- **Your email correspondence with Rachael on September 17.** Document DD.

- **Rachael's response to Katie Keleher-Garfoot on September 17 at 2:38 pm.** Document S.

- **Nancy Fett's email to you on September 20 at 10:45 am regarding no reply from Rachael.** Document EE

- **Your complete correspondence with Kyle Hall.** Correspondence regarding the September 6, 2020 incident, Documents FF. At that time, we had nothing directly linking Hall to any previous concern or the case other than he entered the building around the time of the incident. Hall has vision impairment which prompted us to question could he have tried to access the wrong apartment at the time of the incident, but we had no reason not to take his responses at face value.

  I was also the one who, after consulting with Art Sunleaf, required Hall to depart campus on December 5, 2020, pending investigation into his involvement in these potential cases. The letter indicating this was delivered by Campus Safety to Hall. See Document HH.

  Since the December 2020 incident involving 301 Byrne Oaks, Matt Saylor and I have taken Hall's statement on the incidents at Byrne Oaks. See Document GG. We have offered those who may have been connected to the case the opportunity to respond by February 10, 2021, if they would like to participate in the conduct process. This is the status of this case as of February 10, 2021.

- **All email correspondence between Art and Matt Pucci regarding Kyle Hall and Rachael in the Education Program.** To my knowledge, I do not have any email communication between Pucci and Sunleaf. After consulting with you for permission to do so, I reached out to both Pucci and Sunleaf requesting all email correspondence between the two regarding Kyle Hall and Rachael Swift in the education program. Both Sunleaf (Document AAA) and Pucci (Document BBB) responded indicating there is no email correspondence between the two parties about this matter.

- **All email correspondence between you and Rebecca Fabricius on December 16 regarding Kyle Hall and Rachael.** All email correspondence between Rebecca Fabricius and I on December 16 is Document II.

- **Email correspondence between you, Matt Saylor and Art Sunleaf on December 17 regarding the** Dubuque PD and **the Telegraph Herald.** Email correspondence I was involved with on December 17 regarding DPD and Telegraph Herald included a communication from Matt Saylor, Document JJ. I do not see in my email box that I responded to this communication.

- **Art Sunleaf's email correspondence with Bobbi Earles, Robert Waterbury and Jim Collins on December 17** regarding the Telegraph Herald. Document KK

8

LORAS 0592

APP. 102

- Email received by Nancy Fett **on December 17 from Rachael's attorney and all email correspondence with you and Art Sunleaf regarding this.** Document LL outlines Nancy Fett's forwarded message from Rachael's attorney, and includes my attempt at drafting a reply, which was forwarded to Art Sunleaf to see should we draft a reply – or should we refer to legal counsel. Sunleaf recommended ███████████ ██ █████████

- Your email correspondence with Rachael on December 17. Document MM.

- Copy of the email you sent Rich Whitty on December 18. Document NN.

- **All email correspondence between you, David Salyer and Rebecca Fabricius on December 22.** At Art Sunleaf's request, I sent a message to David Salyer indicating support in finding a student teaching placement that honors Rachael Swift's request to teach outside the Dubuque area. This is Document OO. David Salyer forwarded that request to Rebecca Fabricius on December 23, and she responded to David, Art Sunleaf, and I on December 23. That response is Document PP. I have received copies of additional email communications between Art Sunleaf and Rich Whitty that includes communications from myself, David Salyer and Rebecca Fabricius from January 19 – 20, 2021. I'm including these communications as Documents YY.

- **All email correspondence between you, Art Sunleaf, Rebecca Fabricius and Donna Heald on January 4, 2021.** Correspondence from Rebecca Fabricius is Document QQ. ████████████████████ ████████████████████████████████████████ ████████

- Your correspondence with Rachael on January 5, 2021 and your correspondence with Carrie Jones and Art Sunleaf regarding this matter. Documents RR.

- Please provide all other documentation that has not already been provided that you consider relevant to this claim.
  - Communication from Katie Keleher-Garfoot to Rachael Swift confirming a time to meet – emails from September 7-8, 2020. Document SS.
  - An emailed summary of notes from meeting with Rachael Swift and her mother and sister on September 8, 2020, created by Keleher-Garfoot. Document TT.
  - ████████████████████████████████████████ All units indicate the door was unlocked with the exception of Swift's room. The Officer who took Swift's report indicated that Swift had told him the door was unlocked; however, the next day, it was indicated that the door had been locked. Document UU.
  - A case timeline was prepared, and is included as Document VV.
  - A document was prepared by me at the request of Art Sunleaf that notes procedures in place at the time of the incidents in four areas or "buckets". The document was prepared on January 22, 2021, and includes general information about Campus Safety processes and procedures; information related to the non-academic discipline processes in place during fall 2020; notes related to Title IX and interactions with Rachael Swift around her reports; and notes related to Criminal Prosecution by students connected with these cases. This is Document WW.
  - Documents ZZ contain the order receipt for safety devices placed for Swift's room, as well as order details that include the item name and picture (in the event further information is needed on the products) as well as delivery date to the mailroom on campus.

9

LORAS 0593



## Molly A. Burrows Schumacher (staff)

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Sunday, September 6, 2020 8:38 PM
**To:** Arthur W. Sunleaf
**Subject:** Swift issue

Hey - just a heads up - not sure if you saw the report about Rachel swift and waking to someone in her doorway (front door was unlocked). Pucci called - she went home, mom bringing her back tomorrow, wants to talk to someone in person about it. I told him to send it to Katie, and they could discuss safety strategies and how we can help. We'll go from there but wanted you in the loop.

Also Matt out tomorrow. Covered weekend shifts for folks.

Thx -

Molly

Sent from my iPhone

LORAS 0594

B

**Interview with Abigail Eriksen and Olivia Devriese, 101 Byrne Oaks**
**Via Zoom with Molly Burrows Schumacher**

Molly Burrows Schumacher requested any additional information available from all apartments who experienced an individual entering their apartment without their consent. Abigail Eriksen and Olivia Devriese, Apartment 101 Byrne Oaks, shared the following information in a recorded Zoom meeting with Burrows Schumacher on January 29, 2021, at 10:00 a.m.

The women shared that they were aware Kyle Hall was the resident found on camera having entered Byrne Oaks apartment 301, and wanted to share information about previous encounters with Hall that had made them uncomfortable that the college would not be aware of. For example, they noted that Hall often stood in the "T" area of their shared hallway (the women lived in 101 Byrne Oaks, Hall in 103), and they noted that to get to their apartment, they would have to walk around where Hall was standing at the "T". They noted an instance where one of the women had forgotten their keys, and Hall had let her into the building. They noted that he proceeded to watch her walk to her room and enter, which was uncomfortable. They also noted times when Hall appeared to be standing and watching them leave the building and walk to their vehicles outside. Devriese also noted that she previously had a class with Hall, and noted Hall to appear to be watching her in class as well. Eriksen and Devriese noted that there were times when Hall would come into the hallway to greet them where it almost felt like he was trying to make his presence known in their lives.

The women also noted that as it relates to the incident on the 9/6/20, early the next morning around 5 a.m., Hall added their roommate (Caitlin Farrell) on Snapchat, and Farrell received a snap (snapchat message) from Hall asking if something had happened to them. Per the women, Farrell and Hall had not talked before. The women shared that how they described what happened, Hall responded that the exact same thing happened to him in his room. They found it strange that Hall described his situation the exact same way they described their situation.

Devriese and Eriksen shared that from September until around Hall was found in Apartment 301 in December, Hall continually tried to add them on social media like Instagram and Snapchat. Eriksen showed Burrows Schumacher her phone via video, where a request from Hall was present on her Snapchat account. The women noted that when they said Hall continually tried to add them, they mean that there were times where Hall was attempting to add them around every 3 hours. Devriese noted that she was at home when the video of Hall in Apartment 301 Byrne Oaks was shared with her, and that Hall was still trying to add them to social media at this time.

Eriksen and Devriese indicated they do typically lock their doors, so they aren't sure how someone would have gained access to their space, and are concerned the incident on 9/6/20 might not have been the only time someone was in their room. They indicate that their roommate who was home (Rachael Swift) swears that the door was locked the night of the incident. The women noted that the weekend someone entered their apartment, all roommates were gone for the weekend except for Swift, and they wonder if someone entered the apartment because they were all away from the apartment. They noted that someone could have watched them all leave the building and noticed that they did not return. When asked if they remembered to lock the exterior doors, Devriese indicated now they do, and noted that includes interior bedroom doors.

**LORAS 0595**

*B*

When asked if there are others who the college should speak with about this incident, both Eriksen and Devriese indicated they would think about this question and let Burrows Schumacher know if there was anyone they could think of. Eriksen noted that all of the apartments that had someone enter at Byrne Oaks were apartments where women resided, and Burrows Schumacher verified this was true. The women asked about possible legal ramifications for those who might be involved in these incidents, and Burrows Schumacher shared that the college's understanding was that we would need the students to press charges in order to move the case forward off campus. The women asked if Hall had admitted involvement in their case, and Burrows Schumacher indicated that as the process moves forward there will be additional information available to help answer those questions. Devriese asked if individuals are allowed to share their information directly with the board, noting that her hope was that all of the women who were victimized in this situation were allowed to speak and add power to their message. Devriese noted that she and Eriksen weren't there the weekend of the incident in their room, yet their entire year has been impacted by what happened – it's hard to sleep, there's a fear the person will come back. Eriksen noted that nothing was taken from the apartment by the person who entered their room, and so they wonder what that person's motive was, asking was he watching them sleep?

Eriksen and Devriese are willing to assist with the college hearing board process related to the incident that occurred in their apartment on 9/6/20.



## Molly A. Burrows Schumacher (staff)

**From:**       Molly A. Burrows Schumacher (staff)
**Sent:**       Tuesday, February 2, 2021 2:44 PM
**To:**       Rachael N. Swift
**Subject:**       Following Up on 9/6/20 Report

Dear Rachael,

I hope this message finds you well. I'm following up on an email sent to your Loras email on January 26, 2021, inviting you to share any additional or new information you might have regarding the report filed on 9/6/20, and to invite your participation in the college hearing board process. If you would like to provide additional information or participate in the college hearing board process, please reply by Wednesday, February 10. A copy of the original email is included below for your convenience.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

---

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, January 26, 2021 4:42 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** Following up on your 9/6/20 report

Hello Rachael,

I hope this email finds you well. I'm reaching out today regarding your report filed 9/06/20, where you reported that an unknown male suspect entered your apartment at Byrne Oaks without your consent. As I mentioned in a previous email, the College is currently investigating this incident with the intent of holding the individual accountable for any violations of the College's Code of Conduct.

At this time in our process, we wanted to reach out to you to see if there is any additional information (beyond your original report) that you would like included in the investigation information. This could include, but is not limited to, additional information that has become available to you since the filing of your report; information from your work with law enforcement on your case; impact this incident has had on you as you navigated your college experience; and other information that you believe may be helpful at this time. Information can be emailed to me at this email address, or can be faxed to me at 563.557.4080. I'm also available to speak via Zoom at your convenience, or can arrange for an investigator to meet with you in person on campus if that is preferred.

As the investigation is completed, the case will transition to the College Hearing Board. The College Hearing Board is chaired by the Associate Dean of Students or his/her designee, and includes appointed representatives from the Loras College community: two students, two faculty members and two staff members. This board hears cases where a

LORAS 0597



sanction of suspension or expulsion may be considered based on the nature of the incident. Students who file a report that is referred to the College Hearing Board have the right to be involved in the process, and we can work together to help make the experience as comfortable as possible for you. If you would like to participate in the hearing process, please do reply to this email and let me know. I'll arrange for Kelsey Callahan, who helps students prepare for the hearing board process to reach out to you to talk further.

Thank you for your time. I look forward to hearing from you in the near future.

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

2

LORAS 0598



## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, February 2, 2021 2:35 PM |
| **To:** | Jaylen M. Cangas |
| **Subject:** | Following up on 9/6/20 report |

Dear Jaylen,

I hope this message finds you well. I'm following up on an email sent to your Loras email on January 26, 2021, inviting you to share any additional or new information you might have regarding the report filed on 9/6/20, and to invite your participation in the college hearing board process. If you would like to provide additional information or participate in the college hearing board process, please reply by Wednesday, February 10. A copy of the original email is included below for your convenience.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, January 26, 2021 4:31 PM
**To:** Jaylen M. Cangas <Jaylen.Cangas@loras.edu>
**Subject:** Following up on 9/6/20 report

Hello Jaylen,

I hope this email finds you well. I'm reaching out today regarding a report filed 9/6/20, where your apartment reported that an unknown male suspect entered your apartment at Byrne Oaks without your consent. As I mentioned in a previous email, the College is currently investigating this incident with the intent of holding the individual accountable for any violations of the College's Code of Conduct.

At this time in our process, we wanted to reach out to you to see if there is any additional information (beyond the original report) that you would like included in the investigation information. This could include, but is not limited to, additional information that has become available to you since the filing of your report; information from your work with law enforcement on your case; impact this incident has had on you as you navigated your college experience; and other information that you believe may be helpful at this time. Information can be emailed to me at this email address, or can be faxed to me at 563.557.4080. I'm also available to speak via Zoom at your convenience, or can arrange for an investigator to meet with you in person on campus if that is preferred.

As the investigation is completed, the case will transition to the College Hearing Board. The College Hearing Board is chaired by the Associate Dean of Students or his/her designee, and includes appointed representatives from the Loras

1

LORAS 0599



College community: two students, two faculty members and two staff members. This board hears cases where a sanction of suspension or expulsion may be considered based on the nature of the incident. Students who file a report that is referred to the College Hearing Board have the right to be involved in the process, and we can work together to help make the experience as comfortable as possible for you. If you would like to participate in the hearing process, please do reply to this email and let me know. I'll arrange for Kelsey Callahan, who helps students prepare for the hearing board process to reach out to you to talk further.

Thank you for your time. I look forward to hearing from you in the near future.

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

LORAS 0600



## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Monday, February 1, 2021 11:19 AM |
| **To:** | Caitlin M. Scopa |
| **Subject:** | RE: Following up on 9/6/20 report |

Hi Caitlin,

I'm grateful for any additional insights you are willing to provide. Is there a time that works best with your schedule to Zoom? I can send a Zoom link for a time that works for you.

Thank you for the reply!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Caitlin M. Scopa <Caitlin.Scopa@loras.edu>
**Sent:** Thursday, January 28, 2021 8:10 AM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** RE: Following up on 9/6/20 report

Hi again Molly, sorry it has taken a few days to respond to this email. I believe my roommate Abby Eriksen has already told you, but we do have some extra information that may be useful for this investigation. I would also like to be involved in the hearing process and am willing to set up a meeting over zoom with you to figure some more things out. Thank you for following up, I look forward to hearing from you again soon! Thank you.

Caitlin Scopa

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, January 26, 2021 4:36 PM
**To:** Caitlin M. Scopa <Caitlin.Scopa@loras.edu>
**Subject:** Following up on 9/6/20 report

Hello Caitlin,

I hope this email finds you well. I'm reaching out today regarding a report filed 9/6/20, where your apartment reported that an unknown male suspect entered your apartment at Byrne Oaks without your consent. As I mentioned in a previous email, the College is currently investigating this incident with the intent of holding the individual accountable for any violations of the College's Code of Conduct.

1

LORAS 0601



At this time in our process, we wanted to reach out to you to see if there is any additional information (beyond the original report) that you would like included in the investigation information. This could include, but is not limited to, additional information that has become available to you since the filing of your report; information from your work with law enforcement on your case; impact this incident has had on you as you navigated your college experience; and other information that you believe may be helpful at this time. Information can be emailed to me at this email address, or can be faxed to me at 563.557.4080. I'm also available to speak via Zoom at your convenience, or can arrange for an investigator to meet with you in person on campus if that is preferred.

As the investigation is completed, the case will transition to the College Hearing Board. The College Hearing Board is chaired by the Associate Dean of Students or his/her designee, and includes appointed representatives from the Loras College community: two students, two faculty members and two staff members. This board hears cases where a sanction of suspension or expulsion may be considered based on the nature of the incident. Students who file a report that is referred to the College Hearing Board have the right to be involved in the process, and we can work together to help make the experience as comfortable as possible for you. If you would like to participate in the hearing process, please do reply to this email and let me know. I'll arrange for Kelsey Callahan, who helps students prepare for the hearing board process to reach out to you to talk further.

Thank you for your time. I look forward to hearing from you in the near future.

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

LORAS 0602



## Molly A. Burrows Schumacher (staff)

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, February 2, 2021 2:37 PM
**To:** Caitlin D. Farrell
**Subject:** Following up on 9/6/20 report

Dear Caitlin,

I hope this message finds you well. I'm following up on an email sent to your Loras email on January 26, 2021, inviting you to share any additional or new information you might have regarding the report filed on 9/6/20, and to invite your participation in the college hearing board process. If you would like to provide additional information or participate in the college hearing board process, please reply by Wednesday, February 10. A copy of the original email is included below for your convenience.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, January 26, 2021 4:35 PM
**To:** Caitlin D. Farrell <Caitlin.Farrell@loras.edu>
**Subject:** Following up on 9/6/20 report

Hello Caitlin,

I hope this email finds you well. I'm reaching out today regarding a report filed 9/6/20, where your apartment reported that an unknown male suspect entered your apartment at Byrne Oaks without your consent. As I mentioned in a previous email, the College is currently investigating this incident with the intent of holding the individual accountable for any violations of the College's Code of Conduct.

At this time in our process, we wanted to reach out to you to see if there is any additional information (beyond the original report) that you would like included in the investigation information. This could include, but is not limited to, additional information that has become available to you since the filing of your report; information from your work with law enforcement on your case; impact this incident has had on you as you navigated your college experience; and other information that you believe may be helpful at this time. Information can be emailed to me at this email address, or can be faxed to me at 563.557.4080. I'm also available to speak via Zoom at your convenience, or can arrange for an investigator to meet with you in person on campus if that is preferred.

As the investigation is completed, the case will transition to the College Hearing Board. The College Hearing Board is chaired by the Associate Dean of Students or his/her designee, and includes appointed representatives from the Loras

1

LORAS 0603



College community: two students, two faculty members and two staff members. This board hears cases where a sanction of suspension or expulsion may be considered based on the nature of the incident. Students who file a report that is referred to the College Hearing Board have the right to be involved in the process, and we can work together to help make the experience as comfortable as possible for you. If you would like to participate in the hearing process, please do reply to this email and let me know. I'll arrange for Kelsey Callahan, who helps students prepare for the hearing board process to reach out to you to talk further.

Thank you for your time. I look forward to hearing from you in the near future.

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

LORAS 0604



**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Wednesday, January 27, 2021 9:54 AM |
| **To:** | Jaylen M. Cangas |
| **Subject:** | RE: Residence Life Questions |

Hi Jaylen,

Thanks for providing this information. Now that we have the additional documents, your application has been approved. Please let me know your off campus address once you have secured housing so we can update your information.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Jaylen M. Cangas <Jaylen.Cangas@loras.edu>
**Sent:** Wednesday, January 27, 2021 9:36 AM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** RE: Residence Life Questions

Hi Molly,

My parents already sent you my letter but attached is my letter from my coach. If I need to do anything else please let me know.

Thank you again,

*Jaylen Cangas*

Biomedical Engineering Major, Spanish Minor
Loras College, Class of 2023

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Monday, January 25, 2021 6:28 PM
**To:** Jaylen M. Cangas <Jaylen.Cangas@loras.edu>
**Subject:** RE: Residence **Life Questions**

Hi Jaylen,

LORAS 0605



Thank you so much for reaching out and detailing your request. I would agree that the situation you encountered this past fall semester is not typical, and that you have made a reasonable effort to continue living in the environment but can articulate ongoing challenges. These extenuating circumstances, along with the fact that you are quite close to meeting the requirement, support approving you to be permitted to move off campus this fall.

To complete the off campus request process, we do require students to submit a letter of support from parents/guardian, as well as a letter of support from their coach if applicable. Your request is approved pending the arrival of these two letters. They can be emailed to me – or faxed if more convenient to 563.557.4080. Once I receive this information, I can finalize your approval. Please send your updated off campus address our way once you secure housing.

Please let me know if you have any questions. Thank you!

Molly

**Molly Burrows Schumacher**
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

**From:** Jaylen M. Cangas <Jaylen.Cangas@loras.edu>
**Sent:** Tuesday, January 19, 2021 3:25 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** Residence Life Questions

Hello Molly,

My name is Jaylen Cangas. I am writing to ask you questions about how I can be approved to live off-campus next year. I realize that in order to get off-campus I must have 80 credits but at the end of this year I will be extremely close at 72 credits and possibly taking a summer class.

Living in Byrne Oaks this year has been extremely difficult on my mental health and my academic success. I live in BO 101 and we experienced a break-in last semester. Since then, I have had a really hard time sleeping and I am constantly up past 3:00am staring at the ceiling and listening for noises. I already experience anxiety but the break-in and the 4-5 hours of sleep a night has caused it to get worse. I understand that there has been more security measures put into place which I am grateful for but the thin walls and ceilings allow me to hear every noise and they keep me up at night.

Living in BO has also caused my grades to drop. Last semester I received the first B that I ever have gotten. I realize that a B is not the end of the world but I believe it is directly related to living in Byrne Oaks. I found myself constantly falling asleep during in-person class, which has never happened before, and not being able to focus on Zoom when there are people constantly walking the hallways and outside. I believe that my academics would best succeed if I lived in a safe place with people I trust and without the distractions of other students in a building.

I hope that you can understand my concerns with my mental health and academic standings and see that I am only looking for the best opportunity for my success and well-being. With these circumstances and the proximity of my credits to the requirement, I am asking if I can be granted off-campus for next semester. If needed, I can have letters written to you from my mother and my coach acknowledging my concerns as well.

I am looking forward to hearing from you and I hope you are staying safe and healthy!

2

LORAS 0606

G

Thank you,

*Jayden Cangas*

Biomedical Engineering Major, Spanish Minor
Loras College, Class of 2023

LORAS 0607



| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Thursday, January 28, 2021 12:32 PM |
| **To:** | Olivia V. Devriese |
| **Subject:** | RE: Living Off-Campus |

Hi Olivia,

Thanks so much for reaching out. I would agree that the situation you encountered this past fall semester is not typical, and that you have made a reasonable effort to continue living in the environment but can articulate ongoing challenges. These extenuating circumstances, along with ongoing COVID concerns, support approving you to be permitted to move off campus this fall.

To complete the off campus request process, we do require students to submit a letter of support from parents/guardian, as well as a letter of support from their coach. Your request is approved pending the arrival of these two letters. They can be emailed to me – or faxed if more convenient to 563.557.4080. Once I receive this information, I can finalize your approval. Please send your updated off campus address our way once you secure housing.

Please let me know if you have any questions. Thank you!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

From: Olivia V. Devriese <Olivia.Devriese@loras.edu>
Sent: Thursday, January 28, 2021 11:01 AM
To: Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
Subject: Living Off-Campus

Good Afternoon Molly Burrows,

I am writing to you today about living off-campus. As you know the first semester was hard for my roommates and me with the break-ins. I personally do not feel safe anymore with living in Bryne Oaks apartment or even places where random people that I do not know can come in and out of the building. I have not been able to sleep due to thinking about someone who could still break into my apartment and due to all the noise of people walking around in the apartment upstairs and in the halls.

Covid is also a huge factor with me living off-campus. I am on the soccer team and during the season we must be careful so we can play. Living in Bryne Oaks I do not know where people have been and if they have been exposed to Covid. Living with soccer players that I trust away from campus can help us not get Covid and feel safer that I know where they have been during the day.

1

LORAS 0608



Overall, since September I need a new start where people do not know where I am living, and I can feel safer knowing Covid is not in my building.

I know that you are working hard to stop what happened in September and I thank you for that! I would feel safer and more comfortable with a new start in my living situation.

Thank you so much,

Olivia DeVriese

LORAS 0609

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Thursday, January 28, 2021 11:32 AM |
| **To:** | Caitlin M. Scopa |
| **Subject:** | RE: Off campus request |

Hi Caitlin,

Thanks so much for reaching out. I would agree that the situation you encountered this past fall semester is not typical, and that you have made a reasonable effort to continue living in the environment but can articulate ongoing challenges. These extenuating circumstances, along with the medical concerns you describe related to ADHD, support approving you to be permitted to move off campus this fall.

To complete the off campus request process, we do require students to submit a letter of support from parents/guardian, as well as a letter of support from their coach. Your request is approved pending the arrival of these two letters. They can be emailed to me – or faxed if more convenient to 563.557.4080. Once I receive this information, I can finalize your approval. Please send your updated off campus address our way once you secure housing.

Please let me know if you have any questions. Thank you!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

**From:** Caitlin M. Scopa <Caitlin.Scopa@loras.edu>
**Sent:** Wednesday, January 27, 2021 8:47 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** Off campus request

Hello Molly,

My name is Caitlin Scopa and I am a sophomore who lives in Byrne Oaks 101. I am emailing in regards to getting off campus for the 2021-2022 school year. This year, my roommates and I have experienced a lot since living in Byrne Oaks. As you may already know, we were a part of the multiple break-ins that happened during first semester and since then I have had a difficult time sleeping and focusing throughout the day and night. I feel uncomfortable and nervous to be living in a building with other people because I do not know all of the other students, and I do not know all of their intentions. I can hardly focus because I am constantly overthinking and scared about what could potentially happen to us again from somebody different.

On top of that, there are constant noises from people walking and yelling outside, in the hallways, and loud footsteps coming from upstairs which makes it even harder for me to focus on my classes and homework. The constant distractions outside of my room has affected my ability to learn proficiently, and I struggled with this last year as well. I

1

LORAS 0610

have been forgetting about a lot of assignments and not performing as well as I normally do on papers, exams, and assignments. I take medication prescribed from my doctor to help my ADHD, but the constant distractions and discomfort that I have been experiencing have overpowered the assistance my medication is supposed to give me. I am planning to meet with my doctor on Monday and if needed, I can have her sign the medical release form to live off-campus.

On top of all of that, COVID is still a big concern for me. Due to my roommates and I all being on the soccer team, we are hoping to actually get to play this upcoming season and the upcoming fall season. I trust them to be as smart and as safe as possible, but I cannot speak for everyone else living in the apartment buildings or dorms. I would like to be around people I trust to limit potential exposure to everyone, and to keep my teammates/roommates and I safe.

I hope that you can understand my request to live off campus in order to stay safe, healthy, and to be in the best learning environment for myself. If you have any further questions or if there is anything else I need to do, please let me know.

Thank you,
Caitlin Scopa

2

LORAS 0611

**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Thursday, January 28, 2021 11:23 AM |
| **To:** | Caitlin D. Farrell |
| **Subject:** | RE: Off Campus Housing |

Hi Caitlin,

Thanks so much for reaching out. I would agree that the situation you encountered this past fall semester is not typical, and that you have made a reasonable effort to continue living in the environment but can articulate ongoing challenges. These extenuating circumstances, along with the fact that you are quite close to meeting the requirement, support approving you to be permitted to move off campus this fall.

To complete the off campus request process, we do require students to submit a letter of support from parents/guardian, as well as a letter of support from their coach. Your request is approved pending the arrival of these two letters. They can be emailed to me – or faxed if more convenient to 563.557.4080. Once I receive this information, I can finalize your approval. Please send your updated off campus address our way once you secure housing.

Please let me know if you have any questions. Thank you!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

From: Caitlin D. Farrell <Caitlin.Farrell@loras.edu>
Sent: Wednesday, January 27, 2021 3:57 PM
To: Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
Subject: Off Campus Housing

Dear Mrs. Burrows Schumacher,

My name is Caitlin Farrell, and I am a current sophomore here at Loras. I am writing to you about getting off campus for the coming 2021-2022 school year. As I am sure you are aware, on September 6th of this past fall an unknown male broke into our apartment and watched one of my roommates as she was sleeping. Ever since that night and the multiple other break ins, I have struggled to sleep in fear that another man might walk in again with unknown intentions. This has resulted in a significant lack of sleep which I believe has had an effect on my academic performance and ability to function during class. I have trust in each one of my roommates to lock the doors and not let anyone in the building we do not know. That being said, I do not necessarily know everyone in the building and do not know if they are letting strangers in. The main door to Byrne Oaks is often propped open as well and any random person can walk right in at any time which is very concerning to me and my safety.

Also living in Byrne Oaks has caused challenges for my academic success. When sitting in my living room and doing homework, there are extremely distracting noises coming from outside, upstairs, and in the hallways. Having an off

1

LORAS 0612

campus house would allow for my own privacy and quiet space to enhance my academic success. Another reason I hope to get off campus is due to Covid 19 reasons. As a member of the soccer team, I want to keep my distance as much as possible from others so that I am able to participate in our upcoming season. In an off campus house it would be just me and my roommates, and I would feel significantly safer.

The final reason off campus housing would be ideal for me is because I have a possible internship at the Loras All-Sports Camp this summer and would have to stay in Dubuque. The off campus house would allow for me to have an easy commute and place to stay while living here this summer. Due to these circumstances and the fact that I will have 71 credits, and am close to the 80, I hope to be considered for off campus living. Thank you so much for your time, and I hope to hear back from you soon!

**Caitlin Farrell**
Class of 2023
Kinesiology / Athletic Training Major
Women's Soccer

2

LORAS 0613



## Molly A. Burrows Schumacher (staff)

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Thursday, January 28, 2021 12:38 PM
**To:** Abigail M. Eriksen
**Subject:** RE: Off campus request

Hi Abby,

Thanks for reaching out. I would agree that the situation you encountered this past fall semester is not typical, and that you have made a reasonable effort to continue living in the environment but can articulate ongoing challenges. These extenuating circumstances, along with the many challenges you are navigating at this time, support approving you to be permitted to move off campus this fall.

Thank you for providing the additional documentation needed for your request. I'm comfortable approving your request without the additional doctor's note at this time – so please know that your request is approved. If you could please contact me with your new address when it's available, I will update our records.

Please let me know if you have any questions. Thank you!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

**From:** Abigail M. Eriksen <Abigail.Eriksen@loras.edu>
**Sent:** Thursday, January 28, 2021 12:10 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** Off campus request

Good Afternoon Molly,

My name is Abby Eriksen, and I am a sophomore here at Loras. Prior to coming to college last year, I got diagnosed with anxiety, and I have since received treatment to help maintain my mental health. As you are aware, my roommates and I had an intruder enter our apartment and watch one of them while they were sleeping. Since this incident, there had been several other apartments that have gotten broken into as well. Since this has happened to us, I have not been able to sleep. I find myself locking my door, and putting my dresser in front of the door because I fear someone is going to break in. There have been many incidences where I have called home to my parents in the middle of the night because I am scared and do not feel safe. Due to this, it has affected when I sleep, and has given me less motivation through the day because I am so exhausted for staying up all night. I am not concerned by our campuses safety and their services they provide for us, I am more concerned of the other students in our building because I cannot control what they do.

1

LORAS 0614



Since this incident, I have had to meet with my doctor, and had to increase my dosage for my anxiety medicine because I cannot sleep or just feel safe here in this apartment. My doctor has also approved for me to get off campus.

Going further into my studies, I am a student that already has trouble focusing, and being in this building has affected this because of the constant noise. Last year I struggled with doing homework in my dorm room, and found myself spending hours at the library to focus on my studies. In addition to my anxiety, I have 2 sisters in college and one brother on the way. My family recently lost our house at home because we could not afford to live there anymore and money is extremely tight. Being granted off campus would help me tremendously because I would have a safe place to be, and I would save money. I am also on the soccer team here and with COVID going around, I want to be in the safest environment I can be, and living off campus with members of my team will help reduce that stressor. With that all being said, I hope to be considered on campus, to help improve my mental health, and my studies. If you have any further questions, please let me know what I can do in order to fulfill my request.

Thank you,

Abby Eriksen

Attached is my coach, and my Moms approval. My doctors note is coming in the mail this week.

LORAS 0615

**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| **From:** | Nancy Z. Fett |
| **Sent:** | Tuesday, December 22, 2020 3:57 PM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | FW: phone call |

**1st of 2 emails**

Sent from my U.S.Cellular© Smartphone

-------- Original message --------
From: "Rachael N. Swift" <Rachael.Swift@loras.edu>
Date: 9/17/20 2:43 PM (GMT-06:00)
To: "Nancy Z. Fett" <Nancy.Fett@loras.edu>
Subject: RE: phone call

Hello Nancy,

I want to apologize for the late response. I have been off campus since yesterday and then had to move to a hotel yesterday afternoon. Can we meet tomorrow in-person to talk about the details in regards to my Title IX claim.

Thank you,

Rachael Swift

**From:** Nancy Z. Fett <Nancy.Fett@loras.edu>
**Sent:** Tuesday, September 15, 2020 7:09 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** phone call

Thank you for your phone call. I have not been in my office all week and so I am not sure when you left the message.

1

**LORAS 0616**

Thank you for having the courage to advocate for yourself in this personal matter. I only wish more women did.

You will likely be contacted by one of two people: Matt Saylor in security or Molly Burrows Schumacher in Student Life. They will conduct the investigation, ask you for your side of the story, if there are witnesses, etc. They will also contact the alleged perpetrator to discuss the matter.

My role is to assure the process is followed, monitor the report, ask questions and suggest alternative approaches/questions/theories and assure the matter is handled professionally, according to our policy, and with utter fairness.

If you feel like you are not being heard, please contact me. It is important to me (and the College) that anyone who comes forward is supported and listened to. Let me know if you have any questions. NZF

https://issuu.com/lorasduhawks/docs/studenthandbook_845b4473c6d53f

See page 30-31 to read more about the Hearing Board.

Nancy Zachar Fett, LMSW

Assoc. Professor of Social Work

Field Director

1450 Alta Vista, MS #221

Dubuque, IA 52001

563-588-7029, Fax 563-588-7005

Pronouns: She/Her

LORAS 0617



## Molly A. Burrows Schumacher (staff)

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, September 15, 2020 9:32 PM
**To:** Rachael N. Swift
**Subject:** touching base

Hello Rachael,

Your recent report was routed to me today for review. I apologize if you felt you did not receive a response to your requests. If you could let me know who you reached out to, I will follow up to see what additional information is available, but wanted to provide what updates I am aware of at this time.

Since the incident, Campus Safety has increased rounds on the interior and exterior of the facility as well as the surrounding grounds. Part of those rounds includes checking common areas and corridors for those who do not live in the building, un-propping propped doors if they are propped, and monitoring the areas behind the building as well. While helpful in the pursuit of campus safety, this increased surveillance has not provided any additional information regarding your case.

We have been able to contact those who fobbed into the building shortly before the incident occurred – including a student who lived in an apartment near yours, who fobbed in around the time the incident occurred. He indicated he did not see anything unusual or encounter any other students while moving from the entrance to his apartment. Our other fob accesses (based on access time) are less likely to have information, but we will be following these leads as well. I noticed in your report you contacted the Dubuque police about what occurred – did they offer you a case number you are willing to share with the college? While we provide campus safety officers on campus, we are not a police force – so when there is a corresponding police report, we like to contact the local officer connected with the case to provide what information we do have since local PD has additional avenues they can explore as sworn law enforcement officers.

I am aware you requested a deadbolt be added to your door at Byrne Oaks, and I saw today that the Physical Plant indicated they would not be able to honor that request. Please know that we are resubmitting the request. I can't promise it will change the answer, but we are advocating to do what will make you feel most comfortable in your space. I'm also aware you/your family has requested blue light poles on campus. I am gathering current pricing for these poles to see what options might be available, and will submit that information for review. If you would like to provide a letter of support about this request, or have a specific idea in mind of where you would like to see a blue light that will best benefit students, please let me know and I will include this information in the request.

Additionally, I have submitted a request to have a surveillance camera installed at the access point at Byrne Oaks. The camera would be motion activated and would record when movement is in the vicinity, allowing us to further track who is entering and exiting the building. IT is currently checking to see if we have the capability of supporting a camera in this area. We will keep you posted on these projects as additional information becomes available. While this is not an exhaustive list of what is occurring, I want to assure you that the college is taking your concerns seriously.

In your report, you also mentioned that you have been subjected to a sexual assault. I am so very sorry to hear this, and want to provide any support I can to be of help to you. Your story is yours to share in your own time as you are comfortable, but if there are supports you need on campus, or if you would like to discuss the process on or off campus for filing a report of sexual assault, I'm willing to assist in any way I can that meets your needs. There is a campus resource packet I can share with you that might be helpful in explaining local resources, accommodations, and how cases move forward on and off campus. If you are interested in this resource, please let me know and I will send it to you via email.

LORAS 0618



Please let me know if you have any additional questions.

**Thank you,**

**Molly**

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

2

**LORAS 0619**

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| From: | Molly A. Burrows Schumacher (staff) |
| Sent: | Wednesday, September 16, 2020 6:41 PM |
| To: | Nancy Z. Fett; Arthur W. Sunleaf |
| Subject: | FW: your request |
| Attachments: | Sexual Misconduct Information and Reporting Procedures.pdf |

FYI

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Wednesday, September 16, 2020 6:40 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** your request

Hello Rachael,

Nancy Zachar Fett, the college's Title IX coordinator, was in contact with me today and asked that I reach out to you to see if you would like to talk with/meet with a Title IX investigator on campus to discuss a recently filed report. Right now, the college has three trained Title IX investigators for student cases and they are myself, Matthew Saylor (Campus Safety), and Katie Keleher-Garfoot [Residence Life). Matt and Katie would both be able to meet in person with you to discuss the process; I am available by zoom only at this time for medical reasons but am happy to assist in any way I can. I'm not sure if you have a preference, but if I can assist in setting up an appointment with any of the investigators, please do let me know. I'm attaching a resource that provides additional information about the college's sexual misconduct policy – it outlines additional information about college policy, the processes available on or off campus, and local resources that might be helpful for you at this time. Please let me know if you have any questions or if I can be of service at this time or provide any support at this time.

Thank you,

**Molly**

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

1



## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Thursday, September 17, 2020 3:16 PM |
| **To:** | Arthur W. Sunleaf; Nancy Z. Fett |
| **Subject:** | FW: your request |

Just FYI –

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Thursday, September 17, 2020 3:16 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** RE: your request

I'm glad to see your reply, and I'm glad to hear you are connecting with Nancy.  Please know I'm here if you need anything.

I can share the following additional updates today –

Technology has indicated we should be able to install the camera at Byrne Oaks, and are in the process of testing the unit now.  I'm still waiting for price estimates back on the blue  lights, but will keep you posted.  And – maintenance has contacted a locksmith to see the best way to install a deadbolt on the apartment at Byrne Oaks.  I'm not sure I fully understand the challenges, but it has to do with installing the lock in a way that maintains the required fire rating on the door.  The locksmith indicated this morning he would be in touch soon with an update.

I'll share more as I know more. Thanks –

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Thursday, September 17, 2020 2:47 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** RE: your request

1

LORAS 0621



Hello Molly,

I have received your emails. I wanted to keep you in the loop. I'm trying to set up an in-person with Nancy Fett for some time tomorrow. Thank you for finally reaching out and updating me.

Thanks,
Rachael Swift

LORAS 0622

$\rho$

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, September 8, 2020 5:36 PM |
| **To:** | Matthew E. Saylor; Aaron M. Donath; Alex J. Leigh; Darrian D. Hugger; David E. Koch; Dylan G. Ervin; Jeffrey A. Swart; Jill A. Heitzman; Kyle T. Leeson; Mark R. Sutter; Martha L. Mills; Mary M. Droessler; Michael Urbain; Ralph J. Ellwanger; Raymond F. Leppert; Rebecca S. Guerdet; Robert J. Rosenow; Ronda L. Jasper; Sarah E. Baule |
| **Subject:** | Request for Additional Rounds |

Hello Everyone,

We've also had few requests for additional rounds in the following areas:

- Byrne Oaks – A female student reported waking to an intruder in her apartment on 9/6. I'm currently investigating – fob access reports show the next door neighbor entering the building just a few minutes earlier, so I'm hoping it's a case of someone inadvertently entering the wrong apartment. Until that's determined for sure, please do extra rounds on 1st floor Byrne Oaks and around the perimeter of the building.
- Rohlman, 3rd floor – having issues with marijuana odor. Staff has asked if you could also swing through from time to time and see if you can help them pinpoint where this issue is coming from. Questions about what staff have seen should go to Aidan Wojcieshowski.

Please let me know if you have any questions.

Thanks!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7137
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

From: Matthew E. Saylor <Matthew.Saylor@loras.edu>
Sent: Tuesday, September 8, 2020 4:49 PM
To: Aaron M. Donath <ad534940@loras.edu>; Alex J. Leigh <Alex.Leigh@loras.edu>; Darrian D. Hugger <Darrian.Hugger@loras.edu>; David E. Koch <David.Koch@loras.edu>; Dylan G. Ervin <Dylan.Ervin@loras.edu>; Jeffrey A. Swart <Jeffrey.Swart@loras.edu>; Jill A. Heitzman <Jill.Heitzman@loras.edu>; Kyle T. Leeson <Kyle.Leeson@loras.edu>; Mark R. Sutter <Mark.Sutter@loras.edu>; Martha L. Mills <Martha.Mills@loras.edu>; Mary M. Droessler <Mary.Droessler@loras.edu>; Michael Urbain <Michael.Urbain@loras.edu>; Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>; Ralph J. Ellwanger <Ralph.Ellwanger@loras.edu>; Raymond F. Leppert <Raymond.Leppert@loras.edu>; Rebecca S. Guerdet <Rebecca.Guerdet@loras.edu>; Robert J. Rosenow <Robert.Rosenow@loras.edu>; Ronda L. Jasper <Ronda.Jasper@loras.edu>; Sarah E. Baule <Sarah.Baule@loras.edu>
Subject: Bishop Loras

1

LORAS 0623

As you may have already read about Bishop Loras and that the college has decided to take down his statue. If you have not read it yet, Jim Collins sent out an email to everyone at the college with all of the details and reasoning. We also have a fact sheet, a how to handle call sheet, and a question/answer sheet at the information desk (which do not leave the information desk). Those items are to help processes phone calls about the subject. We are currently sending all calls to Valorie Woerdehoff, as the college PR person, or Heather Jungblut, the Presidents Administrative Assistant. Please follow the sheets and pass the calls along when they come in.

The rest of the week we will have a Police Officer around 7pm-6am every day in case of backlash for taking down the statue. The PD is going to most likely be in civilian clothes and driving a unmarked squad car. Please don't pass that information out as they are here to support us making sure nothing happens to the campus. When on rounds, be more vigilant on what is happening on/around campus. If there is issues with protestors, please ask them to leave our campus, as it is private property, or we will have to involve the police. Try to deescalate as much as possible so we don't have to have an incident on campus. Protestors are allowed to be on the sidewalks, but if they are breaking laws we can ask them to leave or call the police.

Please let me know if you have any questions.

Thank you,



**Matthew Saylor**
*Assistant Director of Campus Safety*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7100 | 800.245.6727
matthew.saylor@loras.edu
BE MORE. BE LORAS

LORAS 0624

P

## Molly A. Burrows Schumacher (staff)

| From: | Molly A. Burrows Schumacher (staff) |
|---|---|
| Sent: | Tuesday, September 15, 2020 10:19 PM |
| To: | Aaron M. Donath; Alex J. Leigh; Darrian D. Hugger; David E. Koch; Dylan G. Ervin; Jeffrey A. Swart; Jill A. Heitzman; Kyle T. Leeson; Mark R. Sutter; Martha L. Mills; Mary M. Droessler; Michael Urbain; Ralph J. Ellwanger; Raymond F. Leppert; Rebecca S. Guerdet; Robert J. Rosenow; Ronda L. Jasper; Sarah E. Baule; Matthew E. Saylor |
| Subject: | increased rounds requested at Byrne Oaks |
| Categories: | Red Category |

I hope this message finds you all well! Please maintain an increased presence in the area of Byrne Oaks – with additional rounds through the building and around the building when possible. We are still investigating the issue I mentioned in my email on 9/8, and the rounds have been requested by the student and their family to help the student feel comfortable in the building.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

1

LORAS 0625



## Molly A. Burrows Schumacher (staff)

| From: | Molly A. Burrows Schumacher (staff) |
|---|---|
| Sent: | Tuesday, November 24, 2020 11:41 AM |
| To: | Aaron M. Donath; Alex J. Leigh; Darrian D. Hugger; David E. Koch; Dylan G. Ervin; Jeffrey A. Swart; Kyle T. Leeson; Mark R. Sutter; Martha L. Mills; Mary M. Droessler; Michael Urbain; Ralph J. Ellwanger; Raymond F. Leppert; Rebecca S. Guerdet; Robert J. Rosenow; Ronda L. Jasper; Sarah E. Baule; Matthew E. Saylor |
| Subject: | Please maintain an increased presence at Byrne Oaks |
| Importance: | High |

I hope this message finds you all well! Please maintain an increased presence in the area of Byrne Oaks – with additional rounds through the building and around the building through the winter break period. We are now investigating an additional incident from this past Sunday morning around 4:00 a.m. where a resident of 303 Byrne Oaks was sleeping (door unlocked) and alleges she woke to find someone standing at the foot of the bed. The student reports that the individual got down on the ground and crawled out of the apartment. No additional description information available at this time. We will also be asking PD to assist in monitoring the neighborhood area more closely, and are working to get additional cameras established at the hall to help provide additional visual surveillance of the side entrance doors. Please let me know if you have any questions!

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

LORAS 0626

| | |
|---|---|
| **From:** | Arthur W. Sunleaf |
| **Sent:** | Monday, January 18, 2021 4:17 PM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | FW: For Your Records |

**Importance:**     High

FYI

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Jim Collins <Jim.Collins@loras.edu>
**Sent:** Monday, January 18, 2021 3:49 PM
**To:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** FW: For Your Records
**Importance:** High

FYI

James E. Collins '84
President
Loras College

**From:** Jim Collins
**Sent:** Monday, January 18, 2021 3:44 PM
**To:** Richard K. Whitty <RWhitty@OCTHOMASLAW.COM>
**Subject:** For Your Records
**Importance:** High



September 11, 2020 – 10 a.m.

- I agreed to this call after being told (by Heather Jungblut) that it would involve only Rachael and her mother. Just prior to starting the conversation, fourth caller joined. After Elaine greeted the caller, I asked for identification of this person. I don't recall her name, but she said she was a personal friend of Elaine and a practicing attorney. I

1

Case 2:22-cv-01019-LTS-KEM   Document 78-5   Filed 09/15/23   Page 51 of 175



told them I would not proceed with any conversation until our College counsel was present or Elaine's personal friend exited the conversation. The friend said she would drop off the call and asked Elaine to call her afterwards.

- The call lasted 45 minutes and was mostly dominated by Elaine w/Rachael offering a few comments based on me directing questions for her to answer. My participation was limited to expressing empathy for the very difficult impact that Rachael had to experience in having a man enter her apartment while she was asleep. The mother and Rachael repeatedly noted that I was the only one they have interacted that offered care or empathy. I also offered to avail our support services as Rachael might desire to include: Spiritual Life, Counseling, and Academic Services. Rachael gave me permission to have our Counseling Center make contact with her.
- Elaine advanced a number of concerns on Rachael's behalf that ranged from a campus safety officer's alleged lack of seriousness to the incident to the College's lack of responsiveness to the College's unwillingness to post an announcement to campus to the College's failure in not bolting the door to the lack of quality being provided by some of Rachael's faculty to the Academic Dean's insensitivity when they met with her. I indicated that I would follow up with my respective colleagues about each of the issues they advanced.

September 11, 2020

- I contacted by phone or in person the following as it relates to the above call: Art Sunleaf, Donna Heald, and Director of Counseling, Tricia Borelli.

October 8, 2020 – 1:30 p.m.

- I had a 15 minute call with Rachael Swift and her mother. Elaine indicated that she preferred working out something with the College directly v. engaging a legal approach. I asked what she wanted resolved and/or for the College to do. Elaine cited all the challenges Rachael had to endure related to her academic and residential experience were related to the College doing nothing to address the situations. I told her this was not true, but for me to even consider anything, especially if she was suggesting a financial offering, I would need a written communication specifically identifying the issues she was alleging. Elaine asked if she could send the details via e-mail. I said, "yes," and provided her my e-mail address. Elaine again indicated that she felt I was the only one who was listening to their concerns and thanked me for my time.

January 11, 2021

- I received an e-mail from Elaine with a document attached. I assume this was in response to what I requested on October 8, 2020

James E. Collins '84
President
Loras College

2

LORAS 0628



## Molly A. **Burrows Schumacher (staff)**

| | |
|---|---|
| From: | Arthur W. Sunleaf |
| Sent: | Wednesday, January 27, 2021 1:13 PM |
| To: | Molly A. Burrows Schumacher (staff) |
| **Subject:** | FW: Rachael Swift |
| **Attachments:** | RACHLORAS.pdf |

Per your request.

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Jim Collins <Jim.Collins@loras.edu>
**Sent:** Monday, January 11, 2021 7:26 PM
**To:** Donna N. Heald <Donna.Heald@loras.edu>; Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** FW: Rachael Swift

Donna and Art

Please see below and attached. Facts don't seem to matter, let alone timeliness. Rachel and her Mom spoke with me 3+ months ago when I asked them for the communication only received today.

 asked him to advise.

Thanks,

J

James E. Collins '84
President
Loras College

**From:** ukchelsea@aol.com <ukchelsea@aol.com>
**Sent:** Monday, January 11, 2021 4:42 PM
**To:** Jim Collins <Jim.Collins@loras.edu>
**Subject:** Rachael **Swift**

Please see the attached and respond at your earliest convenience.
Thank you,
Elaine Kostopoulos

1

LORAS 0629



January 8, 2021

Loras College
President Jim Collins
1450 Alta Vista Street
Dubuque, Iowa 52001

Re:    Rachael Swift

During our most recent conversation, we discussed Rachael's request for a tuition waiver along with reimbursement of her 2020 and 2021 deductible due to the complete failure of Loras College to adequately act after the break in that occurred at her campus apartment in September 2020. We have not heard back from you or anyone at the College regarding this matter since our call in early October.

As a result of the College's complete lack of attention to the fact that an individual entered a college building and proceeded to break into an apartment and enter a female student's bedroom during the middle of the night, this individual proceeded to continue breaking into women's apartments in the same building and traumatize countless students. The individual was ultimately caught, yet by no help of the college. College students needed to do what the College would not do ensure that no one else would be traumatized by this individual. Your lack of attention to a very serious crime forced college girls to set a trap to catch the perpetrator.

There were at least five apartments in one campus building to be broken into by the same individual and the College failed to act in away way to safeguard the students at Loras. During our initial meeting with the various Deans and yourself we asked for simple measures to ensure the safety of the students and Loras failure to make this a priority. Thus, giving the individual the ability to continue breaking in to units with no action by the College.

We are extremely disappointed that the College continues to fail Rachael and her fellow students at Loras with their lack of attention to this matter.

Rachael is forever changed not only by the experience of the break in, yet also by completely unacceptable treatment of the College. Loras attempted to make Rachael feel like the break in never happened. They failed to respond to her basic requests. They failure care about her safety and the safety of the other females at Loras. Loras attempted to hide both Rachael's break in and those of the next three apartments, and possibly more. Only when students were able to identify the individual during a break in did Loras acknowledge the break ins.

Your actions have changed Rachael in a way you could never understand. You personally know Rachael and still failed to show compassion and address her concerns.

Due to the events Rachael was forced to return home as she was too frightened to be on campus. As she is an Education student she was to return to Loras in January to student teach for her final semester. In late December she broke down and stated she could not return to Loras. Even though the individual was identified she was still afraid to return to Loras. She knew that if something was to happen that Loras would not be there to protect her while on campus.

**LORAS 0630**



The lack of actions by Loras have forced her to remain at home for her Senior year and miss her final attempt at a soccer season. Her college experience has been ruined by this entire experience.

Loras has a duty to ensure a safe environment on campus and has failed to do so.

Due to the failure of Loras to take Rachael's Title IX seriously we have been forced to engage counsel to ensure she is heard.

Additionally, as a follow up to the education piece of our prior discussions we want to let you know that very little changed in that respect during the fall semester. For example, the South Carolina teacher never had the students "enter" her classroom as promised. She spent more time talking about moving to South Carolina and all the benefits of living in the south than teaching the students, that is when she did not cancel class.

Finally, Loras has proceeded to block her from enrolling in the one class she needs for the spring semester due to the tuition issue.

Please, grant Rachael a tuition waiver for the 2020/2021 school year and reimburse her for her insurance deductible as discussed. Additionally, allow her to enroll in her class immediately.

Feel free to contact me at 847-651-0847 or ukchelsea@aol.com if you have any further questions.

Thank you,

Elaine Kostopoulos

LORAS 0631



## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Monday, September 7, 2020 11:20 AM |
| **To:** | ELAINE SWIFT |
| **Subject:** | RE: Rachael Swift incident and other matters |

Thanks so much for the reply. I'm glad you are able to connect with Art. Unfortunately, I have a student health meeting at 1:30 p.m. today, so I won't be able to dial in. I've asked Art to capture the ways we can best help moving forward so I can best assist in helping Rachael.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7137
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

**From:** ELAINE SWIFT <ukchelsea@aol.com>
**Sent:** Monday, September 7, 2020 10:17 AM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** Re: Rachael Swift incident and other matters

Thank you for your response.
We are in our way back to campus and are planning on meeting with Art at 1:30. It would be great if we could have you involved via phone for the meeting.
Thanks,
Elaine

On Sep 6, 2020, at 10:56 PM, Molly A. Burrows Schumacher (staff)
<Molly.BurrowsSchumacher@loras.edu> wrote:

Thank you so much for reaching out. I completely understand your concern for Rachael, and the desire to create a safety plan moving forward. We too want Rachel to feel safe on campus and in her apartment.

While I wish I could speak with you in person tomorrow, I am restricted to remote work at this time due a hospitalization in July. Coach Pucci indicated you were really hoping to meet with someone in person while on campus, so for this reason, I suggested Katie Keleher-Garfoot to Coach Pucci as a great resource. Katie has helped students in various housing options by

1

**LORAS 0632**



discussing safety concerns and ordering things like additional door alarms, window alarms, etc. to help students feel more safe based on their specific situation.

While I'm unable to meet in person, I am happy to talk via phone tomorrow if that would be helpful? I am free at 1:00 if that works with your schedule. If you could let me know the best number to call, I would appreciate it.

If you would prefer to meet in person with Dean Sunleaf, I understand that as well. Please know I did also make Katie aware that Rachael may be interested in additional safety resources for the apartment, and asked her to secure these items for Rachael
if she is interested.

Thank you,

Molly Burrows Schumacher
Assistant Dean of Students

Sent from my iPhone

> On Sep 6, 2020, at 8:46 PM, "akchelsea@aol.com" <akchelsea@aol.com> wrote:
>
> Good evening,
> I believe Matt Pucci may have reached out to you today regarding my request for a meeting tomorrow, Monday the 7th.
> We were informed to speak with Katie as you would not be on campus.
> I understand tomorrow is Labor Day, yet we will be driving to campus from Chicago to help get some things resolved and ensure Rachael is safe.
> What happened to Rachael is unacceptable and it is critical that we speak tomorrow either in person or on the phone. This needs to be a priority. Unfortunately as a result of the situation Rachael, nor myself can look at tomorrow as a holiday and we would appreciate a few minutes of your time.
> Early afternoon would be ideal, yet we can make ourselves available any time during the day.
> I look forward to your response.
> Thank you.
> Elaine Kostopoulos

CONFIDENTIALITY NOTICE: This email, including any attachments, is the property of Loras College. The information may be legally privileged and/or confidential and is intended solely for the use of the addressee. If you are not the intended recipient be advised that any unauthorized disclosure, copying, distribution or use of the contents herein is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy all electronic and hard copies of the communication, including attachments.

LORAS 0633

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Katie Keleher-Garfoot |
| **Sent:** | Tuesday, December 29, 2020 10:24 AM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | FW: Updates |

Kiki took the door alarms and window blockers there – she said they were all fine with her. I don't know if Rachael has ever returned, but she didn't move completely out or return keys, so we've kept her in the system.

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Thursday, September 17, 2020 2:38 PM
**To:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Subject:** RE: Updates

Hello Katie,

I have been at home since Friday. I came back Wednesday to finish the week in soccer. I'm staying in a hotel because I didn't feel comfortable in the apartment. The other 5 girls in the apartment are also scared and sleep in the same room some nights. I will be returning home for the unforeseen future because I couldn't and didn't feel safe in the apartment without the safety measure that were asked for. I'm not on campus and would prefer if some can and installed the door alarms and window blockers in the apartment. We need 2 door alarms and 9 window blockers.

Thank you,

Rachael Swift

**From:** Katie Keleher-Garfoot <Katie.Keleher_Garfoot@loras.edu>
**Sent:** Tuesday, September 15, **2020 12:08 PM**
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Cc:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>; John R. McDermott <John.McDermott@loras.edu>
**Subject: Updates**

Hi Rachael,

I just got the bars for the windows and door alarms in the mail this morning! So those are ready – would you like me to leave them at the Information Desk for you, or would you like assistance in putting them up? I can ask one of your CAs to bring them by if you'd like assistance, just let me know! How many door alarms would you like? Just one for the front door or one for any of the bedrooms as well?

You had asked about the deadbolt on the front door. I was told it would not be possible per the Physical Plant. If you have more questions, I've CC'd John McDermott on this message – he may be able to answer any additional questions you have about that.

For requesting a copy of the report, you can request it officially via email – so you can reply to this message with the request and we can provide the copy.

1

LORAS 0634

I also have an answer to your question about the blue lights. Student Union looked into the blue lights as an option on campus, and has done so periodically over the past few years. From what I understand, survey responses were collected from our students, and most students indicated their first choice for call would be their cell phone. There are also some challenges at other schools that have them with false reporting, and the last time this was researched, there were institutions removing these posts from their campuses. However, we can definitely bring the idea forward again to the college for review at your request? It may take about a week to gather all the pricing information for available options, but we can create a proposal for consideration. Are there any specific places you were hoping to see blue lights? We have a layout that we've used in past considerations - but if there are other areas from the student perspective to consider, that would be helpful.

Please let me know how many of the door alarms you would like and if you'd like assistance in putting the bars and alarms up, and we'll make arrangements from there! Thank you!

**Katie Keleher-Garfoot,** M.S.
Assistant Director of Residence Life
Loras College
563.588.7060
katie.keleher-garfoot@loras.edu
BE MORE. BE LORAS.

LORAS 0635

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, January 5, 2021 2:26 PM |
| **To:** | Rachael N. Swift |
| **Subject:** | RE: checking in – housing for spring |

Thanks for the reply, Rachael! I'll take care of this for you today.

Have a good day,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Tuesday, January 5, 2021 12:19 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** RE: checking in – housing for spring

Hello Mrs. Burrows,

I won't be returning to campus for the Spring semester. So if you could take off housing and meal plan that would be one less thing I have to worry about.

Thank you,
Rachael Swift

**From:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Sent:** Tuesday, January 5, 2021 11:55 AM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** checking in – housing for spring

Hi Rachael,

I hope this email finds you well. As we finalized spring housing placements, I noticed we have a housing placement and meal plan on record for you for the spring semester. If I understand correctly, you may be student teaching at home this semester so I wanted to reach out and see if you would like me to cancel that housing placement and meal plan for you? If you could confirm if you would like me to cancel these items, I'll make sure they are removed from your spring bill asap. If you would choose to cancel, please know you can add these back on at any time if you wish – we would not be asking your roommates to fill any vacancies and dining plans can be added at any time. I'll wait for your guidance on how to proceed.

1

LORAS 0636



Additionally, because you spent most of the fall semester away from campus at home, I removed your housing charges for Fall 2020 from your student account. That update should now be reflected on your student account. You may not receive a new billing statement, but would see this change reflected under "activity".

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

2

LORAS 0637





LORAS
COLLEGE

## Incident Report Information

**IR#**
00229-2020

**Reported On**
December 7, 2020 10:32 AM

**Reported By**
Molly Burrows Schumacher

**Incident Type**
**Code of** Conduct Violation

**Reporter's Email**
molly.burrowsschumacher@loras.edu

## Time and Location of Incident

**Date/Time of Incident**
December 5, 2020 2:03 am

**Location of Incident**
Campus Housing/Byrne Oaks

**Additional Location Information**
Apartment 301

## Parties Involved

**Students Involved**
Hall, Kyle (Byrne Oaks - 103D) (0532873)

**Victims/Complainants**
Gleason, Marianne (0552841)
Brownson, Allison (0552528)
Kluesner, Jena (0551976)
Vincent, Faith (0551941)
Haslow, Madison (0552353)
Keller, Danielle (0495591)

## Descriptive Information

**Incident Description**
Molly Burrows Schumacher received the following communications from Marianne Gleason

From: Marianne E. Gleason
Sent: Saturday, December 5, 2020 11:46 AM
To: Molly A. Burrows Schumacher (staff)
Cc: Allison M. Brownson ; Madison K. Haslow ; Faith Vincent ; Jena A. Kluesner ; Danielle C. Keller
Subject: Apartment Break-In

Hi Molly!!

My name is Marianne Gleason and I am a sophomore at Loras College. I am contacting you because I was told to after our apartment got broken into last night. Nothing was taken because we put a security camera up after we had noticed food going missing and the person who broke in noticed the camera.

I have attached the footage in this email. The student is Kyle Hall, another resident in our building. We are not sure what to do from

**LORAS 0638**

here which is why we were told to contact you. Please get back to us soon.

Thank you,

Marianne Gleason

From: Marianne E. Gleason
Sent: Saturday, December 5, 2020 12:20 PM
To: Molly A. Burrows Schumacher (staff)
Cc: Allison M. Brownson ; Madison K. Haslow ; Faith Vincent ; Jena A. Kluesner ; Danielle C. Keller
Subject: Re: Apartment Break-In

The door was unlocked last night and previous times it had been locked but the door was not shut all the way so it was slightly open.

The things taken were trivial. Just food and energy drinks so we don't have exact dates for that as at the time we thought it was each other taking the items.

There was an incident a couple weeks ago when we had a friend visiting who witnessed him looking around our door and peeking in but she didn't know who it was and the camera didn't activate so we didn't have enough information to bring it forward. We think now that it was the same person as she described him as having short hair and glasses.

We are unsure about pressing charges due to legal fees and not knowing how to navigate through the situation, as well as the fact that nothing was taken and it was just breaking and entering.

Thank you,

Marianne Gleason

Faith Vincent from the apartment also contacted Campus Safety. Officer Mark Sutter responded, and with Aidan Wojciehowski met with the women of the apartment and local law enforcement. At that time, law enforcement contacted Kyle Hall, and per Officer Sutter, Hall admitted to entering "a few" Byrne Oaks apartments.

Officer Sutter delivered a letter to Hall drafted by Burrows Schumacher indicating that Hall needed to leave campus "immediately" by 5:00 p.m. that day, and if he could not take his belongings with him, he could schedule a time to return to campus and be escorted to retrieve the rest of his belongings. The letter further indicated that Hall is not otherwise permitted on campus at this time, and that should he come to campus, he may face involuntary suspension and/or referral to law enforcement. Hall left campus, and will be in touch to schedule a time to return for the remainder of his belongings.

Video footage of Hall accessing Apartment 301 from their interior surveillance camera is attached to this report. The video was taken at approximately 2:03 a.m. Fob access records show Hall accessing the building last at the west entrance at 1:28 a.m.

This incident is being investigated along with 3 other apartment entry incidents that have been similarly described by those impacted and 2 pulled fire alarm incidents in the west tower. In these additional incidents, the subject has been described as male, darker hair, approximately 5'8, and in a previous instance at apartment 301, with glasses. Hall, per college records is approximately 5'7, with darker hair and does wear glasses.

Status
Processing

## Additional Information

EMS Called
No

**Area Coordinator Called**
Yes

**Police Called**
Yes

**Police Report #**
Officer Sutter put Case # and Law Enforcement Contact on Matt Saylor's Desk

**Physical Plant Contacted**
No

**Alcohol Involved**
No



LORAS 0639



## Administrative Action

**Appealed**
No

LORAS 0640



## Molly A. Burrows Schumacher (staff)

**From:** Rachael N. Swift
**Sent:** Monday, September 7, 2020 8:25 PM
**To:** Donna N. Heald
**Subject:** RE: Concern About Classes

Hello Donna,

I would like to have a meeting tomorrow at some point. My mom will also be involved in this meeting. We would prefer an in person meeting. What time are you available tomorrow.

Thank you,
Rachael Swift

From: Donna N. Heald <Donna.Heald@loras.edu>
**Sent:** Monday, September 7, 2020 4:00 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** Concern About Classes

Dear Rachael,

Dr. Sunleaf notified me that you have a concern with some of your classes. Would you be willing to share those concerns with me? If you prefer to talk, perhaps we can set up a phone conversation.

Best regards,
Donna Heald

--
**Donna N. Heald, Ph.D.**
Vice President for Academic Affairs and Academic Dean
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
563.588.7935

LORAS 0641



## Molly A. Burrows Schumacher (staff)

**From:** Donna N. Heald
**Sent:** Thursday, September 10, 2020 8:00 AM
**To:** Rachael N. Swift
**Subject:** Re: Concern About Classes

Dear Rachael,

I spoke with Dr. Salyer yesterday and shared with him your concerns regarding the instruction in EDU 336 and EDU 340. He is going to follow up with both instructors, while not revealing your name to either. Please feel free to reach out to Dr. Salyer directly regarding your concerns or if you have any additional information. It is possible Dr. Salyer will ask to speak with you about this on Friday when he sees you in class. Rest assured, I told him you did not have any concerns with his class. Please do let me know if you have continuing concerns.

Best regards,
Donna Heald

—

**Donna N. Heald, Ph.D.**
**Vice President** for Academic Affairs and Academic Dean
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
563-588-7935


**From:** "Donna N. Heald" <Donna.Heald@loras.edu>
**Date:** Monday, September 7, 2020 at 10:31 PM
**To:** "Rachael N. Swift" <Rachael.Swift@loras.edu>
**Subject:** Re: Concern About Classes

Rachael,

My office is located in Keane 120, but we will need to meet in a nearby conference room. Please come to Keane 120 and we will walk to the conference room from there.

DNH

--

**Donna N. Heald, Ph.D.**
**Vice President** for Academic Affairs and Academic Dean
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
563-588-7935


**From:** "Rachael N. Swift" <Rachael.Swift@loras.edu>
**Date:** Monday, September 7, 2020 at 9:45 PM
**To:** "Donna N. Heald" <Donna.Heald@loras.edu>
**Subject:** RE: Concern About Classes

1

LORAS 0642



Donna,

That works for me. My mom and I will be there. Where is your office?

Thanks,
Rachael

**From:** Donna N. Heald <Donna.Heald@loras.edu>
**Sent:** Monday, September 7, 2020 9:39 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** Re: Concern About Classes

Rachael,

Is it possible for you to meet at 8:15 am?

Regards,
Donna Heald
–
**Donna N. Heald, Ph.D.**
Vice President for Academic Affairs and Academic Dean
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
**563-588-7935**

**From:** "Rachael N. Swift" <Rachael.Swift@loras.edu>
**Date:** Monday, September 7, 2020 at 9:37 PM
**To:** "Donna N. Heald" <Donna.Heald@loras.edu>
**Subject:** RE: Concern About Classes

Can you meet first thing in the morning?

Rachael

**From:** Donna N. Heald <Donna.Heald@loras.edu>
**Sent:** Monday, September 7, 2020 8:43 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** Re: Concern About Classes

Hi Rachael,

Those times are not possible for me tomorrow, but I can meet with you 4-5 pm. I am also available on Wednesday, 1-2 pm.

Best regards,
Donna Heald
–
**Donna N. Heald, Ph.D.**
Vice President for Academic Affairs and Academic Dean
Loras College

2

**LORAS 0643**



1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
563-588-7935

**From:** "Rachael N. Swift" <Rachael.Swift@loras.edu>
**Date:** Monday, September 7, 2020 at 8:36 PM
**To:** "Donna N. Heald" <Donna.Heald@loras.edu>
**Subject:** RE: Concern About Classes

Donna,
I am available between 11:00 and 3:00 tomorrow.
Thanks,
Rachael

**From:** Donna N. Heald <Donna.Heald@loras.edu>
**Sent:** Monday, September 7, 2020 4:00 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** Concern About Classes

Dear Rachael,

Dr. Sunleaf notified me that you have a concern with some of your classes.  Would you be willing to share those concerns with me?  If you prefer to talk, perhaps we can set up a phone conversation.

Best regards,
Donna Heald

--
**Donna N. Heald, Ph.D.**
Vice President for Academic Affairs and Academic Dean
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
563.588.7935

3

LORAS 0644



## Molly A. Burrows Schumacher (staff)

**From:** Rachael N. Swift
**Sent:** Monday, September 7, 2020 8:34 PM
**To:** Molly A. Burrows Schumacher (staff)
**Subject:** RE: touching base

Hello Molly,

Yes, my roommates and I are interested in the additional safety devices. We all wish we knew about the available options earlier. Why aren't students made aware of this.

Will an email be going out to the students regarding informing students of an occurrence and if anyone else experienced or saw anything unusual. It has been mentioned that the intruder attempted to enter another unit before he entered mine.

I will let me roommates know about the installation of the new locks.

Rachael Swift


**From:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Sent:** Monday, September 7, 2020 3:08 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Cc:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** touching base

Hello Rachael,

Dean Sunleaf asked me to follow up and let you know that Maintenance will be changing your door locks and issuing new keys first thing in the morning – they have set the process in motion today, and it will be completed tomorrow morning.

Since the incident, Campus Safety has already increased rounds on the interior and exterior of the facility as well as the surrounding grounds. RAs in the area will do the same. Campus Safety also has ordered and are reviewing the fob logs from around the time of the incident so that we can connect with any other students who may have been out and about in the building at that time that may have seen or heard something.

Katie Keleher-Garfoot will also be reaching out to you asking how she can help. While the college provides secure locks for all apartments, we know all residents have different preferences. Katie can share information additional alarms and devices that you might be interested in for your apartment. Not all students are interested in these devices, but we are happy to assist you (and your roommates) if you might be.

Please let us know if we can be of further help.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St

1

LORAS 0645



Dubuque, IA 52001
563.588.7137
molly.burrowssthumacher@loras.edu
BE MORE BE LORAS

.

2

LORAS 0646





24 Hour **Bonded** Mobile Service

January 29, 2021

Loras College

Dubuque, IA 52001

Dear John

After review of apartment 101 in Byrne Oaks I found the following.

The door is self-closing using a LCN 4040 style closer, door meets the basic requirements of fitting in the door opening. Door is secured by a Schlage Commercial D series entrance knob set and will lock every time providing the inside button is pushed and turned. If the button is left out the door can be left unlocked.

I found no issues with the basic functions of the door frame and lock

Thanks
Daniel R. Walling, CP, DHT, CFDAI, IFDAI
Locksmith Express
Owner

450 Central Ave. Dubuque, IA 52001-7024          (563) 556-4442 Shop   (563) 556-3523 Fax
www.locksmithexpress.com   workorders@locksmithexpress.com

LORAS 0647

Case 2:22-cv-01019-LTS-KEM   Document 78-5   Filed 09/15/23   Page 71 of 175
APP. 157



## Molly A. Burrows Schumacher (staff)

**From:**      Molly A. Burrows Schumacher (staff)
**Sent:**      Tuesday, September 8, 2020 5:30 PM
**To:**        Arthur W. Sunleaf
**Subject:**   Swift Investigation

Just an update on Swift situation –

Approximately 10-15 minutes before Rachael Swift found someone in her room doorway, Kyle Hall, who lives in 103 Byrne Oaks (right next door), entered the building via the main entrance. Hall has decreased eyesight due to abnormal visual development.

I've reached out to him indicating that we know he fobbed in around the time of the incident, and that we'd like to know if he saw anything that seemed out of the ordinary. I mentioned that in cases like this at the beginning of the year, we often find that someone may have accidentally entered the wrong apartment, and so conversations like this help us better determine what happened in a given situation. I'll let you know what I learn from him.



Katie met with Rachael, her mom, and her sister today. They accepted safety devices. They want a warning posted on the doors. They indicated the exterior doors are always propped (which – why wait and tell us now?), and that fob reports won't help...all doors were secured at the time based on the fob list. The mom started in and accused the college of trying to cover up for having "intruders" in our buildings. Katie told her that there are many things to consider in a situation like this, and so we follow our processes and protocols in place.

I had arranged with Maintenance to key that apartment first this am. Apparently, it was not completed until later today – Katie met with the family at 1:30 and it still wasn't done. Rachel has emailed me and asked why we don't offer the additional items to all students when they move in. I have not yet engaged her, but plan to share that not all students are interested in the devices, some prefer to bring their own, etc.

I think that's the last update on her for today. Thanks!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7137
molly.burrowsschumacher@loras.edu
IF MORE BE LORAS

1

**LORAS 0648**

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| From: | Katie Keleher-Garfoot |
| Sent: | Friday, September 11, 2020 9:28 AM |
| To: | John R. McDermott |
| Cc: | Molly A. Burrows Schumacher (staff) |
| Subject: | Dead bolt? |

Hey John,

I'm assuming this is a no, but figured I'd ask anyway. Is it possible to add a dead bolt to a main door BO apartment? Same apartment that was recored per Art and Molly – wondering about the possibility of a dead bolt now as well... Thanks John!

Katie K.

**Katie Keleher-Garfoot,** M.S.
Assistant Director of Residence Life
Loras College
563.588.7060
katie.keleher-garfoot@loras.edu
**BE MORE. BE LORAS.**

LORAS 0649

**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| **From:** | John R. McDermott |
| **Sent:** | Friday, September 11, 2020 9:32 AM |
| **To:** | Katie Keleher-Garfoot |
| **Cc:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | RE: Dead bolt? |

That would be the assumption I would make. McD

**From:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Sent:** Friday, September 11, 2020 9:28 AM
**To:** John R. McDermott <John.McDermott@loras.edu>
**Cc:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** Dead bolt?

Hey John,

I'm assuming this is a no, but figured I'd ask anyway. Is it possible to add a dead bolt to a main door BO apartment? Same apartment that was recored per Art and Molly – wondering about the possibility of a dead bolt now as well... Thanks John!

**Katie K.**

**Katie Keleher-Garfoot, M.S.**
Assistant Director of Residence Life
Loras College
563.588.7060
katie.keleher-garfoot@loras.edu
BE MORE. BE LORAS.

1

LORAS 0650

*Z*

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, September 15, 2020 3:52 PM |
| **To:** | John Mcdermott (John.McDermott@loras.edu); Arthur W. Sunleaf |
| **Subject:** | Deadbolt request |

In the interest of providing a solution for a student that would significantly help improve the situation, could we put a deadbolt that works with our master on apartment 101 Byrne Oaks? I know the reasons we likely wouldn't do this, but I'm asking if we can, how soon, and how much?

Thanks,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

## Molly A. Burrows Schumacher (staff)

**From:** John R. McDermott
**Sent:** Thursday, September 17, 2020 7:31 AM
**To:** Molly A. Burrows Schumacher (staff)
**Subject:** Re: Deadbolt request

I forwarded this to Dan for pricing. Not sure if those doors carry a fire rating and if so what it doesto it?

John McD

> On Sep 15, 2020, at 3:52 PM, Molly A. Burrows Schumacher (staff)
> <Molly.BurrowsSchumacher@loras.edu> wrote:
>
> In the interest of providing a solution for a student that would significantly help improve the situation, could we put a deadbolt that works with our master on apartment 101 Byrne Oaks? I know the reasons we likely wouldn't do this, but I'm asking if we can, how soon, and how much?
>
> Thanks,
>
> **Molly**
>
> Molly Burrows Schumacher
> *Assistant Dean of Students*
> LORAS COLLEGE
> 1450 Alta Vista St
> Dubuque, IA 52001
> molly.burrowsschumacher@loras.edu
> BE MORE  BE LORAS

LORAS 0652

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Daniel <dan@locksmithexpress.com> |
| **Sent:** | Thursday, September 17, 2020 8:14 AM |
| **To:** | John R. McDermott |
| **Cc:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | Re: Deadbolt request |

John

I will review this door and let you know what we can do.

Thanks
Daniel R. Walling CPL, IFDIA, DHT, CFDAI
563-580-4442
The Locksmith Express
450 Central Ave
Dubuque, IA 52001

> On Sep 17, 2020, at 7:30 AM, John R. McDermott <John.McDermott@loras.edu> wrote:
>
> I forwarded this to Dan for pricing. Not sure if those doors carry a fire rating and if so what it doesto it?
>
> John McD

>> On Sep 15, 2020, at 3:52 PM, Molly A. Burrows Schumacher (staff)
>> <Molly.BurrowsSchumacher@loras.edu> wrote:
>>
>> In the interest of providing a solution for a student that would significantly help improve
>> the situation, could we put a deadbolt that works with our master on apartment 101
>> Byrne Oaks? I know the reasons we likely wouldn't do this, but I'm asking if we can,
>> how soon, and how much?
>>
>> Thanks,
>>
>> **Molly**
>>
>> Molly Burrows Schumacher
>> *Assistant Dean of Students*
>> LORAS COLLEGE
>> 1450 Alta Vista St
>> Dubuque, IA 52001
>> molly.burrowsschumacher@loras.edu
>> BE MORE. BE LORAS.

1

LORAS 0653

2

CONFIDENTIALITY NOTICE: This email, including any attachments, is the property of Loras College. The information may be legally privileged and/or confidential and is intended solely for the use of the addressee. If you are not the intended recipient be advised that any unauthorized disclosure, copying, distribution or use of the contents herein is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy all electronic and hard copies of the communication, including attachments.

LORAS 0654



## Molly A. Burrows Schumacher (staff)

**From:** Katie Keleher-Garfoot
**Sent:** Tuesday, December 29, 2020 10:24 AM
**To:** Molly A. Burrows Schumacher (staff)
**Subject:** FW: Updates

Kiki took the door alarms and window blockers there – she said they were all fine with her. I don't know if Rachael has ever returned, but she didn't move completely out or return keys, so we've kept her in the system.

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Thursday, September 17, 2020 2:38 PM
**To:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Subject:** RE: Updates

Hello Katie,

I have been at home since Friday. I came back Wednesday to finish the week in soccer. I'm staying in a hotel because I didn't feel comfortable in the apartment. The other 5 girls in the apartment are also scared and sleep in the same room some nights. I will be returning home for the unforeseen future because I couldn't and didn't feel safe in the apartment without the safety measure that were asked for. I'm not on campus and would prefer if some can and installed the door alarms and window blockers in the apartment. We need 2 door alarms and 9 window blockers.


Thank you,

Rachael Swift

**From:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Sent:** Tuesday, September 15, 2020 12:08 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Cc:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>; John R. McDermott <John.McDermott@loras.edu>
**Subject:** Updates

Hi Rachael,

I just got the bars for the windows and door alarms in the mail this morning! So those are ready – would you like me to leave them at the Information Desk for you, or would you like assistance in putting them up? I can ask one of your CAs to bring them by if you'd like assistance, just let me know! How many door alarms would you like? Just one for the front door or one for any of the bedrooms as well?

You had asked about the deadbolt on the front door. I was told it would not be possible per the Physical Plant. If you have more questions, I've CC'd John McDermott on this message – he may be able to answer any additional questions you have about that.

For requesting a copy of the report, you can request it officially via email – so you can reply to this message with the request and we can provide the copy.

1

**LORAS 0655**



I also have an answer to your question about the blue lights. Student Union looked into the blue lights as an option on campus, and has done so periodically over the past few years. From what I understand, survey responses were collected from our students, and most students indicated their first choice for call would be their cell phone. There are also some challenges at other schools that have them with false reporting, and the last time this was researched, there were institutions removing these posts from their campuses. However, we can definitely bring the idea forward again to the college for review at your request? It may take about a week to gather all the pricing information for available options, but we can create a proposal for consideration. Are there any specific places you were hoping to see blue lights? We have a layout that we've used in past considerations - but if there are other areas from the student perspective to consider, that would be helpful.

Please let me know how many of the door alarms you would like and if you'd like assistance in putting the bars and alarms up, and we'll make arrangements from there! Thank you!

**Katie Keleher-Garfoot**, m.s.
Assistant Director of Residence Life
Loras College
563.588.7060
katie.keleher-garfoot@loras.edu
BE MORE. BE LORAS.

2

LORAS 0656

*BB*

## Molly A. Burrows Schumacher (staff)

| From: | Molly A. Burrows Schumacher (staff) |
|---|---|
| Sent: | Tuesday, September 15, 2020 12:25 PM |
| To: | Arthur W. Sunleaf |
| Subject: | Cam |

Hey - working on rosters but also swift case. So you are aware - I am requesting we move the camera that faces out of Hoffman toward the entrance to the BO entrance also spanning the lot for awhile to help with the Swift family concerns. If you could support if asked, that would be great. I'm assuming cost is just our labor since we have an office there. If there turns out to be an actual cost - I will let you know and we can decide.

The family also wants blue light poles - I indicated we can submit a proposal with any feedback she has. Waiting for that feedback.

Thanks –

Sent from my iPhone

LORAS 0657

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, September 15, 2020 9:32 PM |
| **To:** | Rachael N. Swift |
| **Subject:** | touching base |

Hello Rachael,

Your recent report was routed to me today for review. I apologize if you felt you did not receive a response to your requests. If you could let me know who you reached out to, I will follow up to see what additional information is available, but wanted to provide what updates I am aware of at this time.

Since the incident, Campus Safety has increased rounds on the interior and exterior of the facility as well as the surrounding grounds. Part of those rounds includes checking common areas and corridors for those who do not live in the building, un-propping propped doors if they are propped, and monitoring the areas behind the building as well. While helpful in the pursuit of campus safety, this increased surveillance has not provided any additional information regarding your case.

We have been able to contact those who fobbed into the building shortly before the incident occurred – including a student who lived in an apartment near yours, who fobbed in around the time the incident occurred. He indicated he did not see anything unusual or encounter any other students while moving from the entrance to his apartment. Our other fob accesses (based on access time) are less likely to have information, but we will be following these leads as well. I noticed in your report you contacted the Dubuque police about what occurred – did they offer you a case number you are willing to share with the college? While we provide campus safety officers on campus, we are not a police force – so when there is a corresponding police report, we like to contact the local officer connected with the case to provide what information we do have since local PD has additional avenues they can explore as sworn law enforcement officers.

I am aware you requested a deadbolt be added to your door at Byrne Oaks, and I saw today that the Physical Plant indicated they would not be able to honor that request. Please know that we are resubmitting the request. I can't promise it will change the answer, but we are advocating to do what will make you feel most comfortable in your space. I'm also aware you/your family has requested blue light poles on campus. I am gathering current pricing for these poles to see what options might be available, and will submit that information for review. If you would like to provide a letter of support about this request, or have a specific idea in mind of where you would like to see a blue light that will best benefit students, please let me know and I will include this information in the request.

Additionally, I have submitted a request to have a surveillance camera installed at the access point at Byrne Oaks. The camera would be motion activated and would record when movement is in the vicinity, allowing us to further track who is entering and exiting the building. IT is currently checking to see if we have the capability of supporting a camera in this area. We will keep you posted on these projects as additional information becomes available. While this is not an exhaustive list of what is occurring, I want to assure you that the college is taking your concerns seriously.

In your report, you also mentioned that you have been subjected to a sexual assault. I am so very sorry to hear this, and want to provide any support I can to be of help to you. Your story is yours to share in your own time as you are comfortable, but if there are supports you need on campus, or if you would like to discuss the process on or off campus for filing a report of sexual assault, I'm willing to assist in any way I can that meets your needs. There is a campus resource packet I can share with you that might be helpful in explaining local resources, accommodations, and how cases move forward on and off campus. If you are interested in this resource, please let me know and I will send it to you via email.

LORAS 0658



Please let me know if you have any additional questions.

Thank you,

Molly

**Molly Burrows Schumacher**
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

LORAS 0659

**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Thursday, September 17, 2020 3:16 PM |
| **To:** | Rachael N. Swift |
| **Subject:** | RE: your request |

I'm glad to see your reply, and I'm glad to hear you are connecting with Nancy.  Please know I'm here if you need anything.

I can share the following additional updates today –

Technology has indicated we should be able to install the camera at Byrne Oaks, and are in the process of testing the unit now.  I'm still waiting for price estimates back on the blue lights, but will keep you posted.  And – maintenance has contacted a locksmith to see the best way to install a deadbolt on the apartment at Byrne Oaks.  I'm not sure I fully understand the challenges, but it has to do with installing the lock in a way that maintains the required fire rating on the door.  The locksmith indicated this morning he would be in touch soon with an update.

I'll share more as I know more. Thanks -

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Thursday, September 17, 2020 2:47 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** RE: your request

Hello Molly,

I have received your emails. I wanted to keep you in the loop. I'm trying to set up an in-person with Nancy Fett for some time tomorrow. Thank you for finally reaching out and updating me.

Thanks,
Rachael Swift

**From:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Sent:** Wednesday, September 16, 2020 6:40 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** your request

Hello Rachael,

1

LORAS 0660



Nancy Zachar Fett, the college's Title IX coordinator, was in contact with me today and asked that I reach out to you to see if you would like to talk with/meet with a Title IX investigator on campus to discuss a recently filed report. Right now, the college has three trained Title IX investigators for student cases and they are myself, Matthew Saylor (Campus Safety, and Katie Keleher-Garfoot [Residence Life]. Matt and Katie would both be able to meet in person with you to discuss the process; I am available by zoom only at this time for medical reasons but am happy to assist in any way I can. I'm not sure if you have a preference, but if I can assist in setting up an appointment with any of the investigators, please do let me know. I'm attaching a resource that provides additional information about the college's sexual misconduct policy – it outlines additional information about college policy, the processes available on or off campus, and local resources that might be helpful for you at this time. Please let me know if you have any questions or if I can be of service at this time or provide any support at this time.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

2

LORAS 0661

*EE*

## Molly A. Burrows Schumacher (staff)

| From: | Nancy Z. Fett |
|---|---|
| Sent: | Sunday, September 20, 2020 10:45 AM |
| To: | Molly A. Burrows Schumacher (staff) |
| Cc: | Arthur W. Sunleaf |
| Subject: | RE: phone call |

She has not responded.  NZF

Nancy Zachar Fett, LMSW
Assoc. Professor/Field Director
Loras Social Work Program
563-588-7029, Fax. 563-588-7005

From: Molly A. Burrows Schumacher (staff)
Sent: Thursday, September 17, 2020 4:38 PM
To: Nancy Z. Fett <Nancy.Fett@loras.edu>
Cc: Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** RE: phone call

I did reach out and offer to meet.  Art met with Rachael and her family, so he might be able to provide some additional insight as well.

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

**From:** Nancy Z. Fett <Nancy.Fett@loras.edu>
**Sent:** Thursday, September 17, 2020 3:00 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Cc:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** Re: phone call

Tomorrow is ridiculously busy but Monday anytime after my class.  10, 11:30-3pm.  Let me know what works and where suits you.  Nzf

Nancy Zachar Fett
Sent from my iPad

> On Sep 17, 2020, at 2:43 PM, Rachael N. Swift <Rachael.Swift@loras.edu> wrote:

Hello Nancy,

1

LORAS 0662



I want to apologize for the late response. I have been off campus since yesterday and then had to move to a hotel yesterday afternoon. Can we meet tomorrow in-person to talk about the details in regards to my Title IX claim.

Thank you,
Rachael Swift

**From:** Nancy Z. Fett <Nancy.Fett@loras.edu>
**Sent:** Tuesday, September 15, 2020 7:09 PM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** phone call

Thank you for your phone call. I have not been in my office all week and so I am not sure when you left the message.
Thank you for having the courage to advocate for yourself in this personal matter. I only wish more women did.
You will likely be contacted by one of two people: Matt Saylor in security or Molly Burrows Schumacher in Student Life. They will conduct the investigation, ask you for your side of the story, if there are witnesses, etc. They will also contact the alleged perpetrator to discuss the matter.

My role is to assure the process is followed, monitor the report, ask questions and suggest alternative approaches/questions/theories and assure the matter is handled professionally, according to our policy, and with utter fairness.

If you feel like you are not being heard, please contact me. It is important to me (and the College) that anyone who comes forward is supported and listened to. Let me know if you have any questions. NZF

https://issuu.com/lorasduhawks/docs/studenthandbook_845b4473c6d53f
See page 30-31 to read more about the Hearing Board.

Nancy Zachar Fett, LMSW
Assoc. Professor of Social Work
Field Director
1450 Alta Vista, MS #221
Dubuque, IA 52001
563-588-7029, Fax. 563-588-7005

Pronouns: She/Her

2

LORAS 0663

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, September 8, 2020 5:13 PM |
| **To:** | Kyle L. Hall |
| **Subject:** | touching base |

Hi Kyle,

I work with Campus Safety, and I'm reaching out today because I am investigating a report from this past weekend. A female student reported that on 9/6, around 4:20 a.m., and individual entered her apartment on the 1st floor of Byrne Oaks and approached her individual room door, Door D.

I'm reaching out today because our fob access system indicates that you had entered the first floor of Byrne Oaks around 4:03 a.m. on that date, and I am wondering if you may have seen anyone on the floor around that time or anything of concern? If you noticed anything, we would appreciate any information you might be able to share to help us learn more about what happened. We know that from time to time, especially at the beginning of the year, people sometimes get turned around in the building and attempt to enter a door that's not their own – so we're hoping that is what we find by searching further with those who may have been in the area at the time.

Thanks so much,

**Molly**
Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563 588.7137
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

1

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Kyle L. Hall |
| **Sent:** | Wednesday, September 9, 2020 10:36 AM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | RE: touching base |

That would've been the only place where I would've saw something, but like I said, nobody was in the hallways at that time when I got back. I don't know about upstairs because there was no need for me to go up there since my room is on the first floor.

Kyle

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, September 8, 2020 11:11 PM
**To:** Kyle L. Hall <Kyle.Hall@loras.edu>
**Subject:** Re: touching base

Thanks, Kyle! Knowing where we didn't see anything helps too. I appreciate the quick reply!

Molly

Sent from my iPhone

> On Sep 8, 2020, at 9:18 PM, Kyle L. Hall <Kyle.Hall@loras.edu> **wrote:**
>
> When I walked in at that time, I did not see anything suspicious. There was nobody else in the hallways at that time. I went straight to my room, and did not see anything that would be of concern on my way there. Sorry that I can't help you out any more.
>
> From,
> Kyle L. Hall
>
> **From:** Molly A. Burrows Schumacher (staff)
> **Sent:** Tuesday, September 8, 2020 5:13 PM
> **To:** Kyle L. Hall <Kyle.Hall@loras.edu>
> **Subject:** touching base
>
> Hi Kyle,
>
> I work with Campus Safety, and I'm reaching out today because I am investigating a report from this past weekend. A female student reported that on 9/6, around 4:20 a.m., and individual entered her apartment on the 1st floor of Byrne Oaks and approached her individual room door, Door D.
>
> I'm reaching out today because our fob access system indicates that you had entered the first floor of Byrne Oaks around 4:03 a.m. on that date, and I am wondering if you may have seen anyone on the floor around that time or anything of concern? If you noticed anything, we would appreciate any information you might be able to share to help us learn more about what happened. We know that

1

LORAS 0665



from time to time, especially at the beginning of the year, people sometimes get turned around in the building and attempt to enter a door that's not their own – so we're hoping that is what we find by searching further with those who may have been in the area at the time.

Thanks so much,

**Molly**
Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7137
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

LORAS 0666

Interview with Respondent Kyle Hall – January 14, 2020, 4:30 p.m. via Zoom
With Matthew Saylor and Molly Burrows Schumacher

Molly Burrows Schumacher and Matthew Saylor met with Kyle Hall via Zoom Meeting on Thursday, January 14, 2021, at 4:30 p.m. to discuss why he was found on video camera entering an apartment he did not live in on December 5, 2020, at 301 Byrne Oaks (Dubuque Police Case #2020007977). Hall's father was also present during the meeting, and a FERPA wavier was on file prior to his participation.

Burrows Schumacher asked Hall what he was doing when he entered apartment 301 Byrne Oaks and found himself on camera. Hall indicated that it was late when he got off work, around 11 or 12, and that he went to a friend's house at that time. Hall indicated that after visiting his friend's house, he returned to Byrne Oaks and was on his phone and not paying attention and approached the wrong apartment. Hall indicated that when he realized he was not in his apartment, he left.

When asked if he had entered an apartment that was not his own in any other instances, Hall indicated no. Burrows Schumacher noted that the Dubuque Police Department was contacted in the situation on December 5, and asked what was discussed with police. Hall noted that they discussed what he had just shared – that it was this one time when he had been working, it was late, and he was not paying attention when he returned. Per Hall, the apartment involved is not pressing charges at this time. Burrows Schumacher referenced that there had been other incidents of a similar nature at Byrne Oaks, and Hall indicated he was not involved. Hall's father indicated that when the police spoke with Kyle, it seemed as though police were trying to blame Kyle for other robberies and insinuated that he may have been involved with things off campus, which Hall and his father indicate is not true.

Hall indicated that he was aware of the situation that occurred in the first apartment, as he knows the women who live there. Hall then proceeded to share that around that same time, he saw someone walk into his apartment too but he did not report it and provided the physical description of medium height – maybe a little taller. Hall indicated that he talked to his roommates about it and they decided they would start locking their door. When asked if we should talk with his roommates about this instance, Hall indicated that he was the only one home at the time and the others wouldn't have seen anything or have more information.

Saylor asked Hall to clarify his comments about accidentally walking into the third floor apartment. Saylor noted that Hall lived on the first floor of Byrne Oaks and the incident occurred on the third floor of Byrne Oaks. Hall indicated again that he had walked up to the apartment on accident out of habit and then left when he realized it was not his apartment.

Kyle Hall approved these summary notes on January 19, 2021, at 10:58 a.m.:

**From:** Kyle L. Hall <Kyle.Hall@loras.edu>
**Sent:** Tuesday, January 19, 2021 10:58 AM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** RE: For your review: Summary of Notes from Zoom Meeting

It is alright as written.

From,

Kyle Hall


**LORAS COLLEGE**™
1450 Alta Vista · Dubuque, IA · 563.588.7100 · www.loras.edu

December 5, 2020

Kyle Hall
103 Byrne Oaks
Loras College
1450 Alta Vista St
Dubuque, IA 52001

Dear Kyle,

Due to a report received by Campus Safety today, December 5, 2020, and video footage received allegedly showing you entering apartment 301 Byrne Oaks without permission, you are asked to depart campus immediately (no later than 5:00 p.m. today, December 5, 2020) and finish your semester via remote learning. If you are unable to remove all of your belongings prior to departure, you may schedule an appointment with Campus Safety to return to remove the remainder of your belongings at a later time. Campus Safety can be reached at 563.588.7100 to schedule a time to escort you to the building.

This letter also serves to notify you that you are not permitted to be present on campus without express permission from Campus Safety while this matter is being further investigated. If you should be observed or be reported to have violated this restriction, the college may take judicial action, including involuntary suspension, and/or contact law enforcement to have you removed from the premises.

If you have any questions or concerns regarding this matter, please feel free to contact me at Molly.Burrowsschumacher@loras.edu. Know that myself and/or Matthew Saylor will be in touch with you on Monday via email or phone to set up a time to meet via zoom to discuss this report with you.

Best regards,

Molly Burrows Schumacher
Assistant Dean of Students
Loras College
Dubuque, IA 52001

cc:     Art Sunleaf, Vice President for Student Development/Dean of Students
         Matthew Saylor, Assistant Director of Campus Safety
         Aiden Wojciehowski, Area Coordinator for Byrne Oaks
         Student File

**LORAS 0668**



## Molly A. Burrows Schumacher (staff)

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, December 15, 2020 11:56 PM
**To:** Rebecca A. Fabricius
**Subject:** Re: voicemail follow-up

Sounds perfect! Thanks!

Sent from my iPhone

> On Dec 15, 2020, at 5:09 PM, Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu> wrote:
>
> From one "I have to serve as the external brain for this entire family" to another... how about whomever gets on Zoom first around 9:15 sends the other a link at that time?
>
> **From:** Molly A. Burrows Schumacher (staff)
> **Sent:** Tuesday, December 15, 2020 5:06 PM
> **To:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
> **Subject:** RE: voicemail follow-up
>
> That sounds perfect! I usually have all the kids up and on their Zooms by 9:00 – but in case tomorrow is a battlefield lol 9:15?
>
> Thanks!
>
> Molly Burrows Schumacher
> *Assistant Dean of Students*
> LORAS COLLEGE
> 1450 Alta Vista St
> Dubuque, IA 52001
> molly.burrowsschumacher@loras.edu
> BE MORE   BE LORAS
>
> **From:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
> **Sent:** Tuesday, December 15, 2020 4:28 PM
> **To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
> **Subject:** RE: voicemail follow-up
>
> Would it be okay if I just called you when I'm Zoom-ready in the morning?  What time is not too early? – Rebecca
>
> **From:** Molly A. Burrows Schumacher (staff)
> **Sent:** Tuesday, December 15, 2020 4:27 PM
> **To:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
> **Subject:** RE: voicemail follow-up

1

LORAS 0669

Hi Rebecca,

Thanks for reaching out! I'm having some trouble with my voicemail access at home right now, so I'm glad you emailed. I'm happy to give you a call or Zoom is fine too. I'm free all morning tomorrow and from 1:15 – 1:45 – just let me know what works best for you.

Also – in case you need it while we are figuring out voicemail – my mobile is 563.543.1311 ☺ Thanks!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
**Sent:** Tuesday, December 15, 2020 3:56 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** voicemail follow-up

Hi Molly,

Hoping to connect with you on several matters regarding Spring student teachers / student life interfaces. Is it best to schedule a Zoom? Book through Outlook calendar? Pick up the phone?

I'm in the office tomorrow (Wednesday) afternoon with a window from 1:15 – 1:45, but could be available most of the morning as well from home. Thursday morning is also open, though I may be working from home.

Please let me know what works best for you.

Rebecca Fabricius

2

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Wednesday, December 16, 2020 4:34 PM |
| **To:** | Rebecca A. Fabricius |
| **Subject:** | Following up |
| **Attachments:** | DO I NEED TO ISOLATE OR QUARANTINE.docx |

Thanks for chatting this morning – it was great to see you! Below you'll find the information we discussed – please let me know if I missed anything or if you have any questions.

Fob Access
Please send the list of those student teaching to my email – I'll make sure we have them all activated as of January 1 for access to their housing options.

Testing
I'm reaching out to Chris Kamm to see if we can add you to an existing test date the first week of January – If you could send a number to be tested my way, that would be helpful. Free test options in Dubuque are available at: https://www.dubuquecountyiowa.gov/565/Free-Local-COVID-19-Testing-Options. Rides to the EPIC site are available by calling: Schedule a free ride (at least 24 hours in advance) through the Regional Transportation Authority website: https://www.rta8.org/services/tripmaker.cfm. Epic's address is 1075 Cedar Cross Road. Bus pick up should be scheduled 15 minutes before appointment time. The bus will wait while you are tested and then return you to campus at no charge.

Language around testing: "The college is asking all campus community members to plan to be tested for COVID-19 prior to the start of the spring semester. Individuals are welcome to be tested in their home community or in the Dubuque community."

Per our conversation, test results will come to you and you will provide names, test date, and outcome to Tammy.Marti@loras.edu.

Behavior Restrictions
The expectations around student behavior are typically found at the end of the email I send each week to the campus community. Right now, they are:

- On campus, masks continue to be required in all public areas and in areas where 6 feet social distance is not possible. Governor Kim Reynolds has also issued a proclamation indicating that those 2 years of age and older must wear masks when inside areas open to the public where 6 feet social distance cannot be maintained.

- Additionally, per Governor Reynold's recent proclamation, which extends through December 16, 2020, those dining at dining services options will be limited to groups of 8 per table area. Utilizing available to-go options is highly encouraged.

- Groups planning programming should consider using virtual or small group programming when possible. When programming, offer a Zoom or Teams option when possible for those who may not be able to attend programming due to quarantine or isolation protocols or risk status. Masks are required for all programs unless participants are eating or drinking. Per Governor Reynold's most recent proclamation, indoor gatherings are capped at 15 participants, and outdoor events at 30 participants through December 16, 2020.

1



- Common area rec rooms will continue to operate at 50% capacity (capped at a maximum of 15 persons) at Beckman, Binz, and Rohlman Halls to help reduce the number of large group gathering areas and reduce contact with common surfaces. Virtual and outdoor programming will be emphasized, and no in hall solicitation will be permitted at this time. Additional use and cleaning expectations have been posted for hall kitchens and laundry rooms. Non-Loras guests are not permitted in college housing at this time.

- Campus community members should continue to avoid social gatherings, including social gatherings with those you do not live with as well as gatherings at house parties and bars. If you have been diagnosed with COVID-19, are waiting for COVID-19 test results, or may have been exposed to someone with COVID-19, you should not attend class, work, or any social gatherings. The Director of the CDC recently noted that even small group gatherings are resulting in community spread of COVID-19 at this time.

  As previously recommended, prioritize outdoor over indoor activities, stay within the local area when possible, practice 6 feet social distancing, wear a mask, wash hands after touching common and frequently used surfaces, and use a hand sanitizer with at least 60% alcohol.

  Students who host and/or attend unsafe gatherings, socials, or parties (on or off campus), as well as students who attend bars, risk contracting and/or spreading the virus to other community members. As a result, please know that students who are found attending hosting unsafe gatherings, socials, or parties (on or off campus), or attending bars may be sent away from campus to continue their learning remotely and may not be permitted on campus for the duration of term/academic year.

- When necessary, designated athletic teams will cease operations (no practices, facility use, or locker room use) for a period of time to help reduce contact and slow virus activity. Coaches will be in contact with teams impacted by this mitigation strategy. Teams that have not been instructed to cease operations are permitted to maintain practices, squad scrimmages, and locker room use provided they are following Athletics COVID-19 plan, completing the daily screening processes required by the athletic training staff team, and testing as directed.

- Those who are at high risk for severe illness due to COVID-19 should follow recommendations from their health care provider, and should discuss any accommodations requests with their Instructor or supervisor. For more information about groups who are at high-risk for severe illness, visit https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

Transition to Online Learning

There may be times when, to be proactive, the college may transition to online learning for a period of time. This transition does not mean there is significant virus activity present on campus but rather that conditions exist in the surrounding community that suggest any anticipated virus activity could be slowed by incorporating a period of online learning and reducing close contact circumstances.

Quarantine

I'm attaching our updated quarantine handout for your convenience – this reflects the CDC's updated guidance on quarantine. DCSD messaged out on 12/4 quarantine guidelines that matched this CDC update.

Thanks!

Molly
Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St.
Dubuque, IA 52001

2

LORAS 0672

II

molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

3

LORAS 0673

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Rebecca A. Fabricius |
| **Sent:** | Wednesday, December 16, 2020 9:14 AM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | Zoom invite |

I'm on! https://zoom.us/j/97464961018?pwd=aHNLb2g4YWVkTXR4QWJpc0hGS0NEdz09

Topics:
1. Housing dates
2. Testing thoughts
3. Covid conduct policy
4. Criminal reporting
5. How early is not too early for wine

1

LORAS 0674

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| From: | Matthew E. Saylor |
| Sent: | Thursday, December 17, 2020 1:59 PM |
| To: | Molly A. Burrows Schumacher (staff); Arthur W. Sunleaf |
| Subject: | Call DP LT |

Molly and Art,

I received a call from a Dubuque Police LT that stated the TH contacted them about an incident from BO. He stated that it sounded like it was started via Rachel Swift. He said we were working together on the incident and I gave him more information on what happened, what we did initially, and what we did since. He believes that the TH may try contacting us about the incident too, so just wanted to make sure you were aware. Please let me know if you have any questions.

Thank you,



**Matthew Saylor**
*Assistant Director of Campus Safety*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7100 | 800.245.6727
matthew.saylor@loras.edu
BE MORE. BE LORAS.

1

LORAS 0675



| | |
|---|---|
| **From:** | Arthur W. Sunleaf |
| **Sent:** | Thursday, December 17, 2020 2:36 PM |
| **To:** | Molly A. Burrows Schumacher (staff); Matthew E. Saylor |
| **Subject:** | FW: Call DP LT |

FYI

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Bobbi Earles <Bobbi.Earles@loras.edu>
**Sent:** Thursday, December 17, 2020 2:21 PM
**To:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>; Robert Waterbury <Robert.Waterbury@loras.edu>
**Cc:** Jim Collins <Jim.Collins@loras.edu>
**Subject:** RE: Call DP LT

Art,

We appreciate the context and information below. You certainly can refer them to us, it would be my recommendation that we keep our comments limited to, "yes we are working with law enforcement, but are unable to comment on details due to the ongoing investigation and FERPA." Jim, if you would like this handled differently, just let me know.

Thanks,
Bobbi

**From:** Arthur W. Sunleaf
**Sent:** Thursday, December 17, 2020 2:09 PM
**To:** Bobbi Earles <Bobbi.Earles@loras.edu>; Robert Waterbury <Robert.Waterbury@loras.edu>
**Cc:** Jim Collins <Jim.Collins@loras.edu>
**Subject:** FW: Call DP LT

Bobbi and Robert,

Should the TH contact you, due to Family Right to Privacy (FERPA) we are unable to comment other than we are aware of the situation and working with local law enforcement.

For context, we had four incidents over the past semester of someone walking into unlocked, but occupied apartments. Recently we identify the person. It was reported to the police and we are working together on it.

Let me know if you have questions.

Art

1

LORAS 0676

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Matthew E. Saylor <Matthew.Saylor@loras.edu>
**Sent:** Thursday, December 17, 2020 1:59 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>; Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** Call DP LT

Molly and Art,

I received a call from a Dubuque Police LT that stated the TH contacted them about an incident from BO. He stated that it sounded like it was started via Rachel Swift. He said we were working together on the incident and I gave him more information on what happened, what we did initially, and what we did since. He believes that the TH may try contacting us about the incident too, so just wanted to make sure you were aware. Please let me know if you have any questions.

Thank you,



**Matthew Saylor**
*Assistant Director of Campus Safety*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7100 | 800.245.6727
matthew.saylor@loras.edu
BE MORE. BE LORAS



2

LORAS 0677

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Thursday, December 17, 2020 5:04 PM |
| **To:** | Arthur W. Sunleaf |
| **Cc:** | Nancy Z. Fett |
| **Subject:** | RE: Title IX Complaint |

Sounds good.  Thank you

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

**From:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Sent:** Thursday, December 17, 2020 4:56 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Cc:** Nancy Z. Fett <Nancy.Fett@loras.edu>
**Subject:** Re: Title IX Complaint

We should involve Rich. Let's give him a call tomorrow.

Dr. A. W. Sunleaf
Vice President for Student Development & Dean of Students
Loras College

> On Dec 17, 2020, at 4:39 PM, Molly A. Burrows Schumacher (staff)
> <Molly.BurrowsSchumacher@loras.edu> wrote:

Hi Nancy,

Art – could you also please weigh in for Nancy's reply?  And should we have Rich send the reply or is it ok to proceed?

At this time, we are cooperating with the Dubuque Police Department on their investigation, and have initiated the student conduct process for Title IX complaints as described in our online at https://www.loras.edu/campus-life/health-and-safety/title-ix-resources-and-reporting/ to investigate Kyle Hall's possible involvement in the incident in Rachel's apartment earlier this fall.  You can also share that I sent a message to Rachael via email today, as it relates to the off-campus/law enforcement process, to let her know that Officer Brianna Marzette is the Officer working with the case, and Marzette has indicated that she would like to talk with Rachael if she is willing to do so.  Marzette requested I gather contact information and let her know the best way to reach Rachael at this time.

1

LORAS 0678



As it relates to our on campus process, we are in the process of obtaining information from the Respondent at this time. Once we have this information, we may have additional questions for Rachael based on what we learn. Once that investigation is completed, the case information will be shared with the College Hearing Board, who hears all cases of this nature on our campus. The Hearing Board will work with all involved parties to prepare for this process. The Board then reviews the information available and determines the outcome of the case. All Title IX cases may include sanctions up through suspension or expulsion.

In answer to the question about adding Kyle Hall to Rachael's complaint – I added Kyle Hall via a case note on Rachael's case on 12/7/20. I sent the following update to Rachel the next morning:

> Hello Rachael,
>
> I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the suspect (a Loras student), admitted to entering at least 2 apartments over the course of this semester. This individual has been removed from campus and is not permitted to return. The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case. Additionally, your information will be included in our on-campus investigation process so that the individual can be held accountable both on campus and off.
>
> We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident at your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew Saylor or myself to be included in the College's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.
>
> Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions. I've contacted you directly as the filed reports name you as the reporting student. If you would like me to also notify the women you were living with in apartment 101 at the time of the incident, please do let me know and I will do so.
>
> Thank you,
>
> Molly

Rachael reached out to Nancy on 12/9/20 to have Hall added to the report, but we had already done so.

Thanks –

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

2

LORAS 0679



**From:** Nancy Z. Fett <Nancy.Fett@loras.edu>
**Sent:** Thursday, December 17, 2020 3:54 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** FW: Title IX Complaint
**Importance:** High


Fyi, how should I respond?

Sent from my U.S.Cellular© Smartphone



-------- Original message --------
From: Bradley Levison <brad@hlhlawyers.com>
Date: 12/17/20 3:08 PM (GMT-06:00)
To: "Nancy Z. Fett" <Nancy.Fett@loras.edu>
Cc: "Rachael N. Swift" <Rachael.Swift@loras.edu>
Subject: Title IX Complaint

Nancy,

Per my message I represent Rachael Swift and I am following up on the status of the Title IX complaint she filed in September 2020. As you know, the student (Kyle Hall) that broke into Rachael's apartment was caught and now that we know his identity Rachael wanted to add the student to her complaint. I would appreciate an update on the status of Raechel's Title IX complaint. Rachael is copied on this email.

You may reach me at 312.819.6360.

Thank you.

Brad

<image002.jpg>
Bradley Levison
Herschman Levison Hobfoll PLLC
401 S. LaSalle Street, Suite 1302G
Chicago, Illinois 60605
O: 312.870.5800
F: 312.786.5921
**D: 312.819.6360**
brad@hlhlawyers.com
www.hlhlawyers.com

3

LORAS 0680

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Thursday, December 17, 2020 3:23 PM |
| **To:** | Rachael N. Swift |
| **Subject:** | RE: following up on your previous report |

Hello Rachel,

I've connected with Officer Brianna Marzette at the Dubuque Police Department. She has indicated that if you would like to speak with her about the investigation and/or your case, if you could provide the best way to contact you (email, phone and number, etc.), she will contact you. If you'd like her to reach out to you, could you please provide the best way to do so at this time?

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, December 8, 2020 11:13 AM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** following up on your previous report

Hello Rachael,

I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the suspect (a Loras student), admitted to entering at least 2 apartments over the course of this semester. This individual has been removed from campus and is not permitted to return. The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case. Additionally, your information will be included in our on-campus investigation process so that the individual can be held accountable both on campus and off.

We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident at your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew Saylor or myself to be included in the College's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.

Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions. I've contacted you directly as the filed reports name you as the reporting student. If you would like me to also

1

LORAS 0681



notify the women you were living with in apartment 101 at the time of the incident, please do let me know and I will do so.

Thank you,

**Molly**

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

LORAS 0682

**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| From: | Molly A. Burrows Schumacher (staff) |
| Sent: | Friday, December 18, 2020 10:40 AM |
| To: | Richard K. Whitty |
| Cc: | Arthur W. Sunleaf |
| Subject: | FW: Title IX Complaint |



Case 2:22-cv-01019-LTS-KEM   Document 33-5   Filed 09/15/23   Page 107 of 175
APP 133



Hello Rachael,

I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the suspect (a Loras student), admitted to entering at least 2 apartments over the course of this semester. This individual has been removed from campus and is not permitted to return. The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case. Additionally, your information will be included in our on-campus investigation process so that the individual can be held accountable both on campus and off.

We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident at your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew Saylor or myself to be included in the College's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.

Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions. I've contacted you directly as the filed reports name you as the reporting student. If you would like me to also notify the women you were living with in apartment 101 at the time of the incident, please do let me know and I will do so.

Thank you,

Molly



From: Bradley Levison <brad@hlhlawyers.com>
Date: 12/17/20 3:08 PM (GMT-06:00)
To: "Nancy Z. Fett" <Nancy.Fett@loras.edu>
Cc: "Rachael N. Swift" <Rachael.Swift@loras.edu>
Subject: Title IX Complaint

Nancy,

2

LORAS 0684



Per my message I represent Rachael Swift and I am following up on the status of the Title IX complaint she filed in September 2020. As you know, the student (Kyle Hall) that broke into Rachael's apartment was caught and now that we know his identity Rachael wanted to add the student to her complaint. I would appreciate an update on the status of Raechel's Title IX complaint. Rachael is copied on this email.

You may reach me at 312.819.6360.

Thank you.

Brad

<image002.jpg>
Bradley Levison
Herschman Levison Hobfoll PLLC
401 S. LaSalle Street, Suite 1302G
Chicago, Illinois 60605
O: 312.870.5800
F: 312.786.5921
D: 312.819.6360
brad@hlhlawyers.com
www.hlhlawyers.com



3

LORAS 0685



Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

From: Nancy Z. Fett <Nancy.Fett@loras.edu>
Sent: Thursday, December 17, 2020 5:08 PM
To: Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>; Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
Cc: Nancy Z. Fett <Nancy.Fett@loras.edu>
Subject: RE: Title IX Complaint

Thank you

Sent from my U.S.Cellular© Smartphone

-------- Original message --------
From: "Molly A. Burrows Schumacher (staff)" <Molly.BurrowsSchumacher@loras.edu>
Date: 12/17/20 5:03 PM (GMT-06:00)
To: "Arthur W. Sunleaf" <Arthur.Sunleaf@loras.edu>
Cc: "Nancy Z. Fett" <Nancy.Fett@loras.edu>
Subject: RE: Title IX **Complaint**

Sounds good. Thank you

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE BE LORAS

4

LORAS 0686

From: Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
Sent: Thursday, December 17, 2020 4:56 PM
To: Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
Cc: Nancy Z. Fett <Nancy.Fett@loras.edu>
Subject: Re: Title IX Complaint

We should involve Rich. Let's give him a call tomorrow.

Dr. A. W. Sunleaf
Vice President for Student Development & Dean of Students
Loras College

> **On Dec 17, 2020,** at 4:39 PM, Molly A. Burrows Schumacher (staff)
> <Molly.BurrowsSchumacher@loras.edu> wrote:
>
> Hi Nancy,
>
> Art – could you also please weigh in for Nancy's reply? And should we have Rich send the reply or is it
> ok to proceed?
>
> I sent the following update to Rachel the next morning:
>
>> *Hello Rachael,*
>>
>> *I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera
>> entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the
>> suspect (a Loras student), admitted to entering at least 2 apartments over the course of this
>> semester. This individual has been removed from campus and is not permitted to return. The
>> College will be working with law enforcement and providing information about the break-in at
>> your campus apartment to be considered as they continue to investigate this case. Additionally,
>> your information will be included in our on-campus investigation process so that the individual can
>> be held accountable both on campus and off.*
>>
>> *We've reached out to the police officer who is working with the case to find the best way for you
>> to connect if you would like to talk further with law enforcement about the incident at your
>> apartment. Once we receive a reply, we will relay this information to you. For the on-campus
>> investigation, you can report any additional information to either Matthew Saylor or myself to be
>> included in the College's process. We will continue to provide updates for you as additional
>> information becomes available and the process moves forward.*
>>
>> *Thank you for your patience as we investigated these incidents, and please do not hesitate to reach
>> out if you have any questions. I've contacted you directly as the filed reports name you as the
>> reporting student. If you would like me to also notify the women you were living with in apartment
>> 101 at the time of the incident, please do let me know and I will do so.*
>>
>> *Thank you,*
>>
>> *Molly*

LORAS 0687



Rachael reached out to Nancy on 12/9/20 to have Hall added to the report, but we had already done so.

Thanks

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

**From:** Nancy Z. Fett <Nancy.Fett@loras.edu>
**Sent:** Thursday, December 17, 2020 3:54 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** FW: Title IX Complaint
**Importance:** High

Fyi, how should I respond?

Sent from my U.S.Cellular© Smartphone

-------- Original message --------
From: Bradley Levison <brad@hlhlawyers.com>
Date: 12/17/20 3:08 PM (GMT-06:00)
To: "Nancy Z. Fett" <Nancy.Fett@loras.edu>
Cc: "Rachael N. Swift" <Rachael.Swift@loras.edu>
Subject: Title IX Complaint

Nancy,

Per my message I represent Rachael Swift and I am following up on the status of the Title IX complaint she filed in September 2020. As you know, the student (Kyle Hall) that broke into Rachael's apartment was caught and now that we know his identity Rachael wanted to add the student to her complaint. I would appreciate an update on the status of Raechel's Title IX complaint. Rachael is copied on this email.

You may reach me at 312.819.6360.

Thank you.

Brad

<image002.jpg>

6

LORAS 0688



Bradley Levison
Herschman Levison Hobfoll PLLC
401 S. LaSalle Street, Suite 1302G
Chicago, Illinois 60605
O: 312.870.5800
F: 312.786.5921
**D: 312.819.6360**
brad@hlhlawyers.com
www.hlhlawyers.com

LORAS 0689

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, December 22, 2020 3:50 PM |
| **To:** | David M. Salyer |
| **Cc:** | Arthur W. Sunleaf |
| **Subject:** | touching base |

Hello David,

Art Sunleaf asked me to reach out today regarding the student teaching placement for Rachael Swift. It is our understanding that Rachael may be seeking to student teach outside the Dubuque area. If there's anything the College can do to help honor/grant any placement request Rachael has submitted, it would be extremely helpful. Please let us know if there's anything we can do to be of help.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

1



## Molly A. Burrows Schumacher (staff)

| From: | Rebecca A. Fabricius |
|---|---|
| Sent: | Wednesday, December 23, 2020 11:23 AM |
| To: | David M. Salyer |
| Cc: | Molly A. Burrows Schumacher (staff); Arthur W. Sunleaf |
| Subject: | RE: touching base |

Hi David (Molly, Art),

Yes, after reaching out to Rachael via Zoom last week I had a strong sense that an out-of-area placement would be in mutual best interest. I worked with her and school districts near her extensively on Friday, through the weekend, and Monday to prepare the necessary materials and continue check-ins.

I'm happy to share that late yesterday afternoon the Arlington Heights district offered her a student teaching placement in Kindergarten. She has confirmed with me by email that she is scheduling fingerprints per their requirements, so should be able to transition to the changed placement fairly quickly.

A next step will be to identify and secure a College Supervisor in the area. I'll speak with the Principal as a first step, but schools in that district closed on Dec. 18th so I'll take that up when (if?) they re-open in January.

The student teaching placement process is quite different in suburban Chicago school districts (deadline for requests was last March), so it's exceedingly rare that there was a slot available and a Cooperating Teacher willing to host her at this date. I'm happy this seems to have worked out for all.

Wishing each of you the happiest, most email-free holiday break ever!

Rebecca Fabricius

From: David M. Salyer
Sent: Wednesday, December 23, 2020 10:56 AM
To: Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
Subject: FW: touching base

Hi Rebecca,

Forwarding to you an email from Molly. The college is willing to help with Rachael's out-of-area placement (and perhaps Molly raised this with you already). Thanks.

David

David M. Salyer, Ph.D.
Director of Teacher Education

From: Molly A. Burrows Schumacher (staff)
Sent: Tuesday, December 22, 2020 3:50 PM
To: David M. Salyer <David.Salyer@loras.edu>

1

LORAS 0691



**Cc:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** touching base

Hello David,

Art Sunleaf asked me to reach out today regarding the student teaching placement for Rachael Swift. It is our understanding that Rachael may be seeking to student teach outside the Dubuque area. If there's anything the College can do to help honor/grant any placement request Rachael has submitted, it would be extremely helpful. Please let us know if there's anything we can do to be of help.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

LORAS 0692



## Molly A. Burrows Schumacher (staff)

| From: | Rebecca A. Fabricius |
|---|---|
| Sent: | Monday, January 4, 2021 3:41 PM |
| To: | Arthur W. Sunleaf |
| Cc: | David M. Salyer; Molly A. Burrows Schumacher (staff) |
| Subject: | RE: touching base |
| | |
| Importance: | High |

Hello Art,

Reaching out again to touch base with you on progress in securing an out-of-area student teaching placement for Rachael Swift, per thread below. Because Rachael did not undergo the traditional Out-of-Area application process, the general procedures are being pursued somewhat in reverse. I have requested from Tom Kruse expedited approval/signature for a standard contract with the Arlington Heights district. While corresponding with Carrie Jones this afternoon to assess the traditional out-of-area placement fee, I learned that Rachael is not currently registered for Spring classes. Carrie reports that "She has a very large outstanding balance that needs to be paid before she's cleared to register." Rachael is also completing the school district's required paperwork (background check, physical, etc.). At the invitation of the Cooperating Teacher, Rachael has already been to the site today to meet the class and observe.

Given current deficiencies in the following elements:
1. College and District signed contract
2. Student registered for Spring '21 classes

I have some uncertainty regarding the legal status of the student and the legitimacy of the student teaching placement.

As Dean of Students, your assistance is requested to assist in resolving Rachael's enrollment / registration status so that this placement can be confirmed and starting/ending dates established.

Rebecca Fabricius

**From:** Arthur W. Sunleaf
**Sent:** Thursday, December 24, 2020 12:52 PM
**To:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>; David M. Salyer <David.Salyer@loras.edu>
**Cc:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Subject:** RE: touching base

Thank you all, for your help and attention to this matter.

Happy holidays to you and yours!

Art

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students

1

LORAS 0693



Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
**Sent:** Wednesday, December **23, 2020 11:23 AM**
**To:** David M. Salyer <David.Salyer@loras.edu>
**Cc:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>; Arthur W. Sunleaf
<Arthur.Sunleaf@loras.edu>
**Subject:** RE: touching base

Hi David (Molly, Art),

Yes, after reaching out to Rachael via Zoom last week I had a strong sense that an out-of-area placement would be in
mutual best interest. I worked with her and school districts near her extensively on Friday, through the weekend, and
Monday to prepare the necessary materials and continue check-ins.

I'm happy to share that late yesterday afternoon the Arlington Heights district offered her a student teaching placement
in Kindergarten.  She has confirmed with me by email that she is scheduling fingerprints per their requirements, so
should be able to transition to the changed placement fairly quickly.

A next step will be to identify and secure a College Supervisor in the area.  I'll speak with the Principal as a first step, but
schools in that district closed on Dec. 18th so I'll take that up when (if?) they re-open in January.

The student teaching placement process is quite different in suburban Chicago school districts (deadline for requests
was last March), so it's exceedingly rare that there was a slot available and a Cooperating Teacher willing to host her at
this date.   I'm happy this seems to have worked out for all.

Wishing each of you the happiest, most email-free holiday break ever!

Rebecca Fabricius

**From:** David M. Salyer
**Sent:** Wednesday, December 23, 2020 10:56 AM
**To:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
**Subject:** FW: touching base

Hi Rebecca,

Forwarding to you an email from Molly. The college is willing to help with Rachael's out-of-area placement (and perhaps
Molly raised this with you already). Thanks.

David

David M. Salyer, Ph.D.
Director of Teacher Education

LORAS 0694



**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, December 22, 2020 3:50 PM
**To:** David M. Salyer <David.Salyer@loras.edu>
**Cc:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** touching base

Hello David,

Art Sunleaf asked me to reach out today regarding the student teaching placement for Rachael Swift. It is our understanding that Rachael may be seeking to student teach outside the Dubuque area. If there's anything the College can do to help honor/grant any placement request Rachael has submitted, it would be extremely helpful. Please let us know if there's anything we can do to be of help.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

3

LORAS 0695

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Monday, January 4, 2021 5:22 PM |
| **To:** | Carrie E. Jones |
| **Subject:** | Credit – Rachael Swift |

Hi Carrie –

I was just talking with Art...with Rachael Swift moving back home very early in the semester Fall 2020, we'd like to credit that Byrne Oaks charge back to her account. Is this something you would need us to do or that you would do on your end? Thanks!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

1

LORAS 0696



**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| From: | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, January 5, 2021 11:55 AM |
| To: | Rachael N. Swift |
| Subject: | checking in – housing for spring |

Hi Rachael,

I hope this email finds you well. As we finalized spring housing placements, I noticed we have a housing placement and meal plan on record for you for the spring semester. If I understand correctly, you may be student teaching at home this semester so I wanted to reach out and see if you would like me to cancel that housing placement and meal plan for you? If you could confirm if you would like me to cancel these items, I'll make sure they are removed from your spring bill asap. If you would choose to cancel, please know you can add these back on at any time if you wish – we would not be asking your roommates to fill any vacancies and dining plans can be added at any time. I'll wait for your guidance on how to proceed.

Additionally, because you spent most of the fall semester away from campus at home, I removed your housing charges for Fall 2020 from your student account. That update should now be reflected on your student account. You may not receive a new billing statement, but would see this change reflected under "activity".

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

LORAS 0697

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, January 5, 2021 11:37 AM |
| **To:** | Carrie E. Jones |
| **Subject:** | Swift |

Hi! I took off the fall housing for Rachael Swift – I'm going to check in with her before I cancel spring.  Thanks!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

1

*RR*

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Molly A. Burrows Schumacher (staff) |
| **Sent:** | Tuesday, January 5, 2021 11:56 AM |
| **To:** | Arthur W. Sunleaf |
| **Subject:** | FW: checking in – housing for spring |

Just FYI on the communication I sent to Rachael Swift re: housing and meals for spring. Fall charges have been removed and Carrie indicates this is reflected on the account.

Thanks!

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

**From:** Molly A. Burrows Schumacher (staff)
**Sent:** Tuesday, January 5, 2021 11:55 AM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** checking in – housing for spring

Hi Rachael,

I hope this email finds you well. As we finalized spring housing placements, I noticed we have a housing placement and meal plan on record for you for the spring semester. If I understand correctly, you may be student teaching at home this semester so I wanted to reach out and see if you would like me to cancel that housing placement and meal plan for you? If you could confirm if you would like me to cancel these items, I'll make sure they are removed from your spring bill asap. If you would choose to cancel, please know you can add these back on at any time if you wish – we would not be asking your roommates to fill any vacancies and dining plans can be added at any time. I'll wait for your guidance on how to proceed.

Additionally, because you spent most of the fall semester away from campus at home, I removed your housing charges for Fall 2020 from your student account. That update should now be reflected on your student account. You may not receive a new billing statement, but would see this change reflected under "activity".

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001

1

LORAS 0699



molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

2

LORAS 0700

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Katie Keleher-Garfoot |
| **Sent:** | Tuesday, December 29, 2020 10:21 AM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | FW: Incident |

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Tuesday, September 8, 2020 10:57 AM
**To:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Subject:** RE: Incident

Thank You! See you there.

**From:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Sent:** Tuesday, September 8, 2020 10:23 AM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** RE: Incident

I was able to reserve 554 in the ACC – it's just down the hall from the Campus Life Center. I will go down a little bit before 1 to have the door open so I will meet you there! I'll try to go out in the hallway as well so you can see me!

Katie K.

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Tuesday, September 8, **2020 10:11 AM**
**To:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Subject:** RE: Incident

Hi Katie,

1:00 works for me and my mom. Should we meet in your office and walk to the conference room together?

Thanks,
Rachael

**From:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Sent:** Tuesday, September 8, **2020 10:01 AM**
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** RE: Incident

Hi Rachael,

I should be able to meet at 1pm today. Let me check to make sure a conference room is available today, I will get back to you soon to confirm!

LORAS 0701

I am also about to send a message to you and your roommates – your keys are ready so I'll be taking them down to Info shortly!

Katie K.

**From:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Sent:** Monday, September 7, 2020 10:07 PM
**To:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Subject:** RE: Incident

Hello Katie,

I would like to meet in person. My mom and I would like to talk about what happened and what else can be done to the apartment to make me and my roommates feel safer. She will only be in till tomorrow, so if we can meet that would be great. We can meet between 11:00-3:00.

Thank you,
Rachael Swift

**From:** Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>
**Sent:** Monday, September 7, 2020 8:58 AM
**To:** Rachael N. Swift <Rachael.Swift@loras.edu>
**Subject:** Incident

Hi Rachael,

I was just made aware of a situation in your apartment this weekend. Would you like to meet to discuss? I'm happy to talk with you about this. Would you like to meet in person or virtual? If you'd like to meet in person, just let me know and I will reserve a conference room so that we can maintain social distancing. If you are fine meeting virtual, do you have Microsoft Teams set up? Or would you prefer zoom? Let me know either way and I'll make arrangements for a meeting! I have most of the day free, only time I'm not available is 1:30-3pm this afternoon.

Katie K.

**Katie Keleher-Garfoot,** M.S.
Assistant Director of Residence Life
Loras College
563.588.7060
katie.keleher-garfoot@loras.edu
BE MORE. BE LORAS.

2

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Katie Keleher-Garfoot |
| **Sent:** | Tuesday, December 29, 2020 10:21 AM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | RE: Request for Information |

Sending a couple emails your way! When I was cleaning out my office to get ready to be gone, I tossed my notes from the conversation with her and her mom, sorry! 😔 I think I was eager to put that behind us... quick/sort of brief summary:

Met with them in 554 ACC at 1pm on Tuesday, Sept. 8. Rachael walked through the incident with me again, gave her the option and she chose to talk about it. Claimed the front door was locked. I apologized for it happening and we had already changed the locks with new keys at Info for her and roommates to pick up. We discussed window bars and door alarms, showed them what we've ordered in the past on Amazon. Explained I didn't have any on hand, but would order immediately, which I did right after our meeting concluded. They expressed wanting a deadbolt on the door, an email sent to BO and all of campus, and wanted to know why Loras didn't have blue lights on campus. I said I would ask about the deadbolt, explained that Loras has looked into the blue lights before but I would ask the reasoning for not having them and if it would be considered, and as far as the email, I explained we could possibly send out something encouraging students to lock doors, remind of safety precautions, etc. At that point, the mom interrupted me and said something along the lines of "Loras doesn't want people to know they allow predators on campus." I tried to explain that that wasn't the case, but as this was the first incident that had been reported to us we wanted to handle the situation in a way that would protect Rachael's and everyone else's privacy, and to be sensitive. The mom repeated her statement about Loras trying to "hide" that we allow predators. Rachael also claimed that this kind of thing has happened multiple times to other apartments and Loras hasn't done anything...I explained that I can follow-up with Campus Safety to be sure, but this type of incident had not been reported until now. I asked if she could provide any names or apartments this happened to and she didn't want to share anything. We concluded the meeting. Rachael had already picked up her bedroom key, but informed me that she had actually switched rooms and needed a different bedroom recored (I think it was we recored C because that's where she was originally, but she needed D because she moved there...or vice versa). I said I can take the wrong key back and see if I can get the new one recored today – Rachael gave me both bedroom keys, and then the mom asked Rachael if she wanted to keep her current key so she can keep her room locked until it's changed...Rachael said she didn't because the room was unlocked anyway...

**From:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Sent:** Tuesday, December 22, 2020 3:53 PM
**To:** Jim Collins <Jim.Collins@loras.edu>; Katie Keleher-Garfoot <Katie.Keleher-Garfoot@loras.edu>; Matthew E. Saylor <Matthew.Saylor@loras.edu>; Matthew D. Pucci <Matthew.Pucci@loras.edu>; Nancy Z. Fett <Nancy.Fett@loras.edu>; Donna N. Heald <Donna.Heald@loras.edu>
**Cc:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** Request for Information

Hello Everyone,

I'm reaching out today to see if you could please provide us with any emails, messages, or summaries of conversations you have had with student Rachael Swift and/or her family, or regarding requests from Rachael Swift and/or her family from September 6, 2020, until the present at your earliest convenience. If there are other individuals you are aware also spoke with Rachael Swift and/or her family, if you could please share their names, it would be appreciated. Please let me know if you have any questions.

Thank you,

LORAS 0703

Molly

T T

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

# Byrne Oaks Apartments

**First Floor**

North ↑

| | | | |
|---|---|---|---|
| | Deck | | Front |

**108 A** Double — Living Room — **108 C** Single

Bathroom — Bathroom

Dining Room — **108 D** Single

**108 B** Double — Kitchen

Deck

Entry

Hall Office

Maintenance Custodial

Lounge — Bathroom

**104** RA Apt.

Print Room

Laundry

Main-tenance

Stairs

Deck

**102 A** Double — Living Room — **102 C** Single

Bathroom — Bathroom

Dining Room — **102 D** Single

**102 B** Double — Kitchen

Entry

Stairs

Stairs

---

Entry

Kitchen

**105 D** Single — Dining Room — **105 B** Double

X *Jade Casper*

Bathroom — Bathroom

Living Room

**105 C** Single — **105 A** Double

Deck

Entry

Kitchen

**103 D** Single — Dining Room — **103 B** Double

X ADA *Kyle Hall*

Bathroom — Bathroom

Living Room

**103 C** Single — **103 A** Double

Deck

Entry

Kitchen

**101 D** Single — Dining Room — **101 B** Double

X *Rachael Swift*

Bathroom — Bathroom

Living Room

**101 C** Single — **101 A** Double

Deck

Stairs

LORAS 0705



Byrne Oaks Apartments — Third Floor

North ↑

LORAS 0706



**September 6, 2020**

- Report 00145-2020 Reported on Sunday, September 6, 2020, 5:24 a.m. by Robert Rosenow, Campus Safety. Incident date September 6, 2020, approximately 4:25 a.m. Complainant Rachael Swift:

*I, Officer Rosenow, was giving Sara from the information desk a break when a telephone call came in at 4:25 a.m. Sunday, September 6, 2020, female saying that there was an intruder in her apartment – 101 Byrne Oaks. Rachael Swift informed me that she heard a noise, woke up, and saw a person in her bedroom doorway. She shared that she screamed and person took off out the front door. I told her I would check the other bedrooms, and I also checked the hallways and stairwells and did not see anyone.*

*When I took Rachael's statement, she said that her other three roommates were out of town and she was staying alone on Saturday. She said that after she called, she noticed that she must not have locked the front door of the 101 apartment. I asked her if she wanted to stay at a friend's place, and she said she would be ok. I told her to always make sure that the doors are locked. She was unable to give a description because it was too dark. I informed her that if she would ever be staying alone to let information know so security could make a few extra rounds in the building.*

Colleagues were alerted to the concerns on subsequent shifts, and asked to maintain extra rounds in the area until further notice.

- On September 6, 2020, at 8:38 p.m., Molly Burrows Schumacher contacted Art Sunleaf with the following information:

*Just a heads up – not sure if you saw the report about Rachael Swift and waking to someone in her doorway (front door was unlocked). Pucci called – she went home, mom bringing her back tomorrow, wants to talk to someone in person about it. I told him to send it to Katie, and they could discuss safety strategies and how we can help. We'll go from there but wanted to keep you in the loop.*

- Molly Burrows Schumacher and Art Sunleaf received an email on September 6, 2020, at 8:46 p.m. from Elaine Kostopoulos indicating the following:

*Good Evening,*

*I believe Matt Pucci may have reached out to you today regarding my request for a meeting tomorrow, Monday the 7th. We were informed to speak with Katie as you would not be on campus. I understand tomorrow is Labor Day, yet we will be driving to campus from Chicago to help get some things resolved and ensure Rachael is safe. What happened to Rachael is unacceptable and it is critical that we speak tomorrow either in person or on the phone. This needs to be a priority. Unfortunately, as a result of the situation, Rachael nor myself can look at tomorrow as a holiday and we would appreciate a few minutes of your time. Early afternoon would be ideal, yet we can make ourselves available any time during the day. I look forward to your response.*

Burrows Schumacher replied to the email at 10:56 p.m. on that date indicating the following:

*Thank you so much for reaching out. I completely understand your concern for Rachael, and the desire to create a safety plan moving forward. We too want Rachael to feel safe on campus in her apartment.*

*While I wish I could speak to you in person tomorrow, I am restricted to remote work at this time due to a hospitalization in July. Coach Pucci indicated you were really hoping to meet with someone in person while on campus, so for this reason, I suggested Katie Keleher-Garfoot to Coach Pucci as a great resource. Katie has helped students in various housing options by discussing safety concerns, ordering things like additional door alarms, window alarms, etc. to help students feel safe in their specific situation.*

**LORAS 0707**



*While I'm unable to meet in person, I am happy to talk via phone tomorrow if that would be helpful? I'm free at 1:00 p.m. if that works with your schedule. If you could let me know the best number to call, I would appreciate it.*

*If you would prefer to meet in person with Dean Sunleaf, I understand that as well. Please know I did also make Katie aware that Rachael may be interested in additional safety resources for the apartment and asked her to secure these items for Rachael if she is interested.*

Sunleaf also replied to this message on September 7, 2020, at 6:35 a.m. indicating:

*Thank you for contacting us regarding the recent incident in Byrne Oaks. I was made aware of it over the weekend, and appreciate your concerns. Due to the adjusted academic calendar, the college is not observing Labor Day. Classes are being held and offices are open. It is my understanding Molly Burrows Schumacher, Assistant Dean of Students, has made herself available. Additionally, I too will be in my office.*

## September 7, 2020

- On September 7, 2020, at 10:17 a.m., Elaine Kostopoulos responded to Molly Burrows Schumacher's 9/6/2020 email indicating:

  *Thank you for your response. We are on our way back to campus and are planning on meeting with Art Sunleaf at 1:30 p.m. It would be great if we could have you involved via phone for the meeting.*

  Burrows Schumacher replied back at 11:20 a.m. indicating that she had a student health meeting at 1:30 so would not be able to dial in for the meeting, but would follow up with Art Sunleaf to provide information on how we can best help Rachael at this time.

- On Monday, September 7, 2020, at 8:58 a.m., Katie Keleher-Garfoot emailed the following to Rachael Swift:

  *I was just made aware of a situation in your apartment this weekend. Would you like to meet to discuss? I'm happy to talk with you about this. Would you like to meet in person or virtual? If you'd like to meet in person, just let me know and I will reserve a conference room so we can maintain social distancing. If you are fine meeting virtual, do you have Microsoft teams set up? Or would you prefer Zoom? Let me know either way and I'll make arrangements for a meeting! I have most of the day free, only time I am not available is 1:30 – 3:00 p.m. this afternoon.*

  Swift replied at 10:07 p.m. indicating:

  *I would like to meet in person. My Mom and I would like to talk about what happened and what else can be done to the apartment to make me and my roommates feel safer. She will only be in till tomorrow, so if we can meet that would be great. We can meet between 11:00 – 3:00.*

- On Monday, September 7, 2020, at 1:30 p.m., Art Sunleaf met with Rachael Swift and her family to discuss their concerns.

- Molly Burrows Schumacher contacted John McDermott, Physical Plant, on September 7, 2020, via email at 2:51 as a follow up to a phone request to change locks at the Byrne Oaks apartment following Art Sunleaf's meeting with Rachael Swift and her mother:

  *I have an asap work order per our conversation today –*

  *101 Byrne Oaks needs main (7 keys), and bedroom D doors (2 keys) recored, preferably by Tuesday if possible. Student woke to someone in the apartment. Art agreed we would change locks and keys asap.*

  McDermott responded at 3:03 p.m. with "Got it."

- Molly Burrows Schumacher reached out to Rachael Swift on September 7, 2020, via email at 3:08 p.m. at the request of Art Sunleaf indicating:

LORAS 0708



*Dean Sunleaf asked me to follow up and let you know that Maintenance will be changing your door locks and issuing new keys first thing in the morning – they have set the process in motion today, and it will be completed tomorrow morning.*

*Since the incident, Campus Safety has increased rounds on the interior and exterior of the facility as well as the surrounding grounds. RAs in the area will do the same. Campus Safety has also ordered and are reviewing fob logs from the time of the incident so that we can connect with any other students who may have been out and about in the building and may have seen or heard something.*

*Katie Keleher-Garfoot will also be reaching out to you asking how she can help. While the college provides secure locks for all apartments, we know all residents have different preferences. Katie can share information about additional alarms and devices that you might be interested in for your apartment. Not all students are interested in these devices, but we are happy to assist you (and your roommates) if you might be. Please let us know if we can be of further help.*

Swift replied to this email at 8:34 p.m. She indicated:

*Yes, my roommates and I are interested in the additional safety devices. We all wish we knew about the available options earlier. Why aren't students made aware of this? Will an email be going out to Byrne Oaks informing students of an occurrence and if anyone else experienced or saw anything unusual? It has been mentioned that the intruder attempted to enter another unit before he entered mine. I will let my roommates know about the new locks.*

It was noted that throughout the process, Swift and her mother mentioned other attempted or actual break ins of concern, but when pressed could not provide any additional names we could talk with or details about these other incidents or where they received their information.

- September 7, 2020, Academic Dean Donna Heald reached out to Rachael via email at 4:00 p.m. indicating:

*Dr. Sunleaf notified me that you have a concern with some of your classes. Would you be willing to share those concerns with me? If you prefer to talk, perhaps we can set up a phone conversation.*

Swift replied at 8:25 p.m. requesting a meeting with her, her mother, and Heald present the following day in person, and asked what times Heald was available. Swift then emailed Heald at 8:36 p.m., proposing times to meet. Heald responded to that email at 8:43 p.m. indicating available meeting times. Swift responded at 9:37 p.m. asking Heald to meet first thing in the morning. At 9:39 p.m. Heald responded to Swift asking to meet at 8:15 a.m. Swift replied at 9:45 p.m. indicating she and her mother would come to Heald's office. Heald responded at 10:31 p.m. indicating the meeting would take place in a nearby conference room.

**September 8, 2020**

- Donna Heald met with Rachael Swift in her mother in Keane Hall at 8:15 a.m. on September 8, 2020

- Katie Keleher-Garfoot responded to Rachael Swift's 9/7/20 10:27 p.m. email on September 8, 2020, at 10:01 a.m. indicating she could meet with Swift and her mother at 1:00 p.m. Swift replied indicating that 1:00 p.m. worked for her and her mother, and the group arranged to meet in 554 of the Alumni Campus Center.

Keleher-Garfoot provided the following summary of the meeting:

*Met with them in 554 ACC at 1 p.m., on Tuesday, September 8. Rachael walked through the incident with me again, gave her the option and she chose to talk about it. Claimed the front door was locked. I apologized for it happening and noted that we had already changed the locks with new keys at info for her and her roommates to pick up. We discussed window bars and door alarms, showed them what we've ordered in the past on Amazon. Explained I did not have any on hand, but would order immediately, which I did right after our meeting concluded. They expressed wanting a deadbolt on the door, an email sent to all of Byrne Oaks, and wanted to know why Loras didn't have blue lights on campus. I said I would ask about the deadbolt, explained that the college had looked into blue lights and*

**LORAS 0709**



*would ask the reasoning for not having them and if it would be considered, and as far as the email, I explained we could possible sent something out along the lines of encouraging students to lock doors, remind of safety precautions, etc. At that point, the mom interrupted me and said something along the lines of "Loras doesn't want people to know they allow predators on campus." I tried to explain that this wasn't the case, but as this was the first incident that had been reported to us we wanted to handle the situation in a way that would protect Rachael's and everyone else's privacy, and to be sensitive. The mom repeated her statement about Loras trying to "hide" that we allow predators. Rachael also claimed that this kind of thing has happened multiple times to other apartments and that Loras hasn't done anything...I explained that I can follow up with Campus Safety to be sure, but this type of incident had not been reported until now. I asked if she could provide names or apartments this happened to, and she did not want to share anything. We concluded the meeting. Rachael had already picked up a bedroom key, but informed me that she had switched rooms, and needed a different key (we recored C as that is where she was originally, but she needed D because she moved there). I said I can take the wrong key back and see if I can get the new one recored today – Rachael gave me both bedroom key, and then mom asked Rachael if she wanted to keep her current key so she can keep her room locked until it is changed...Rachael said she didn't because the room was unlocked anyway.*

- A follow up email was sent to Campus Safety on September 8, 2020, at 5:36 p.m. indicating to make extra rounds in the following areas. The email notes that a female student reports an intruder in her apartment on 9/6/20, and asks staff to complete extra rounds on the floor and around the perimeter of the building. This continued throughout the semester.

- Fob access records show only one individual fobbing in around the time of the incident in Swift's room. On September 9, 2020, at 5:13 p.m., Molly Burrows Schumacher reached out to that individual, Kyle Hall, and shared the following:

*I work with Campus Safety and I'm reaching out today because I am investigating a report from this past weekend. A female student reported that on 9/6, around 4:20 a.m., and individual entered her apartment on the first floor of Byrne Oaks and approached her door, room D.*

*I'm reaching out today because our fob access system indicated that you had entered the first floor of Byrne Oaks around 4:03 a.m. on this date, and I am wondering if you may have seen anyone on the floor around that time or anything of concern? If you noticed anything, we would appreciate any information you might be able to share to help us learn more about what happened. We know that from time to time, especially at the beginning of the year, people sometimes get turned around in the building and attempt to enter a door that is not their own – so we're hoping that's what we find by searching further with those who may have been in the area at the time.*

Hall replied at 9:18 p.m. with the following:

*When I walked in at that time, I did not see anything suspicious. There was nobody else in the hallways at that time. I went straight to my room, and did not see anything that would be of concern on my way there. Sorry I can't help you out more.*

Burrows Schumacher applied to Hall at 11:11 p.m. indicating that she appreciated his reply, and that it was helpful to know he did not see anything.

- Molly Burrows Schumacher sent an email to Art Sunleaf at 5:30 p.m. indicating that locks were not changed immediately in the morning at Swift's apartment as indicated by maintenance they would be. Instead this did not occur until the afternoon. Burrows Schumacher also indicated to Sunleaf that they were engaging Kyle Hall who had accessed Byrne Oaks just 10-15 minutes prior to Swift finding an intruder in her doorway to see if he could provide any helpful information. Hall resides at 103 Byrne Oaks, and the fob report indicated he entered via the main entrance. Housing records noted hall has decreased eyesight due to visual development.

**September 9, 2020**

- On September 9, 2020, at 10:36 a.m., Hall again replied to Burrows Schumacher indicating the following:

**LORAS 0710**



*That would've been the only place where I would've saw something, but like I said, nobody was in the hallways at that time when I got back. I don't know about upstairs because there was no need for me to go up there since my room is on the first floor.*

Burrows Schumacher noted that she was surprised by Hall's second response, and felt it seemed slightly defensive.

**September 10, 2020**

- Donna Heald sent an email to Rachael Swift at 8:00 a.m. on Thursday, September 10, 2020, indicating that she (Heald) had spoken with Dr. Salyer and shared with him her (Rachael's) concerns about instruction in EDU336 and EDU340. Her email indicates:

  *He is going to follow up with both instructors while not revealing your name to either. Please feel free to reach out to Dr. Salyer directly regarding your concerns or if you have any additional information. It is possible Dr. Salyer will ask to speak with you about this on Friday when he sees you in class. Rest assured, I told him you did not have any concerns with his class. Please do let me know if you have continuing concerns.*

**September 11, 2020**

- Katie Keleher-Garfoot reached out at 9:28 a.m. via email to discuss the possibility of the deadbolt lock installation with John McDermott, Physical Plant. Mc Dermott replied at 9:32 a.m. indicating that it was not possible to install the deadbolt lock on the apartment.

**September 14, 2020**

- Report 00154-2020 Reported on September 14, 2020, 12:48 a.m. by Rachael Swift. Incident date September 6, 2020, approximately 4:00 a.m. Complainant Rachael Swift. Lists involved parties as Dean Waterbury (believed to be Dean Sunleaf), President Collins, Assistant Dean of Residence Life Katie (believed to be Katie Keleher-Garfoot), and unknown male intruder

  *On September 6, 2020, an unknown male broke into my campus apartment. I reported the incident to campus police, Dubuque PD, Residence Advisors, Dean of Students, Assistant Dean of Residence Life, and Loras President. I have requested that Loras provide additional safety measures including by not limited to a deadbolt lock, yet Loras has done nothing to protect my safety. Additionally I have asked for information about the investigation into who broke into my apartment, but have received limited updates. I believe Loras is discriminating against me because I am a female student that has been subjected to a sexual assault.*

**September 15, 2020**

- Molly Burrows Schumacher was made aware that a requested deadbolt for the door of 101 Byrne Oaks had been denied. On this date, Burrows Schumacher reached out to John McDermott, Physical Plant, at 3:52 p.m. via email and requested installing a deadbolt on 101 Byrne Oaks.

- On Tuesday, September 15, 2020, at 7:09 p.m., Nancy Fett responded via email to a phone call on her office phone from Rachael Swift. Fett's email indicated:

  *Thank you for your phone call. I have not been in my office all week and am not sure when you left your message. Thank you for having the courage to advocate for yourself on this personal matter. I only wish more women did. You will likely be contacted by one of two people: Matt Saylor in Security or Molly Burrows Schumacher in Student Life. They will conduct an investigation, ask for your side of the story, if there are witnesses, etc. They will also contact the alleged perpetrator to discuss the matter.*

  *My role is to assure the process is followed, monitor the report, ask questions, and suggest alternative approaches/questions/theories and assure the matter is handled professionally, according to our policy, and with utter fairness.*

**LORAS 0711**



*If you feel like you are not being heard, please contact me. It is important to me (and the College) that anyone who comes forward is supported and listened to. Let me know if you have any questions NZF*

The email then contained links to relevant sections of the Student Handbook.

- Katie Keleher-Garfoot was in communication with Rachael Swift via email at 12:08 p.m. indicating:

*I just got the bars for windows and door alarms in the mail this morning. So those are ready – would you like me to leave them at the information desk for you or would you like assistance putting them up? I can ask one of your CAs to bring them by if you would like assistance, just let me know. Just one for the front door or one for any of the bedrooms as well?*

*You had asked about a deadbolt on the front door. I was told it would not be possible by the physical plant. If you have more questions, I have cc'd John McDermott on this message – he may be able to answer any additional questions you have about that.*

*For requesting a copy of the report, you can request it via email – so you can reply to this message with the request and we can provide the copy.*

*I also have an answer to your question about the blue lights. Student Union looked into blue lights as an option on campus, and has done so periodically over the past few years. From what I understand, survey responses were college from our students, and most students indicated that their first choice for call would be their cell phone. There were also challenges at other schools that have them with false reporting, and the last time this was researched, there were institutions removing the posts from their campuses. However, we can definitely bring the idea forward again to the college for review at your request? It will take about a week to gather pricing information for available options, but we can create a proposal for consideration. Are there any specific places you were hoping to see blue lights? We have a layout we have used in past considerations, but if there other areas from the student perspective to consider, that would be helpful.*

*Please let me know how many of the door alarms you would like and if you would like assistance putting in the bars and alarms up, and we'll make arrangements from there. Thank you!*

- At 12:25 p.m. on September 15, 2020, Molly Burrows Schumacher notified Art Sunleaf that she was working to finalize the move of the Hoffmann Hall surveillance camera to the Byrne oaks entrance (also spanning an area immediately outside the entrance) to help with concerns. She also mentioned that the Swift family had requested blue light cams, and that we could submit a proposal with any feedback provided from the family.

- On September 15, 2020, at 9:32 p.m., Molly Burrows Schumacher sent Rachael Swift the following email:

*Your recent report was routed to me today for review. I apologize if you felt you did not receive a response to your requests. If you could let me know who you reached out to, I will follow up to see what additional information is available, but wanted to provide what updates I am aware of at this time.*

*Since the incident, Campus Safety has increased rounds on the interior and exterior of the facility as well as the surrounding grounds. Part of those rounds includes checking common areas and corridors for those who do not live in the building, un-propping propped doors if they are propped, and monitoring the areas behind the building as well. While helpful in the pursuit of campus safety, this increased surveillance has not provided any additional information regarding your case.*

*We have been able to contact those who fobbed into the building shortly before the incident occurred – including a student who lived in an apartment near yours, who fobbed in around the time the incident occurred. He indicated he did not see anything unusual or encounter any other students while moving from the entrance to his apartment. Our other fob accesses (based on access time) are less likely to have information, but we will be following these leads as well. I noticed in your report you contacted the Dubuque police about what occurred – did they offer you a case number you are willing to share with the college? While we provide campus safety officers on campus, we are not a police force – so when there is a corresponding police report, we like to contact the local*

**LORAS 0712**



*officer connected with the case to provide what information we do have since local PD has additional avenues they can explore as sworn law enforcement officers.*

*I am aware you requested a deadbolt be added to your door at Byrne Oaks, and I saw today that the Physical Plant indicated they would not be able to honor that request. Please know that we are resubmitting the request. I can't promise it will change the answer, but we are advocating to do what will make you feel most comfortable in your space. I'm also aware you/your family has requested blue light poles on campus. I am gathering current pricing for these poles to see what options might be available, and will submit that information for review. If you would like to provide a letter of support about this request, or have a specific idea in mind of where you would like to see a blue light that will best benefit students, please let me know and I will include this information in the request.*

*Additionally, I have submitted a request to have a surveillance camera installed at the access point at Byrne Oaks. The camera would be motion activated and would record when movement is in the vicinity, allowing us to further track who is entering and exiting the building. IT is currently checking to see if we have the capability of supporting a camera in this area. We will keep you posted on these projects as additional information becomes available. While this is not an exhaustive list of what is occurring, I want to assure you that the college is taking your concerns seriously.*

*In your report, you also mentioned that you have been subjected to a sexual assault. I am so very sorry to hear this, and want to provide any support I can to be of help to you. Your story is yours to share in your own time as you are comfortable, but if there are supports you need on campus, or if you would like to discuss the process on or off campus for filing a report of sexual assault, I'm willing to assist in any way I can that meets your needs. There is a campus resource packet I can share with you that might be helpful in explaining local resources, accommodations, and how cases move forward on and off campus. If you are interested in this resource, please let me know and I will send it to you via email.*

*Please let me know if you have any additional questions.*

**September 16, 2020**

- Swift notes in a 9/17/20 email communication with Nancy Fett that she moved from her Byrne Oaks Apartment to a hotel this afternoon.

- Molly Burrows Schumacher reached out to Rachael Swift via email at 6:40 p.m. at the request of Nancy Fett:

*Nancy Zachar Fett, the College's Title IX coordinator, was in contact with me today and asked that I reach out to you to see if you would like to talk with/meet with a Title IX investigator on campus to discuss a recently filed report. Right now, the college has three trained Title IX investigators for student cases and they are myself, Matthew Saylor (Campus Safety), and Katie Keleher-Garfoot (Residence Life). Matt and Katie would both be able to meet in person with you to discuss the process; I am available by Zoom only at this time for medical reasons but am happy to assist in any way I can. I'm not sure if you have a preference, but if I can assist with setting up an appointment with any of these investigators, please do let me know. I'm attaching a resource that provides additional information about college policy, the processes available on or off campus, and local resources that might be helpful for you at this time. Please let me know if you have any questions or if I can be of service at this time or provide any support at this time.*

**September 17, 2020**

- John McDermott replied at 7:30 a.m. on September 17, 2020, indicating that he forwarded the deadbolt request to Dan Walling, Locksmith Express, for pricing, noting the doors do carry a fire rating and he wasn't sure the deadbolt would impact that rating. Walling replied at 8:14 a.m. that he would work on the request.

- On Thursday, September 17, 2020, at 2:47 p.m., Rachael Swift emailed Molly Burrows Schumacher indicating:

**LORAS 0713**



*I have received your emails. I wanted to keep you in the loop. I'm trying to set up an in-person meeting with Nancy Fett for some time tomorrow. Thank you for finally reaching out and updating me.*

Burrows Schumacher replied at 3:16 p.m. on September 17, indicating:

*I'm glad to see your reply, and I'm glad to hear you are connecting with Nancy. Please know I'm here if you need anything. I can share the following updates today –*

*Technology has indicated we should be able to install a camera at Byrne Oaks, and are in the process of testing the unit now. I'm still waiting for price estimate back on blue lights, but will keep you posted. And maintenance has contacted a locksmith to see the best way to install a deadbolt on the apartment at Byrne Oaks. I'm not sure I fully understand the challenges, but it has something to do with installing the lock in a way that maintains the required fire rating on the door. The locksmith indicated he would be in touch soon with an update. I'll share more when we know more. Thanks –*

- Rachael Swift responded to Nancy Fett's 9/15/20 email on September 17, 2020, at 2:43 p.m., apologizing for the late response. Rachael shared:

*I have been off campus since yesterday and then had to move to a hotel yesterday afternoon. Can we meet tomorrow in person to talk about the details in regard to my Title IX Claim.*

Fett responded at 3:00 p.m. indicating that she could meet on Monday.

- Swift responded to Keleher-Garfoot's 9/15/20 email on September 17, 2020, at 2:38 p.m. She wrote:

*I have been home since Friday. I came back Wednesday to finish the week in soccer. I'm staying in a hotel because I didn't feel comfortable at the apartment. The other 5 girls in the apartment are also scared and sleep in the same room some nights. I will be returning home for the unforeseen future because I couldn't and didn't feel safe in the apartment without the safety measures that were asked for. I'm not on campus and would prefer if some can and installed the door alarms and window blockers in the apartment. We need 2 door alarms and 9 window blockers.*

Keleher–Garfoot reports that RA Kiki Cabrera took the door alarms and window blockers to the apartment. Per Keleher-Garfoot, Cabrera indicated that all of the women in the apartment were **"fine"** when talking to her. Keleher notes that Swift has not yet returned keys.

**September 20, 2020**

- Fett shared with Molly Burrows Schumacher that as of 10:45 a.m. on September 20, 2020, she had not received a reply to her September 17, 2020, email to Rachael Swift.

**September 24, 2020**

- Rachael Swift replied to Nancy Fett's 9/17/20, 3:00 p.m. email on September 24, 2020, at 11:25 a.m. She indicates:

*Sorry for the late response. I have moved home indefinitely. I've been trying to adjust to being home and balancing school work. Can we still talk over the phone? I would really like to talk about how the whole situation was handle and why I files the claim. What times work best for you? Once again, sorry for the late response.*

**September 29, 2020**

- Nancy Fett responded to Swift's reply on 9/24/20 about a time to meet on September 29, 2020, at 7:08 a.m. offering several times to meet. Per Fett, she did not ultimately meet with Swift as she did not reply to her message.

**December 5, 2020**

- A group of students at Byrne Oaks had installed a camera in their kitchen at the entrance to their apartment because they thought perhaps one of the roommates was taking another's food. The camera captured student Kyle Hall entering their apartment, proceeding into the kitchen, realizing he was on camera, and then exiting the apartment. Police were called and Hall was located. Hall did indicate (per College officer on the scene Mark Sutter) that he

**LORAS 0714**



had entered at least another apartment at Byrne oaks but indicated that these issues were on accident. He noted that he had lived in the building for several years in different apartments and was confused. It should be noted that at this time Hall lived on the 1st floor.

**December 7, 2020**

- Molly Burrows Schumacher added Kyle Hall as a possible suspect for the case involving Rachael Swift's apartment break in based on his involvement in another incident in Byrne Oaks.

**December 8, 2020**

- After consultation with Art Sunleaf, Molly Burrows Schumacher notified Rachael Swift via email that a suspect had been identified in her case. No name was shared in this communication due to FERPA. She wrote on December 8, 2020, at 11:13 a.m.:

  *I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the suspect (a Loras student) admitted to entering at least 2 apartments over the course of the semester. This individual has been removed from campus and is not permitted to return. The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case. Additionally your information will be included in our on campus investigation process so that the individual can be held accountable both on and off campus.*

  *We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident in your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew Saylor or myself to be included in the college's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.*

  *Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions. I've contacted you directly as the filed reports name you as the reporting student. If you would like me to also notify the women you were living with in apartment 101 at the time of the incident, please do let me know and I will do so.*

**December 9, 2020**

- Rachael Swift contacted Nancy Fett via email on December 9, 2020 at 7:40 p.m. indicating:

  *This is Rachael Swift. I wanted to amend my Title IX claim. I want to add Kyle Hall as part of the claim.*

  Fett contacted Molly Burrows Schumacher on December 9, 2020, at 7:55 p.m. indicating she was not familiar with Swift's case – that they had tried to talk several times and Swift never followed through.

**December 17, 2020**

- On December 17, 2020, at 1:59 p.m., Matt Saylor shared with Molly Burrows Schumacher and Art Sunleaf via email that he had received a call from Dubuque Police, and they stated that the TH contacted them about the incident from Byrne Oaks. What he stated made it sound like this was started by Rachael Swift. PD shared that we were working together on the incident and Saylor provided an update at that time for PD. PD believes that the TH may try contacting us about the incident as well, and wanted to make sure we were aware.

  Sunleaf notified Marketing department members Bobbi Earles and Robert Waterbury, ccing Jim Collins in an email on December 17 at 2:09 p.m. indicating that should the TH contact us, due to FERPA, we are unable to comment other than we are aware of the incident and working with local law enforcement.

- On December 17, 2020, at 3:08 p.m., Nancy Fett received an email from Bradley Levison, attorney for Rachael Swift, with Swift cc'd on the message indicating the following:

**LORAS 0715**



*Per my message, I represent Rachael Swift and I am following up on the status of the Title IX Complaint she filed in September 2020. As you know, the student (Kyle Hall) that broke into Rachael's apartment was caught and now that we know his identity, Rachael wanted to add the student to her complaint. I would appreciate an update on the status of Rachael's Title IX Complaint. Rachael is copied on this email. You may reach me at 312.819.6360.*

Fett reached out to Art Sunleaf and Molly Burrows Schumacher to discuss the response to Levison's email on Thursday, December 17, 2020, at 3:54 p.m. Sunleaf indicated that Rich Whitty should be involved in the process to assist with the reply.

- On December 17, 2020, at 3:23 p.m., Burrows Schumacher followed up on her 12/8/2020 email to Swift regarding speaking with an officer about her case. Burrows Schumacher indicated:

  *I've connected with Officer Brianna Marzette at the Dubuque Police Department. She has indicated that if you would like to speak with her about the investigation and/or your case, if you could provide the best way to contact you (email, phone and number, etc) she will contact you. If you'd like her to reach out to you, could you please provide the best way to do so at this time?*

- Art Sunleaf was made aware by Matt Pucci, Rachael Swift's soccer coach, [exact date unknown], that both Kyle and Rachael were a part of the education program. And even though Kyle was removed from and banned from campus, he apparently virtually assisted with a final exam that Rachael Swift was a part of and she was very angry and concerned that this happened. The College was not aware of this potential concern. Hall was noted to be done with his finals, and was removed and left campus. The College had not disclosed Hall's name to Swift yet in this process. We are not aware of the date the problem final occurred on. On December 16, it was mentioned to Burrows Schumacher by Rebecca Fabricius when discussing concerns with Hall's licensure that both Swift and Hall were education majors. Fabricius indicated they would not likely have crossed paths very often because they came in to the program at different times and Hall was finishing up an extra semester.

December 18, 2020



- On December 22, 2020, at 3:50 p.m., Molly Burrows Schumacher reached out to David Salyer and Rebecca Fabricius at the request of Art Sunleaf regarding the student teaching placement for Rachael Swift. Burrows Schumacher noted that if there was anything the College could do to help honor any student teaching placement request Swift had submitted, it would be helpful. Fabricius responded and said she understood the need based on conversations with Swift and that the process has been started.

January 4, 2021

- Molly Burrows Schumacher and Art Sunleaf were contacted by Rebecca Fabricius regarding Rachael Swift's student teaching placement for spring 2021. There was concern because while trying to finalize Rachael's placement near her home, it was noted that she was not currently enrolled in spring classes due to an outstanding matter with the Business Office. Sunleaf referred the matter to Donna Heald for resolution as it related to academic affairs.

January 5, 2021

- Molly Burrows Schumacher noticed that Rachael Swift had a housing assignment and meal plan assignment on file for Spring 2021 on campus, so contacted her via email at 11:55 a.m., to let Swift know she would be happy to cancel

**LORAS 0716**



those items (due to Swift's plan to student teach at home in the spring semester). Burrows Schumacher advised that these items could be re-added at any time should she choose to do so. Burrows Schumacher also noted that because Swift indicated she had spent most of the fall semester away from campus, she had removed the housing charges on her account for fall, and explained how to see those charges credited on the student account.

Swift replied at 12:10 p.m. that she would not be returning to campus for the spring semester, and indicated that Burrows Schumacher removing these charges would be one less thing she has to worry about.

Burrows Schumacher shared this update with Carrie Jones at 11:37 a.m. regarding the student account, and Art Sunleaf via email on 1/5/21 at 11:56 a.m.

LORAS 0717

## Campus Safety

The Department of Campus Safety is located in suite 530, on the fifth floor of the Alumni Campus Center, and at the 24 hour Information Desk, located on the fourth floor of the Alumni Campus Center. On campus, the department can be reached by phone at extension 7114 or 0. Off campus, the department can be reached by phone by calling 563.588.7114 or 563.588.7100. Individuals can file reports with the department online at: https://loras-edu.edu.symplicity.com/public_report

The department consists of 14 full-time, 2 part-time, and 6 call-in employees, and is staffed 24 hours per day, 365 days each year. Security officer training, on both an annual and on-going basis, occurs with regard to emergency medical situations (CPR, AED, and 1st Aid), fire prevention, evacuation plans, disaster recovery plans, crowd management, asset protection, risk management, student issues, mandatory reporting of child abuse and other student and employee safety matters.

The Department of Campus Safety provides several security programs including an on campus escort service, lost and found services, and in partnership with the Student Development Division, provides student education on fire safety, personal safety, alcohol and drug education, sexual assault awareness, and other relevant safety topics.

The Loras College campus falls into the jurisdiction of the Dubuque Police Department, the Dubuque County Sheriff's Department, and the Iowa Department of Public Safety. Loras College Campus Safety maintains a positive and open relationship with each of these agencies. The appropriate authorities assist the department in campus crime investigation. Campus Safety monitors and records, through local police crime data, off campus events sponsored by recognized student organizations. Because Loras College is a private institution, no member of the Department of Campus Safety possesses arrest authority. Loras College does, from time to time, contract police officers with full arrest authority to assist in activities and functions of the College.

Loras College is a private institution of higher education. At certain hours of the night, only authorized personnel are allowed in many areas of the college. Most buildings open to the public are closed and locked after regular business hours. Loras College uses a computerized fob access system in each of the residence halls. In an attempt to eliminate exterior doors from being propped open, electromagnetic locks are installed on all exterior doors of all residence halls as well as most other campus facilities. Once activated, these locks will not allow access to the building without the proper access fob. Entry must be made at a designated entrance with a fob reader. The electromagnetic locking system is operated in conjunction with the fire alarm system, so when an alarm is sounded, all of the locks in that particular building release allowing doors to be used as emergency exits. All lost fobs should be reported immediately to Campus Safety so they can be deactivated and replaced.

Within a residence hall, each room door may be locked. Each resident is advised to keep the room door locked at all hours of the day. Residents are held responsible for the conduct of their guests. At least one trained residence life staff member is on duty 24 hours per day. Depending on the rules of the specific floor, visitation by members of the opposite sex may be limited to certain hours of the day. Unauthorized individuals found within residence halls are subject to college discipline and/or arrest by local authorities.

Campus Safety routinely checks academic buildings which are closed during non-business hours to ensure they remain locked. Each building has a scheduled time to be secured and only authorized staff members are issued keys to secured buildings. Campus Safety monitors campus accesses 24 hours per day, 7 days per week. The frequency and intensity of monitoring increases during evening hours. Campus pathways are lighted throughout the night. Campus lighting is inspected daily. Maintenance crew members routinely replace lights, trim shrubbery, and remove snow, ice and debris from pathways and parking lots.

In this instance, as it relates to locks and accesses, the building (Byrne Oaks) is locked, and each student has an apartment main door that can be locked, and inside the apartment, each student has a bedroom door that can be locked. Dan Walling, Locksmith Express, is providing a written statement as to the specific lock on Swift's apartment, 101 Byrne Oaks. Walling noted no signs of forced entry on the main access door to Swift's apartment.

LORAS 0718



## Non-Academic Discipline

The college is committed to holding students who violate the code of conduct accountable for their behavior. When a student is identified as a suspect in a policy violation or crime, the college further investigates the incident and suspect by interviewing all involved parties or parties identified as those who might have additional information available. Once the college meets with involved parties, a summary of findings document is created. This document includes incident information, a summary of the interviews or statements of involved and impacted parties, a list of college policies that may have been violated and what a "reasonable" person might conclude reviewing available information. This summary is then forwarded to the college hearing board, who meets with all parties and determines what (if any) sanctions might be applied. An appeal process exists.

In this instance, the College opened an investigation on December 7, 2020. The suspect graduated from the college in December, so research was done on the ability to hold this student accountable following the completion of his academic program. The college was closed during a period of the investigation, so there was a period in December where the investigation was delayed. The College will hear all four suspected incidents in one hearing board session. At this time, pending no delays, the college hopes to complete the investigation by January 31, 2021, and complete the hearing process in early February 2021.

As we complete this process, it should be noted that all instances involving the suspect have included access through an unlocked door except the incident that occurred involving Rachael Swift in 101 Byrne Oaks. Swift initially indicated her door was unlocked when filing a report with Campus Safety; however, the following day shared that her door had been locked at the time of the incident. The door was evaluated by Locksmith Dan Walling from Locksmith Express who indicates the door is functioning correctly and has no signs of forced entry available. This would suggest perhaps either Swift's door may have been unlocked, or that this incident in Swift's apartment does not fit the pattern of behavior seen at other apartments.

The current Student Handbook (pages 30-32) outlines the following conduct process for serious incidents on campus:

Area Coordinators may serve as the initial hearing officers authorized to deal with incidents contrary to College or residence hall policy. Area Coordinators may dispense sanctions, impose disciplinary measures and recommend suspension/expulsion from the College. The Assistant Dean of Students may initially hear cases pertaining to violations of policy in Residence Life. Review of Area Coordinator sanctions will be heard by a representative from Student Life or Residence Life. Normally, policy infractions and incidents contrary to College policy are handled initially within the context in which they occur. Incidents that occur off campus may initially be heard by the Student Life Office.

College Hearing Board

In the event of an incident involving possible sanction of suspension or expulsion, the incident will be considered by the College Hearing Board. This board is chaired by the Associate Dean of Students or his/her designee and includes appointed representatives from the Loras College community: two students, two faculty members and two staff members. These appointed individuals, approved by the Dean of Students, are the voting members of the Hearing Board. The chairperson may vote in the event of a tie. A secretary will be appointed to take minutes of the proceedings; however, recording devices are not permitted during the hearing or any preparation meeting. In some instances, at the discretion of the Dean of Students or his/her designee, a formal administrative hearing may be held due to the nature of the complaint or infraction of College policy.

Due to the extensive documentation required to prepare a case for the college hearing board, respondents who are referred to the college hearing board will be charged a $50.00 administrative fee. This fee will be refunded in the event the respondent is found not responsible for any allegations.

Procedures

The respondent will be advised of the specific charges being brought against him/her in advance of the hearing. If the board proceedings involve a complainant other than the college, the complainant also has the right to a prehearing notification meeting. If the student does not appear at the established hearing time, the case shall be heard without the student being present. During the course of the hearing, the respondent will be allowed to respond to any alleged violations presented, ask

**LORAS 0719**



questions of the complainant and/or witnesses and present a summary of the case. Please note that per the United States Office of Civil Rights in hearings related to any type of sex discrimination, the complainant and the respondent are not to personally question or directly cross-examine each other during the hearing, as allowing so may be traumatic or intimidating for the complainant, thereby possibly escalating or perpetuating a hostile environment. After the hearing has been completed, the board (or administrator) will retire to closed session to determine if the respondent is responsible or not for the policy infraction.

If the student is found responsible, the board (or administrator) will determine an appropriate sanction and the date of its implementation. The decision of the board will be presented in writing to the respondent as soon as possible. Under applicable Clery Law and Title IX Law, in instances involving violent crime or any type of sexual misconduct, the complainant will also be notified in writing, and simultaneously, of the outcome of the hearing in the manner described as appropriate under these laws.

If the student is suspended or expelled, the date of implementation is the date of the board or administrator decision, and such date is non-negotiable. The decision of the College Hearing Board (or administrator) will be effective immediately unless a timely petition to review has been filed. Please note, in the event of a hearing for any type of sexual misconduct, Title IX Law requires the incident related to the sex discrimination be heard independent from any other code of conduct violation allegations.

Hearing Board Advocates

Both the respondent and complainants may have an advocate (faculty, staff or peer) present at the hearing or appear without the assistance of an advocate. In the event that the hearing board is held to address a Title IX violation that involves sexual misconduct, respondents and complainants may choose any individual, including legal counsel to serve in the advocate role; however, the advocate must act within the described role of the advocate as listed below. The identity of attending advocate must be submitted to the Associate Dean of Students or his/her designee 48 hours prior to the hearing. The advocate may: • Advise the student on the preparation and presentation of the case and/or; • Accompany the student to the hearing(s) The advocate may not: • Present the case or summary of the case for the student; • Directly question any individuals involved in the hearing process; • Directly address the college hearing board

Review of College Hearing Board Decisions

Review of a decision of the College Hearing Board may be petitioned by a respondent who has been suspended or expelled. Under Title IX law, in the instance of any type of sexual misconduct, a petition for review may also be filed by a complainant. The written petition for review must be written and prepared by the student, and filed in the Dean of Students' Office within three business days of notification of suspension or expulsion, and must also include reasons for the request and the factual information to substantiate those reasons. The request for review must be based on one of the following: • The student believes the College Hearing Board decision was flawed procedurally. • Loras College Student Handbook policy was not applied correctly. • New information not available at the time of the College Hearing Board meeting is now available, which could alter the outcome of the case.

The request for review will be considered by a Review Board, appointed by the Dean of Students and consist of one faculty member, one staff member and one student. If the Review Board determines there is valid basis for review, a review hearing will be scheduled. Following the review hearing, the Dean of Students or his/her designee shall recommend a course of action to be taken. The recommendation may include: • Affirm the decision of the College Hearing Board. • Remand the case to the College Hearing Board with instructions for a rehearing. • Modify the sanction(s) imposed by the College Hearing Board. • Reject the decision of the College Hearing Board and dismiss the complaint. • The decision of the Dean of Students or his/her designee is final.

Hearing Board Witness

Both the complainant and respondents may also have witnesses available to be brought in during the hearing. The Associate Dean of Students or his/her designee needs to be notified 48 hours in advance of the identity of any witnesses asked to attend the hearing. Both complainant and respondent may bring up to 4 incident witnesses. An incident witnesses is someone who is present with the questioned behavior occurred. Neither the complainant or respondent may bring character witnesses

LORAS 0720



to the hearing; however, both the complainant and the respondent may provide two letters of character to be submitted to the college hearing board as a part of the hearing process. Letters of character should be submitted in advance to the Associate Dean of Students and/or her designee.

Evidentiary Standards for Non-Academic Misconduct

In all cases of alleged non-academic misconduct, the appropriate hearing officer will be responsible for compiling sufficient evidence to substantiate the charges. The evidence must support a determination that it is "more likely than not" that a violation of the student code of conduct occurred in all cases involving a potential penalty lesser than expulsion. In cases where expulsion has been determined to be a possible sanction, "clear and convincing evidence" must provide the basis for such expulsion. Please note that in cases involving any type of sexual misconduct, the standard of evidence required by Title IX is preponderance of evidence, or a determination that it is "more likely than not" a violation has occurred. Hearsay evidence and personal testimony may be considered.

Requests for Accommodations

In all cases of alleged non-academic misconduct, requests for accommodations should be made to the Associate Dean of Students or his/her designee.

## Title IX

The College believes it is essential that all voices feel heard in our processes and procedures, and that we work with campus community members with understanding and support as we navigate challenges we encounter – including matters related to Title IX.

In this instance, the complainant counsel suggests the college handled the student complaint differently or with less urgency because she was a female. The College treats all cases in the same manner regardless of the gender identity of the complainant.

Per the college's process, a campus safety officer was dispatched to assist with filing a report at the time of the incident. Exteriors and grounds as well as apartment interior was checked at the time of the incident. Officer indicated to student we would complete extra rounds in the area at that time. The student's family contacted the college requesting an in person meeting the following day. Molly Burrows Schumacher was unable to participate in an in-person meeting due to her covid risk status; however, Art Sunleaf cleared his schedule to meet with the student and her family. Katie Keleher-Garfoot, Assistant Director of Residence Life, also offered to meet with Swift that same day. Molly Burrows Schumacher followed up on behalf of Sunleaf later that same day outlining the status of the requests made of Sunleaf regarding the changing of locks, additional rounds, review of fob logs, and the option for the college to fund additional safety devices for her comfort in the apartment. By the end of the day September 7, Swift had also been in communication with Donna Heald regarding an academic concern. From the College's lens appropriate urgency and efforts to support and assist the student occurred.

Swift met with Katie Keleher-Garfoot the following day, and on September 8, 2020, Campus Safety reached out to someone who had entered the building around the time of the incident and lived nearby on Swift's floor to see if he may have noticed anything suspicious or unusual. Locks were also changed on September 8. On this date, there was some confusion regarding re-coring the bedroom key. The college had recored the lock on the apartment main door and apartment bedroom door Swift was assigned to; however Swift had moved into a bedroom that she was not assigned to, so did not have the correct bedroom key. Per Katie Keleher Garfoot, she offered to take the new and incorrect key back from Rachael and allow her to keep the incorrect key so that she had a way to lock the bedroom she was located in. Swift gave Keleher-Garfoot both bedroom keys, and Swift's mother asked her if she would like to keep the current key until the lock is changed. Swift indicated she didn't need to – the room was unlocked anyways (this was unexpected given the level of safety concern expressed by the student/family). Additional door alarms and window bars were ordered for installation at Swift's apartment at her request.

The college remained in contact with Swift about her academic matters (9/10/20), the decline of the deadbolt lock from the physical plant (9/11/20 – based on the fact that the Byrne Oaks apartment have a built in deadbolt component per McDermott). On September 14, 2020, Swift filed a report (Advocate Case 00154-2020) indicating that none of the additional safety measures requested have occurred, and nothing has been done to protect her safety. Additionally, Swift

LORAS 0721

APP 238



indicated that she had asked about the investigation into who broke into her apartment but had received limited updates. Swift alleged that she felt Loras was discriminating against her because she was female and subject to a sexual assault. At the time of Swift's report, the college had:

- In person meetings occurred with Art Sunleaf, Katie Keleher-Garfoot, Donna Heald
- Had maintenance staff check all access doors to Byrne Oaks to ensure all access points were functioning property
- Apartment locks and bedroom locks were changed at Swift's apartment
- An investigation was opened, Campus Safety reviewed access logs and began to search for leads related to the incident. At the time of Swift's initial report, she indicated it was too dark to see any additional physical description of the alleged perpetrator beyond male – which made searching for a suspect quite difficult.
- Campus Safety interviewed possible lead – a student entering the floor around the time the incident occurred
- Additional requested door and window alarms were ordered for the apartment by Katie Keleher-Garfoot
- Campus Safety increased presence around the building. RAs were notified to be alert for potential concerns in the building.

The day following Swift's report (9/15/20), Nancy Fett, Title IX Coordinator, responded to a phone call from Rachael Swift via email, indicating that Matt Saylor or Molly Burrows Schumacher would reach out to help investigate her assault report, and that her role as Title IX Coordinator is to assure the process is followed, monitor the report, ask questions, and suggest alternative approaches/questions/theories and assure te matter is handled professionally, according to our policy, and with utter fairness. Fett concluded her email with if you feel like you are not being heard, please contact her. That same day, Keleher-Garfoot contacted Swift to let her know the security devices had been delivered, and asked if Swift wanted to pick the items up or to send someone to help install the items. She also shared the deadbolt request had been denied, and linked in John McDermott at the Physical Plant to answer any further questions Swift might have about the matter. Keleher-Garfoot also instructed Swift how to receive a copy of any reports she might want, and discussed requested blue light alarms on campus.

Also on 9/15/20, Molly Burrows Schumacher also continued work with technology to move the existing Hoffmann Hall surveillance camera to the Byrne Oaks entrance. She also reached out to Swift indicating the steps that had been taken thus far in her case as well as offer resources and support for the sexual assault claim in her recent report.

On 9/16/20, Swift replied to Fett's email that she had moved to a hotel. Burrows Schumacher also reached out to Swift via email at the request of Fett to offer information about Title IX investigators and resources on this date.

On 9/17/20, Swift replied to Burrows Schumacher's 9/15 and 9/16/2020 emails indicating that she was trying to set up an in-person meeting with Nancy Fett. Burrows Schumacher replied, letting Swift know that she was glad Swift was connecting with the Title IX Coordinator, and that she was there if Swift needed anything. Burrows Schumacher also shared updates about the camera install and the door lock.

Swift also responded to Fett's and Keleher-Garfoot's 9/15/20 emails that day indicating that she had went home for a period, and came back to finish soccer while staying at a hotel. She provided answers to Keleher-Garfoot's questions about the safety devices (ultimately delivered and installed by 9/18/20), and attempted to set up a meeting with Fett to talk further. Fett responded she could meet that Monday (9/21/20) if that worked for Swift.

On 9/20/20, Fett noted that Swift had not responded to her 9/17/20 email. Swift responded approximately 7 days later on 9/24/20, apologizing for a slow response indicating that she had moved home, but would like to talk via phone. On 9/29/20, Fett responded to Swift indicating several times available to meet. Per Fett, she did not hear from Swift with a reply.

Swift completed her semester away from campus from this point forward. The investigation into the case remained open, additional rounds and monitoring of Byrne Oaks occurred, and when new information became available that might impact Swift's case, the college reached to make her aware of the information. The College completely understands and shares Swift's desire to bring the perpetrator of the incident in her apartment to accountability; the College believes bringing this justice with the limited description of "male" and no other factors is incredibly difficult.

LORAS 0722



## Criminal Prosecution

As it relates to criminal prosecution of a Loras student, the College cooperates with law enforcement requests to hold students accountable off campus by assisting with investigations, helping locate students who may have been involved with a criminal offense, and providing any supporting information needed to assist in police efforts. Typically, if providing information from a student record, we will request that police subpoena the information from the college so that there are no challenges with the Family Education Right to Privacy Act (FERPA).

In this instance, the college was fully supportive of working with law enforcement toward criminal prosecution. Those who located the alleged perpetrator in their apartment on camera were encourage to contact police and press charges. Campus Safety Officer Mark Sutter was present with the women when they spoke to police about the matter to provide support.

Following the matter on December 5 (where a possible suspect was identified), all students who reported entry at their Byrne Oaks apartment were contacted via email and made aware a possible suspect had been located, and the College was connecting with law enforcement to provide them the opportunity to speak to law enforcement should they wish to do so. These emails are provided below.

> *From: Molly A. Burrows Schumacher (staff)*
> *Sent: Tuesday, December 8, 2020 11:01 AM*
> *To: Abigail L. Landwehr <Abigail.Landwehr@loras.edu>*
> *Subject: following up on your report*
>
> *Hello Abigail,*
>
> *I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the suspect (a Loras student), admitted to entering at least 2 other apartments over the course of this semester. The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case. Additionally, your information will be included in our on-campus investigation process so that the individual can be held accountable both on campus and off.*
>
> *We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident at your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew Saylor or myself to be included in the College's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.*
>
> *Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions.*

> *From: Molly A. Burrows Schumacher (staff)*
> *Sent: Tuesday, December 8, 2020 11:06 AM*
> *To: Abbey V. Kwiatkoski <Abbey.Kwiatkoski@loras.edu>; Kassandra R. Rich <Kassandra.Rich@loras.edu>; Sara R. Vander Mause <Sara.VanderMause@loras.edu>; Jade M. Casper <Jade.Casper@loras.edu>; Alexus M. Jensen <Alexus.Jensen@loras.edu>*
> *Subject: following up on your report*
>
> *Hello,*
>
> *I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the suspect (a Loras student), admitted to entering at least 2 other apartments over the course of this semester. This individual has been removed from campus and is not permitted to return. The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case. Additionally,*

LORAS 0723



*your information will be included in our on-campus investigation process so that the individual can be held accountable both on campus and off.*

*We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident at your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew Saylor or myself to be included in the College's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.*

*Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions.*

---

*__From:__ Molly A. Burrows Schumacher (staff)*
*__Sent:__ Tuesday, December 8, 2020 11:13 AM*
*__To:__ Rachael N. Swift <Rachael.Swift@loras.edu>*
*__Subject:__ following up on your previous report*

*Hello Rachael,*

*I'm reaching out today to let you know that this past Sunday, a suspect was caught on camera entering an apartment at Byrne Oaks. Law enforcement was notified, and in that process, the suspect (a Loras student), admitted to entering at least 2 apartments over the course of this semester. This individual has been removed from campus and is not permitted to return. The College will be working with law enforcement and providing information about the break-in at your campus apartment to be considered as they continue to investigate this case. Additionally, your information will be included in our on-campus investigation process so that the individual can be held accountable both on campus and off.*

*We've reached out to the police officer who is working with the case to find the best way for you to connect if you would like to talk further with law enforcement about the incident at your apartment. Once we receive a reply, we will relay this information to you. For the on-campus investigation, you can report any additional information to either Matthew Saylor or myself to be included in the College's process. We will continue to provide updates for you as additional information becomes available and the process moves forward.*

*Thank you for your patience as we investigated these incidents, and please do not hesitate to reach out if you have any questions. I've contacted you directly as the filed reports name you as the reporting student. If you would like me to also notify the women you were living with in apartment 101 at the time of the incident, please do let me know and I will do so.*

Law enforcement responded with information about the December 5 incident on December 11, 2020, and confirmed on December 17, 2020, that the College should provide her the contact information of anyone that wanted to talk further about the case. This information was relayed to those who had been previously contacted:

*__From:__ Molly A. Burrows Schumacher (staff)*
*__Sent:__ Thursday, December 17, 2020 3:23 PM*
*__To:__ Rachael N. Swift <Rachael.Swift@loras.edu>*
*__Subject:__ RE: following up on your previous report*

*Hello Rachel,*

*I've connected with Officer Brianna Marzette at the Dubuque Police Department. She has indicated that if you would like to speak with her about the investigation and/or your case, if you could provide the best way to contact you (email, phone and number, etc.), she will contact you. If you'd like her to reach out to you, could you please provide the best way to do so at this time?*

---

**LORAS 0724**



*From: Molly A. Burrows Schumacher (staff)*
*Sent: Thursday, December 17, 2020 3:25 PM*
*To: Abigail L. Landwehr <Abigail.Landwehr@loras.edu>*
*Subject: RE: following up on your report*

*Hello Abigail,*

*I've connected with Officer Brianna Marzette at the Dubuque Police Department. She has indicated that if you would like to speak with her about the investigation and/or your case, if you could provide the best way to contact you (email, phone and number, etc.), she will contact you. If you'd like her to reach out to you, could you please provide the best way to do so at this time?*

---

*From: Molly A. Burrows Schumacher (staff)*
*Sent: Thursday, December 17, 2020 3:26 PM*
*To: Abbey V. Kwiatkoski <Abbey.Kwiatkoski@loras.edu>; Kassandra R. Rich <Kassandra.Rich@loras.edu>; Sara R. Vander Mause <Sara.VanderMause@loras.edu>; Jade M. Casper <Jade.Casper@loras.edu>; Alexus M. Jensen <Alexus.Jensen@loras.edu>*
*Subject: RE: following up on your report*

*Hello Everyone,*

*I've connected with Officer Brianna Marzette at the Dubuque Police Department. She has indicated that if you would like to speak with her about the investigation and/or your case, if you could provide the best way to contact you (email, phone and number, etc.), she will contact you. If you'd like her to reach out to you, could you please provide the best way to do so at this time?*

As of January 22, 2021, the only response received was from Abby Landwehr, who was willing to talk with Marzette about her experience.

LORAS 0725

**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| **From:** | Arthur W. Sunleaf |
| **Sent:** | Wednesday, January 6, 2021 8:41 AM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | FW: Rachael Swift--Student Teaching |

FYI

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Donna N. Heald <Donna.Heald@loras.edu>
**Sent:** Wednesday, January 6, 2021 7:48 AM
**To:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** FW: Rachael Swift--Student Teaching

███

████████████████████████████████████████████

███

**Donna N. Heald, Ph.D.**
Vice President for Academic Affairs and Academic Dean
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
563-588-7935

**From:** "Richard K. Whitty" <RWhitty@OCTHOMASLAW.COM>
**Date:** Tuesday, January 5, 2021 at 9:24 PM
**To:** "Donna N. Heald" <Donna.Heald@loras.edu>
**Subject:** RE: Rachael Swift--Student Teaching

████████████████████████████████████

Sent from my Verizon, Samsung Galaxy smartphone

------ Original message ------
From: "Donna N. Heald" <Donna.Heald@loras.edu>

1

LORAS 0726



Date: 1/5/21 7:01 PM (GMT-06:00)
To: "Richard K. Whitty" <RWhitty@OCTHOMASLAW.COM>
Subject: Re: Rachael Swift--Student Teaching

Donna
--
**Donna N. Heald, Ph.D.**
**Vice President for Academic Affairs and Academic Dean**
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
**563-588-7935**

**From:** "Richard K. Whitty" <RWhitty@OCTHOMASLAW.COM>
**Date:** Tuesday, January 5, 2021 at 5:07 PM
**To:** "Donna N. Heald" <Donna.Heald@loras.edu>
**Subject:** Re: Rachael Swift--Student Teaching



**LORAS 0727**



**From:** Donna N. Heald <Donna.Heald@loras.edu>
**Sent:** Tuesday, January 5, 2021 4:35 PM
**To:** Richard K. Whitty <RWhitty@OCTHOMASLAW.COM>
**Subject:** Rachael Swift--Student Teaching

3

LORAS 0728



Donna

Donna N. Heald, Ph.D.
Vice President for Academic Affairs and Academic Dean
Loras College
1450 Alta Vista St
Dubuque, IA 52001
donna.heald@loras.edu
563.588.7935

CONFIDENTIALITY NOTICE: This email, including any attachments, is the property of Loras College. The information may be legally privileged and/or confidential and is intended solely for the use of the addressee. If you are not the intended recipient be advised that any unauthorized disclosure, copying, distribution or use of the

4



contents herein is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy all electronic and hard copies of the communication, including attachments. CONFIDENTIALITY NOTICE: This email, including any attachments, is the property of Loras College. The information may be legally privileged and/or confidential and is intended solely for the use of the addressee. If you are not the intended recipient be advised that any unauthorized disclosure, copying, distribution or use of the contents herein is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy all electronic and hard copies of the communication, including attachments.

LORAS 0730



## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Arthur W. Sunleaf |
| **Sent:** | Tuesday, January 19, 2021 6:09 PM |
| **To:** | Richard K. Whitty; Molly A. Burrows Schumacher (staff) |
| **Subject:** | RE: requested information |

[redacted]

[redacted]

[redacted]

Art

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Richard K. Whitty <RWhitty@OCTHOMASLAW.COM>
**Sent:** Tuesday, January 19, 2021 5:23 PM
**To:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>; Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** Re: requested information

[redacted]

[redacted]

Rich

**From:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Sent:** Tuesday, January 19, 2021 4:56 PM
**To:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Cc:** Richard K. Whitty <RWhitty@OCTHOMASLAW.COM>
**Subject:** requested information

[redacted]

[redacted]

1

LORAS 0731



**Molly A. Burrows Schumacher (staff)**

| | |
|---|---|
| **From:** | Arthur W. Sunleaf |
| **Sent:** | Tuesday, January 19, 2021 8:33 PM |
| **To:** | Richard K. Whitty |
| **Cc:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | Answers |



Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether



## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Arthur W. Sunleaf |
| **Sent:** | Wednesday, January 20, 2021 11:02 AM |
| **To:** | Richard K. Whitty |
| **Cc:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | FW: Couple more questions |



Art

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
**Sent:** Wednesday, January 20, 2021 9:31 AM
**To:** David M. Salyer <David.Salyer@loras.edu>; Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** RE: Couple more questions

You have summarized it well, David. Regarding our program's authority to permanently withhold a recommendation, I share this from the BOEE Attorney:

I ran this situation by our lead consultant, Joanne Tubbs, and she said she can recall at least one past instance where a college did not recommend a student due to misconduct during their time as a student. I believe that would be entirely at the college's discretion. If the student is convicted of a crime, he will need to disclose that on his application for a teaching license and we will evaluate it at that time. Iowa Code lists convictions that are automatically disqualifying. Those are all forcible felonies and any sexual offense involving a minor. With all other convictions, the Board evaluates the background check using factors listed in our rules, and there must be some sort of link to the profession if there is going to be a denial. One conviction for a crime that does not involve minors would likely not prevent licensure, as long as the applicant fully discloses and follows through with any court-ordered rehabilitation.

Rebecca Fabricius

**From:** David M. Salyer
**Sent:** Wednesday, January 20, 2021 9:19 AM
**To:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Cc:** Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
**Subject:** RE: Couple more questions

Hi Art,

I am copying Rebecca on this email since she is the licensure official. If I miss anything I know she will help to clarify things. The Praxis II test (Educational Testing Service – ETS) is required by the state as a *program completion*

1

LORAS 0733



requirement. The college has a testing center where students can take the tests or they can go to any ETS testing center in the country. ETS scores the tests. We can't prevent a student from taking the Praxis: They create an account on the ETS website, register for the appropriate testes, and pay the testing fees. The tests must be passed as *one* of the requirements before a student can be *recommended* by Rebecca for licensure. Students must also pass student teaching, have demonstrated that all other program requirements have been met, and be graduated. In Kyle's case, we have been in contact with the BoEE for their guidance regarding his status as a candidate for licensure given certain final outcomes. Particular outcomes from the BoEE perspective would at the very least delay issuing a license. Can the college or the program opt not to recommend him? We would have to investigate that question and make sure we are on solid ground. I hope this is helpful.

David

David M. Salyer, Ph.D.
Director of Teacher Education

From: Arthur W. Sunleaf
Sent: Wednesday, January 20, 2021 8:27 AM
To: David M. Salyer <David.Salyer@loras.edu>
Subject: Couple more questions

Hello David,

Thanks again for your quick reply last evening. I have a couple more questions for you. Please see the following.

Does the college play any role in offering, administering, grading the Praxis II test? If it was proved in a non-academic disciplinary hearing that he was the person who entered one or more units without authorization and not by mistake, could/would the college take steps to prevent him from completing this last step?

Thanks,

Art
Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

LORAS 0734



| | |
|---|---|
| **From:** | Richard K. Whitty <RWhitty@OCTHOMASLAW.COM> |
| **Sent:** | Wednesday, January 20, 2021 8:06 AM |
| **To:** | Arthur W. Sunleaf |
| **Cc:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | Re: Answers |



From: Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
Sent: Tuesday, January 19, 2021 8:33 PM
To: Richard K. Whitty <RWhitty@OCTHOMASLAW.COM>
Cc: Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
Subject: Answers



Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

CONFIDENTIALITY NOTICE: This email, including any attachments, is the property of Loras College. The information may be legally privileged and/or confidential and is intended solely for the use of the addressee. If you are not the intended recipient be advised that any unauthorized disclosure, copying, distribution or use of the contents herein is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy all electronic and hard copies of the communication, including attachments.

1

LORAS 0735

When did the college award Hall his degree and, was it the last date the college could do such? This would be a question best answered by Art as he was involved in this part of the process. I have the following email Art shared with me about Kyle's licensure recommendation.

**From:** David M. Salyer <David.Salyer@loras.edu>
**Sent:** Friday, December 11, 2020 11:56 AM
**To:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>; Rebecca A. Fabricius <Rebecca.Fabricius@loras.edu>
**Subject:** Student Issue

Hi Art,

I wanted to let you know that Rebecca and I met with Kyle Hall today (12-11). Our purpose was to be transparent and inform him of our awareness of the campus conduct issue. We also shared with Kyle that we are in contact with the Board of Educational Examiners regarding the issue. He understands that we will not be able to recommend him for licensure until the issue has been resolved. As this process moves forward would you be able to inform us if criminal charges are filed? Thanks.

David

David M. Salyer, Ph.D.
Director of Teacher Education

Thank you,

**Molly**

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS.

CONFIDENTIALITY NOTICE: This email, including any attachments, is the property of Loras College. The information may be legally privileged and/or confidential and is intended solely for the use of the addressee. If you are not the intended recipient be advised that any unauthorized disclosure, copying, distribution or use of the contents herein is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy all electronic and hard copies of the communication, including attachments.

LORAS 0736

**amazon**.com

Final Details for Order #112-7899203-1038602

**Paid By:** Loras College
**Placed By:** Loras College
**Order Placed:** September 8, 2020
**PO number :** 133945132
**Amazon.com order number:** 112-7899203-1038602
**Order Total: $268.94**

| Shipped on September 10, 2020 | |
|---|---|
| **Items Ordered** | **Price** |
| 1 of: *Wsdcam Door and Window Alarm for Home Wireless Alarm Security System Magnetic Alarm Sensor Time Delay Alarm Loud 110 dB, 4-in-1 Mode Window Alarms 10* <br> Sold by: Wsdcam (seller profile) <br> Business Price <br> Condition: New | $40.88 |
| 6 of: *Roe & Moe Telescoping Window Security Guard Bars Prevent Forced Entry - extends from 17-27 inches (4-Pack)* <br> Sold by: Roe & Moe (seller profile) <br> Business Price <br> Condition: New | $38.01 |

| | |
|---|---|
| **Shipping Address:** <br> Katie Keleher-Garfoot <br> 1450 Alta Vista St <br> Dubuque, IA 52001 <br> United States | Item(s) Subtotal: $268.94 <br> Shipping & Handling: $0.00 <br> ――― <br> Total before tax: $268.94 <br> Sales Tax: $0.00 <br> ――― |
| **Shipping Speed:** <br> One-Day Shipping | **Total for This Shipment: $268.94** <br> ――― |

| Payment information | |
|---|---|
| **Payment Method:** <br> Visa \| Last digits: 0349 | Item(s) Subtotal: $268.94 <br> Shipping & Handling: $0.00 <br> ――― <br> Total before tax: $268.94 <br> **Estimated Tax:** $0.00 <br> ――― <br> **Grand Total: $268.94** |

To view the status of your order, return to Order Summary .

Conditions of Use | Privacy Notice © 1996-2020, Amazon.com, Inc.

**LORAS 0737**

22

Amazon Associates
SiteStripe

Get Link:
Text

Native Shopping Ads

Share:

Tried the foreign bank direct d...    Earnings    Help

All ▾    Enter keyword or product number

Deliver to Loras
Dubuque 52001

Departments    Buy Again

EN    Hello, Loras
Account for Loras Col...    Lists

Try
Business Prime    0

Your Account › Your Orders › Order Details

## Order Details

PO# 133945132    Ordered on September 8, 2020    Order# 112-7899203-1038602    Printable Order Summary

This order was approved. View details

| **Shipping Address** | **Payment Method** | **Order Summary** | |
|---|---|---|---|
| Katie Keleher-Garfoot | **** 0349 | Item(s) Subtotal: | $268.94 |
| 1450 Alta Vista St | | Shipping & Handling: | $0.00 |
| Dubuque, IA 52001 | | Total before tax: | $268.94 |
| United States | | Estimated tax to be collected: | $0.00 |
| | | **Grand Total:** | **$268.94** |

Transactions

**Requested by**    **Loras College**
**Order method**    **Business**

### Delivered Sep 14, 2020



Wsdcam Door and Window Alarm for Home Wireless Alarm Security System Magnetic
Alarm Sensor Time Delay Alarm Loud 110 dB, 4-in-1 Mode Window Alarms 10 Pack
Sold by: Wsdcam
Return window closed on Oct 15, 2020
$40.99
**Business Price**
Condition: New
[ Buy it again ]

Get product support

Write a product review

Roe & Moe Telescoping Window Security Guard Bars Prevent Forced Entry - extends from
17-27 inches (4-Pack)
Sold by: Roe & Moe
Return window closed on Oct 15, 2020
6    $18.67
**Business Price**
Condition: New
[ Buy it again ]

### Frequently bought with Wsdcam Door and Window Alarm for Home Wireless...

Page 1 of 2

Wsdcam Door Alarm
Wireless Anti-Theft

Wsdcam Door and Window
Alarms for Home Security,

All-new Blink Outdoor -
wireless, weather-resistant

Master Lock 265D Door
Security Bar, White
18.43A

ZZ

| | | | |
|---|---|---|---|
| Remote Control Door and Window Security Alarms 2.477 | 110dB Magnetic Sensor Alarm, Pool Door Alarm ... 77 | HD security camera with two-year battery life and 28.358 | $20.65 |

## Recommended Deals for you









Kraft Paper Bags with Handles, Esvoar 20pcs 8.6" x 3.9" x 7" Paper Bags Bulk, Shopping Bags 26
$9.29

Ring Alarm 8-piece kit (2nd Gen) bundle with Echo Dot (4th Gen) Charcoal 9,692
$209.99

Simpli-Magic Canvas Tote Bags, Pack of 50, Standard, 50 Count 746
$60.42

Bold Chalk Markers - Dry Erase Marker Pens - Chalk Markers for Chalkboards, Signs, Windows,... 13,448
$11.90

## Deals trending on Amazon Business







Kindle Paperwhite – Now Waterproof with 2x the Storage – Ad-Supported 94,744
$94.99

Individually Wrapped 50 Packs KN95 Face Mask, Included on FDA EUA List, 5-Ply Breathable... 98
$59.41

Dotted Grid Notebook/Journal – Dot Grid Hard Cover Notebook, Premium Thick Paper ... 3,925
$7.29

Echo Show 5 – Smart display with Alexa – stay connected with video calling – Sandstone 314,058
$59.99

## Your Browsing History   View or edit your browsing history  ›

          

Have an idea to help us improve? **Send feedback** ›

---

| Get to Know Us | Let Us Help You | Work with Amazon | Business Solutions |
|---|---|---|---|
| Careers | Help | Sell on Amazon Business | Amazon Business Solutions |
| Press Releases | Shipping Rates & Policies | Fulfillment By Amazon | Purchasing Systems |
| Amazon and Our Planet | Business FAQ | Advertise on Amazon | Amazon Business Card |
| Amazon in the Community | Contact Us | Sell Services on Amazon | Pay by Invoice Purchasing Line |
| Company Facts | | Amazon Global Selling | Amazon Business Blog |

LORAS 0739

22



English          United States

| Alexa Actionable Analytics for the Web | Amazon Marketing Services Self-service Advertising Solutions | Amazon Payments Login and Pay with Amazon | Amazon Web Services Scalable Cloud Computing Services | Mechanical Turk On-demand Scalable Workforce | Whispercast Kindle Management and Content Distribution |

Conditions of Use    Privacy Notice    Interest-Based Ads    © 1996-2021 Amazon.com, Inc. or its affiliates

Case 2:22-cv-01019-LTS-KEM    Document 20-5    Filed 09/15/23    Page 164 of 175
APP 250



## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| **From:** | Arthur W. Sunleaf |
| **Sent:** | Wednesday, February 10, 2021 1:31 PM |
| **To:** | Molly A. Burrows Schumacher (staff) |
| **Subject:** | RE: Request for Information |

**Sensitivity:** Confidential

Hello Molly,

I searched my email files for any communications with Matt Pucci regarding this matter. I do not have any communications to share.

Art

Dr. A.W. Sunleaf
Vice President for Student Development/Dean of Students
Loras College
Dubuque, IA 52001
#LorasTogether

**From:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Sent:** Wednesday, February 10, 2021 12:46 PM
**To:** Arthur W. Sunleaf <Arthur.Sunleaf@loras.edu>
**Subject:** Request for Information
**Sensitivity:** Confidential

Hello Art,

I've been asked by Troy Wright to gather the following information:

*All email correspondence between Art Sunleaf and Matt Pucci regarding Kyle Hall and Rachael Swift in the education program.*

If you could please reply to my email and forward any email correspondence available at your earliest convenience, it would be appreciated.

Thank you,

**Molly**

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE. BE LORAS

1

BBB

## Molly A. Burrows Schumacher (staff)

| | |
|---|---|
| From: | Matthew D. Pucci |
| Sent: | Wednesday, February 10, 2021 1:53 PM |
| To: | Molly A. Burrows Schumacher (staff) |
| Subject: | RE: Request for Information |
| | |
| Sensitivity: | Confidential |

Thanks Molly – After searching I have not found any email correspondence with Art involving Rachael and Kyle and the education program.  If need anything else please let me know!



**MATT PUCCI**
**Head Women's Soccer Coach**

O | 563.588.4937  M | 847.347.0664
W | duhawks.com  T | @LorasWSoccer
**2019**American Rivers **Conference** Champions | 2018 NCAA Tournament - Second Round
14 NCAA Tournament Appearances ¡ 13  Conference Championships | 9 All-Americans | 35 All-
Region Selections

**From:** Molly A. Burrows Schumacher (staff) <Molly.BurrowsSchumacher@loras.edu>
**Sent:** Wednesday, February 10, 2021 12:43 PM
**To:** Matthew D. Pucci <Matthew.Pucci@loras.edu>
Subject: Request for Information
Sensitivity: Confidential

Hello Matt,

I've been asked by Troy Wright to gather the following information:

*All email correspondence between Art Sunleaf and Matt Pucci regarding Kyle Hall and Rachael Swift in the education program.*

If you could please reply to my email and forward any email correspondence available at your earliest convenience, it would be appreciated.

Thank you,

Molly

Molly Burrows Schumacher
*Assistant Dean of Students*
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
molly.burrowsschumacher@loras.edu
BE MORE  BE LORAS

1

**Troy M. Wright**

| | |
|---|---|
| **From:** | Troy M. Wright |
| **Sent:** | Thursday, March 4, 2021 4:19 PM |
| **To:** | Rachael N. Swift |
| **Subject:** | RE: Investigation Regarding the Discrimination Claim Filed on September 14, 2020 |
| **Importance:** | High |

Dear Rachael:

Thank you for getting back to me. I can assure you that the College has addressed and is continuing to address your issues, concerns and complaint. Please note that after you called our Security Office in September 2020, the College has taken your complaint very seriously. Listed below are some, not all, of the action taken to address your concerns.

- Increased awareness of concerns and increased campus patrols;

- Timely replies to all e-mails from you and your family/representatives wherein concerns were raised over the incident and over campus safety;
- In-person meetings with you and your family/representatives to discuss your concerns;
- Increased RA assessment;
- Changing the locks;
- Reviewing fob access logs;
- Advising of suspect identification possibly linked to the incident;
- Greater awareness of personal safety;
- Window bars and other physical barriers;
- Working to determine if deadbolts could be added;
- Working to determine if additional security such as cameras was appropriate;
- Seeking additional dialogue and opinions from you on the appropriateness and acceptability of these and other steps implemented by the College.

One of my roles at Loras College is to investigate claims regarding employees. Once you named multiple employees of the College, I was brought in to investigate your discrimination claim.

Thank you for responding to the initial questions I sent you. I will be in touch should I need additional information.

Sincerely,

Troy

Troy M. Wright SHRM-SCP, MBA '15
Director of Human Resources
LORAS COLLEGE

**From:** Rachael N. Swift
**Sent:** Thursday, February 25, 2021 7:30 PM
**To:** Troy M. Wright <Troy.Wright@loras.edu>
**Subject:** RE: Investigation Regarding the Discrimination Claim Filed on September 14, 2020

1

LORAS 0743

Hello Troy,

Thank you for reaching out to me. I appreciate someone at the College finally addressing some of my issues, concerns and complaint.
My complaint was originally filed in September 2020 and it is now almost March 2021. What has the school done over the last approximate six months? As my mom and I told President Collins, if the College had taken my complaint seriously when it was filed then the break in of at least three female apartments could have possibly been avoided. Please let me know what the College has done since September 2020 and why the College is now reaching out to me.

I want to make sure that the College understands my complaint. I originally filed a Title IX complaint in September 2020 because I believe that the College was treating me differently based on my gender. Specifically, I felt that the College treated me as "hysterical woman" that was overreacting. I believe that if I was a man, the College would have taken me more seriously and would have responded differently. I also believe that my apartment was broken into because I am a woman and that the perpetrator (Kyle Hall) was motivated by sexual or gender based desires.

As we proceed with this process, I will be happy to answer any questions you may have. I noticed that you are the College's Human Resources Director. As the HR Director, what is your role in this process?

With respect to your inquiries:

- The school security officer never said nor did what was listed in your email. The security officer only said that I could contact security for an escort if it was dark and I felt worried about going to my car or going a friend's apartment. I was on the phone with my mother during the time he was in my apartment and she heard the exact same thing.
- My position is that the College's response was discriminatory based upon the fact that the College did not believe my claim because I am woman. The College never took my complaint or my requests seriously. The College attempted to claim the sexual assault by this person did not occur and otherwise downplayed my concerns and fears. The College also tried to downplay the intrusion and assault as just someone in the wrong apartment. The College treated me as a "hysterical female" that was too dumb or too emotional to know what was going on. The break in was not an attempt to steal; the break in was sexually motivated. This has been a devasting and damaging assault for me and the College did not take it seriously. The College's attempt to ignore the break in and assault and there attempt to make me believe this assault did not happen is unacceptable, shameful and disgusting.

Thank you,
Rachael Swift

From: Troy M. Wright <Troy.Wright@loras.edu>
Sent: Tuesday, February 9, 2021 4:34 PM
To: Rachael N. Swift <Rachael.Swift@loras.edu>
Subject: Investigation Regarding the Discrimination Claim Filed on September 14, 2020
Importance: High

Dear Rachael,

LORAS 0744

First and foremost, I am deeply sorry that this incident happened to you on our campus. I cannot imagine how scared that must have made you. It is my sincere hope that you are finding comfort again.

I will be conducting the investigation related to the discrimination claim that you filed with the College on September 14, 2020. I would greatly appreciate it if you could answer the questions on the attached and return to me at your earliest convenience so that I can use this additional information during my investigation.

Please do not hesitate to reach out to me should you have any questions or concerns regarding this process.

Sincerely,

Troy

Troy M. Wright SHRM-SCP, MBA '15
Director of Human Resources
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7816 – P
563.588.7101 – F
troy.wright@loras.edu
BE MORE. BE LORAS.

3

LORAS 0745

## Troy M. Wright

| | |
|---|---|
| **From:** | Troy M. Wright |
| **Sent:** | Tuesday, March 16, 2021 10:51 PM |
| **To:** | Rachael N. Swift; Nancy Z. Fett |
| **Subject:** | RE: Meeting |

Hello Rachael,

Given the very short notice, Nancy and I were unable to meet with you due to prior commitments.

Regards,

Troy

Troy M. Wright SHRM-SCP, MBA '15
Director of Human Resources
LORAS COLLEGE

-----Original Message-----
From: Rachael N. Swift
Sent: Monday, March 15, 2021 12:33 PM
To: Troy M. Wright <Troy.Wright@loras.edu>; Nancy Z. Fett <Nancy.Fett@loras.edu>
Subject: Meeting

Hello Troy and Nancy,

I will be coming on campus later today for the hearing against Kyle Hall. I think it would be best if we could set up a meeting between us later today. The hearing is at 3:30. So, anytime around then.

Rachael Swift

Sent from my iPhone

*- Sent email to Rachael*
*on 2/1/21*

*- left voicemail on Rachael's*
*cell phone on 2/17/21*

1

LORAS 0746

# LORAS COLLEGE

*1450 ALTA VISTA, DUBUQUE, IA 52001*

*Sent via certified mail on 3/26/21*

Ms. Rachael Swift
1338 N. Chicago Ave
Arlington Heights, IL 60004

**STRICTLY CONFIDENTIAL**

Dear Rachael,

I have gathered and reviewed all documentation pertinent to your Incident Report #00145-2020 regarding an intruder in your apartment on September 6, 2020, with focus upon the actions taken by the Loras College employees you named on September 14, 2020 in your Incident Report #00154-2020. These individuals were Jim Collins, President; Dr. Art Sunleaf, Dean of Students; Katie Keleher-Garfoot, Assistant Director of Residential Life; and Bob Rosenow, Security Officer. Based on a thorough review, the College has determined your complaint, which focuses on responsiveness, to be unfounded. Furthermore, I find no discriminatory actions by these individuals or any other employee at the College because you are a female student alleged to have been subjected to a sexual assault.

Your September 14, 2020 Incident Report stated that you requested the College provide additional safety measures after the initial incident, yet you allege that the College took no action to protect your safety. This is simply incorrect, as supported by multiple statements. Per my email correspondence to you on February 9, 2021, below is a list of the actions the College has already taken or continues to implement:

- Increased awareness of concerns and increased campus patrols;
- Timely replies to all e-mails from you and your family/representatives wherein concerns were raised over the incident and over campus safety;
- In-person meetings with you and your family/representatives to discuss your concerns;
- Increased RA assessment;
- Changing the locks;
- Reviewing fob access logs;
- Advising of suspect identification possibly linked to the incident;
- Greater awareness of personal safety;
- Window bars and other physical barriers;
- Working to determine if deadbolts could be added;
- Working to determine if additional security such as cameras was appropriate;
- Seeking additional dialogue and opinions from you on the appropriateness and acceptability of these and other steps implemented by the College.

Your September 14, 2020 Incident Report, indicating that you asked for information about the investigation into who entered your apartment but only received limited updates is inaccurate. Below is a list of the updates the College provided to you:

- On September 7, 2020, Dean Sunleaf met with you and your mother, Elaine Kostopoulos, to discuss your concerns regarding the entry into your apartment the night before;
- On September 7, 2020, Molly Burrows-Schumacher advised you that Campus Security was reviewing fob access to your building and there would be additional rounds in your area by Campus Security and RA's;

LORAS 0747



- On September 7, 2020, Katie Keleher-Garfoot advised you of additional safety measures the College could take on your behalf, including bars on window and alarm devices for your apartment;
- On September 11, 2020, Tricia Borelli, Director of the Student Counseling Center, emailed you offering you counseling support through the Counseling Center and a specific program online called Doxy;
- On September 11, 2020, President Collins spoke with you and your mother, offering the College's support services including but not limited to: Spiritual Life, Counseling, and Academic Services.
- On September 15, 2020, Burrows-Schumacher advised you that increased surveillance had not provided any additional information and the College would contact the Dubuque Police to assist in any additional avenues it may explore;
- On September 15, 2020, Nancy Zachar-Fett, Title IX Coordinator, contacted you stating that an investigation into your newly filed September 14, 2020 Title IX complaint would be conducted;
- On September 16, 2020, Burrows-Schumacher corresponded with you again, offering to set up a meeting between you and a Title IX investigator to discuss your claim;
- On October 8, 2020, President Collins spoke with you and your mother, advising you that College was continuing to investigate and address the situation;
- On December 8, 2020, Burrows-Schumacher notified you that a suspect was identified in your case and the Dubuque Police were notified;
- On December 17, 2020 Burrows-Schumacher notified you that she had spoken to Officer Brianna Marzette with the Dubuque Police and that Officer Marzette wanted to speak with you;
- On January 5, 2021, Burrows-Schumacher contacted you regarding your housing assignment and meal plan assignment that was still on file for Spring 2021 on campus, advising that she would be willing to remove these items, that these items could be re-added at any time and also indicating that because you had spent most of the fall semester away from campus, housing charges had been removed from your account; and
- On January 26, 2021, Burrows-Schumacher contacted you regarding the hearing for the September 6, 2020 incident investigation, to which you replied on February 10, 2021 that you would like to participate in the hearing process.

While the College understands the entry into your apartment on September 6, 2020 was a deeply concerning event, College personnel's investigation into this incident was comprehensive. The result of this investigation has determined that the entry does not meet the definition of sexual harassment as contemplated by Title IX and as described by the College's Sexual Misconduct Policy and Grievance Procedures. As such, please accept this letter as the official dismissal of your Title IX allegations.

Respectfully Yours,

Troy Wright
Director of Human Resources
Loras College
563-588-7816
Troy.wright@loras.edu

LORAS 0743  LORAS.EDU

**Troy M. Wright**

| | |
|---|---|
| **From:** | Troy M. Wright |
| **Sent:** | Friday, March 26, 2021 11:23 AM |
| **To:** | Rachael N. Swift; Nancy Z. Fett |
| **Subject:** | RE: Title IX |

Hello Rachael,

The investigation has been completed and a certified letter is being sent to you today.

Regards,
Troy

Troy M. Wright SHRM-SCP, MBA '15
Director of Human Resources
LORAS COLLEGE

**From:** Rachael N. Swift
**Sent:** Thursday, March 25, 2021 5:17 PM
**To:** Troy M. Wright <Troy.Wright@loras.edu>; Nancy Z. Fett <Nancy.Fett@loras.edu>
**Subject:** Title IX

Hello Troy and Nancy,

Seeing as it has been a few months since I filed my title IX claim I would like a full update on the investigation that you have completed so far. I would also like to know when I can expect a hearing to be held.

Thank you,
Rachael Swift

1

**LORAS 0749**

**Troy M. Wright**

| | |
|---|---|
| **From:** | Troy M. Wright |
| **Sent:** | Tuesday, February 9, 2021 4:34 PM |
| **To:** | Rachael N. Swift |
| **Subject:** | Investigation Regarding the Discrimination Claim Filed on September 14, 2020 |
| **Attachments:** | Rachael.docx |
| **Importance:** | High |

Dear Rachael,

First and foremost, I am deeply sorry that this incident happened to you on our campus. I cannot imagine how scared that must have made you. It is my sincere hope that you are finding comfort again.

I will be conducting the investigation related to the discrimination claim that you filed with the College on September 14, 2020. I would greatly appreciate it if you could answer the questions on the attached and return to me at your earliest convenience so that I can use this additional information during my investigation.

Please do not hesitate to reach out to me should you have any questions or concerns regarding this process.

Sincerely,

Troy

Troy M. Wright SHRM-SCP, MBA '15
Director of Human Resources
LORAS COLLEGE
1450 Alta Vista St
Dubuque, IA 52001
563.588.7816 - P
563.588.7101 - F
troy.wright@loras.edu
BE MORE. BE LORAS.

LORAS 0557

**Confidential**

<u>Questions for Rachael Swift</u>

- After the incident on September 6, the Security Officer, Bob Rosenow, stated that he requested you to contact the Security Info Desk should you ever be staying alone again in your apartment so that Security could perform more rounds in your building and surrounding area. Do you agree with this statement? If so, did you ever contact the Security Info Desk and request for more rounds in your building and surrounding area?

- Regarding the incident report you filed on September 14, you list parties involved as the Dean of Students, Art Sunleaf, the President, Jim Collins, the Assistant Dean of Residential Life, Molly Burrows-Schumacher, and an unknown male who I will assume you are referring to Officer Rosenow unless you tell me differently. In the incident description section, you state that you believe Loras is discriminating against you because you are a female student that has been subjected to a sexual assault. Please provide detailed information as to the action(s) that each of these individuals took toward you that made you feel as though you were being discriminated against due to you being a female student subjected to a sexual assault.

- Please provide all other information that you feel would be relevant to this investigation.

LORAS 0558